## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHANNON PRICE, Individually and on Behalf of All Others Similarly Situated and On Behalf of the EATON VANCE PROFIT SHARING AND SAVINGS PLAN, | ) ) ) ) ) | Civil Action No._____ |
| Plaintiff, | ) ) | **CLASS ACTION COMPLAINT** |
| vs. | ) ) ) | |
| EATON VANCE CORPORATION, EATON VANCE MANAGEMENT, EATON VANCE INVESTMENT COMMITTEE, and DOES 1-30, inclusive, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

## I.    INTRODUCTION

1.      Plaintiff Shannon Price, individually and as representative of a class of participants and beneficiaries of the Eaton Vance Profit Sharing and Savings Plan (the "Plan") bring this action under 29 U.S.C. § 1132(a)(2) and (3) on behalf of the Plan against Defendants Eaton Vance Corporation, Eaton Vance Management, Eaton Vance Investment Committee, and Does 1-30 (collectively, "Eaton Vance" or "Eaton Vance Defendants") for breach of fiduciary duties and prohibited transactions under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 ("ERISA").

2.      As described herein, the Eaton Vance Defendants have breached their fiduciary duties and engaged in prohibited transactions and unlawful self-dealing with respect to the Plan in violation of ERISA, to the detriment of the Plan and its participants and beneficiaries.  The Plaintiff brings this action to remedy this unlawful conduct, prevent further mismanagement of

the Plan, and obtain equitable and other relief as provided by ERISA.  In support thereof, Plaintiff

alleges as follows:

## II.    NATURE OF THE ACTION

3.      Eaton Vance is an investment management and advisory company with $444.1

billion assets under management.  It is one of the country's oldest investment management firms.

Eaton Vance offers its employees the option of investing their retirement savings in the Eaton

Vance Profit Sharing and Savings Plan (the "Plan").   As Plan fiduciaries, Eaton Vance

Defendants are responsible for selecting the investment options for the Plan.  Plan participants

then choose to invest their 401(k)-retirement savings in any of the Plan's curated investment

options.  Because participants' nest eggs are at stake, Eaton Vance must adhere to strict fiduciary

duties:   it must select prudent investments, monitor investment performance, ensure Plan

expenses are reasonable, and act for the exclusive benefit of participants and beneficiaries.

4.      Eaton Vance neglected these sacrosanct duties.  It used the entire Plan as a test

laboratory and vehicle for self-gain.  Instead of leveraging its investment expertise to select

prudent investment options on the open market, Eaton Vance filled the Plan with funds that Eaton

Vance managed ("proprietary funds").  Of the 42 non-money market investments strategies on

the Plan, 35 were managed by one of the Eaton Vance Defendants.   Moreover, Eaton Vance

proprietary funds were the exclusive actively managed investment strategies available on the

Plan.   As of December 31, 2016, the Plan had $434,848,484 in assets under management,

approximately 80% of which were invested in Eaton Vance funds.

5.      Rather than adhering to a rigorous and objective process of identifying, evaluating,

and selecting the optimal investment options for the Plan, upon information and belief, the Eaton

Vance process focused on selecting and retaining Eaton Vance proprietary funds.  Eaton Vance

had perverse incentives for maintaining this narrow focus: It managed these funds for a profit by charging Plan participants significant investment advisory fees. Eaton Vance's monopolistic, "buy from the company store" arrangement is indicative of a process that is tainted by a failure of effort, competence, or loyalty.

6.      Eaton Vance's imprudent and disloyal investment conduct manifests most prominently in six respects: (a) Eaton Vance stacks the Plan with Eaton Vance mutual funds that charge Plan participants investment advisory fees that are higher than what Eaton Vance charges outside clients who have similar investment strategies and comparable asset sizes; (b) Eaton Vance offers Plan participants more expensive share classes of proprietary mutual funds than are available to the general public; (c) Eaton Vance fails to offer cheaper non-mutual fund alternatives such as Eaton Vance's separate accounts and collective investment trusts; (d) Eaton Vance foists its new proprietary mutual funds onto the Plan despite having no track record, primarily to advance its own outside mutual fund distribution activities; (e) Eaton Vance retains many of its proprietary mutual funds despite their abysmal long-term underperformance relative to their investment benchmarks and readily available funds with comparable investment strategies; and (f) through intricate sub-advisory arrangements with affiliates, Eaton Vance is able to skim fees for performing unnecessary services. As a result, Defendants undermined the Plan as a whole, and deprived all participants the right to choose from superior investment options.

7.      By acting to benefit themselves and contrary to their fiduciary duties, Eaton Vance caused the Plan, and hence participants, to suffer staggering losses of millions of dollars in retirement savings. To remedy these fiduciary breaches and prohibited transactions, Plaintiff, individually and as representative of a class of participants and beneficiaries of the Plan, bring

this action on behalf of the Plan under 29 U.S.C. § 1132(a)(2) and (3) to enforce Eaton Vance

Defendants' personal liability under 29 U.S.C. § 1109(a) to make good to the Plan all losses

resulting from each breach of fiduciary duty occurring during the class period from October 5,

2012 to the date of judgment, and to obtain such other equitable or remedial relief as the Court

may deem appropriate.

### III.      JURISDICTION AND VENUE

8.      This Court has exclusive jurisdiction over the subject matter of this action under 29

U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because it is an action under 29 U.S.C. § 1132(a)(2)

and (3).

9.      This District and Division are the proper venue for this action under 29 U.S.C.

§ 1132(e)(2) and 28 U.S.C. § 1391(b) because they are the District and Division in which the

subject Plan is administered and where at least one of the alleged breaches took place.  They are

also the District and Division in which Defendant Eaton Vance resides.

### IV.      PARTIES

#### A.  Plaintiff

10.      Plaintiff SHANNON PRICE ("Price" or "Plaintiff") is a participant in the Plan and

a resident of Massachusetts.  As a participant, Price invested in various funds within the Plan,

including Eaton Vance Focused Growth Opportunities Fund, Eaton Vance Growth Fund, Eaton

Vance Large-Cap Value Fund, Eaton Vance Stock Fund, Parametric Emerging Markets Fund,

Eaton Vance Balanced Fund, Eaton Vance Multisector Income, Eaton Vance Short Duration

Government Income Fund, and Eaton Vance Short Duration Strat Income Fund.  Plaintiff Price

has suffered financial harm and has been injured by Defendants' unlawful conduct as described

herein.  Furthermore, Defendants have been unjustly enriched from the various fees and expenses generated as a result of Plaintiff Price's Plan investments.

### B.  Defendants

#### a.  Eaton Vance Corporation

11.     Eaton Vance Corporation conducts an investment management and advisory business through wholly- and majority-owned investment affiliates, which include:  Eaton Vance Management, Parametric Portfolio Associates LLC, Atlanta Capital Management Company, LLC, Calvert Research and Management, and other direct and indirect subsidiaries, including Boston Management and Research.  Eaton Vance Corporation is headquartered in Boston, Massachusetts and also maintain offices in Atlanta, Georgia; Minneapolis, Minnesota; New York, New York; Seattle, Washington; Washington, District of Columbia; Westport, Connecticut; London, England; Singapore; Sydney, Australia; and Tokyo, Japan.

#### b.  Eaton Vance Management

12.     Eaton Vance Management is the sponsor of the Plan and the investment adviser to many of the mutual funds in the Plan.  Eaton Vance Management is a business trust organized under the laws of The Commonwealth of Massachusetts.  Eaton Vance Management has its principal offices at Two International Place, Boston, MA 02110.  Eaton Vance Management has been managing assets since 1924 and managing mutual funds since 1931.  Eaton Vance Management is both a fiduciary and party in interest of the Plan.

#### c.  Eaton Vance Investment Committee

13.     Based on information and belief, the Plan has established an investment or similar type of committee to manage the assets of the Plan ("Investment Committee").  Current and former members of the Investment Committee are fiduciaries of the Plan under 29 U.S.C.

§ 1002(21)(A) because they exercised discretionary authority or discretionary control respecting management of the Plan, and exercised authority or control respecting management or disposition of the Plan's assets.

### d. John Does

14. Because Plaintiff is currently unaware of the identities of the individual members of the Investment Committee, and the Trustees of Defendant Eaton Vance Management, those individuals collectively are named as Defendants John Does 1-30. Plaintiff will substitute the real names of the John Does when they become known to Plaintiff. To the extent the Investment Committee delegated any of its fiduciary functions to another person or entity, the nature and extent of which has not been disclosed to Plaintiff, the person or entity to which the function was delegated is also a fiduciary under 29 U.S.C. § 1002(21)(A) for the same reasons.

15. Each of the Defendants is also subject to co-fiduciary liability under 29 U.S.C. § 1105(a)(1)–(3) because they enabled other fiduciaries to commit breaches of fiduciary duties through their appointment powers, failed to comply with 29 U.S.C. § 1104(a)(1) in the administration of their duties, and failed to remedy other fiduciaries' breaches of their duties, despite having knowledge of the breaches.

16. Because the Eaton Vance individual entities, trustees, and committee members have acted as alleged herein as the agents of Eaton Vance, and/or co-fiduciaries, all defendants collectively are referred as Eaton Vance or Eaton Vance Defendants.

## V.   SUBSTANTIVE ALLEGATIONS: EATON VANCE'S BREACHES OF FIDUCIARY DUTY

### A.  The Plan

17.    The Plan is a profit-sharing plan that includes a "qualified cash or deferred arrangement" as described in Section 401(k) of the Internal Revenue Code, I.R.C. § 401(k) (1986) (hereinafter denoted as "the Code") and is subject to the provisions of ERISA.  The Plan is established and maintained under a written document in accordance with 29 U.S.C. § 1102(a). The Plan provides for retirement income for over 1,800 Eaton Vance employees and former employees.  That retirement income depends on contributions made on behalf of each employee by his or her employer, deferrals of employee compensation, employer matching contributions, and the performance of investment options net of fees and expenses.

18.    Of the 42 non-money market investments strategies on the Plan, 35 were managed by one of the Eaton Vance Defendants.  Moreover, Eaton Vance proprietary funds were the exclusive actively managed investment strategies available on the Plan.  For example, if a Plan participant wanted to invest in a small company stock, she had no choice but to invest in an Eaton Vance's small cap fund.  As described in the below chart, as of December 31, 2016, the Plan had $434,848,484 in assets under management, approximately 80% of which were invested in Eaton Vance funds.

### LIST OF THE FUNDS AND ASSETS IN THE PLAN

| FUND | ASSETS |
| --- | --- |
| Eaton Vance Trust Company Collective Investment Trust for Eaton Vance Benefit Plans, Moderate Fund (CIT Moderate) (The underlying investments are comprised of registered investment companies, including: equity, fixed income, and | |

| | |
|---|---|
| international funds). | $129,048,741 |
| Schwab Government Money | 18,902,503 |
| Eaton Vance Atlanta Capital Select Equity | 11,290,904 |
| Eaton Vance Atlanta Capital SMIDCap | 32,822,808 |
| Eaton Vance Balanced Fund | 22,342,644 |
| Eaton Vance Core Bond | 2,764,014 |
| Eaton Vance Emerging Markets Local Income | 2,592,246 |
| Eaton Vance Floating-Rate & High Income | 644,534 |
| Eaton Vance Floating-Rate Advantage | 6,510,065 |
| Eaton Vance Floating Rate | 5,024,723 |
| Eaton Vance Focused Growth Opportunities | 9,828,470 |
| Eaton Vance Focused Value Opportunities | 4,050,709 |
| Eaton Vance Global Macro Absolute Return Advantage | 5,330,341 |
| Eaton Vance Global Macro Absolute Return | 2,943,123 |
| Eaton Vance Global Income Builder | 146,130 |
| Eaton Vance Government Obligations | 1,304,344 |
| Eaton Vance Large-Cap Growth | 19,655,433 |
| Eaton Vance Hedged Stock Fund | 1,702,968 |
| Eaton Vance Hexavest Global Equity | 2,692,176 |
| Eaton Vance High Income Opportunities | 3,812,537 |
| Eaton Vance Income Fund of Boston | 7,612,588 |
| Eaton Vance Large-Cap Value | 17,894,253 |
| Eaton Vance Multisector Income | 3,734,611 |

| | |
|---|---:|
| Eaton Vance Richard Bernstein All Asset Strategy | 1,678,037 |
| Eaton Vance Real Estate | 5,142,520 |
| Eaton Vance Short Duration Real Return | 1,963,301 |
| Eaton Vance Short Duration Government Income | 3,110,974 |
| Eaton Vance Short Duration Strategy Income | 2,050,274 |
| Eaton Vance Small-Cap | 1,035,817 |
| Eaton Vance Stock | 5,114,634 |
| Eaton Vance Diversified Currency Income | 652,499 |
| Eaton Vance Richard Bernstein Equity Strategy | 4,458,117 |
| Fidelity Extended Market Index | 10,961,305 |
| Eaton Vance Parametric Commodity Strategy | 3,868,217 |
| Eaton Vance Parametric Emerging Markets | 12,196,359 |
| Eaton Vance Parametric International Equity | 7,363,164 |
| Vanguard 500 Index Admiral Registered Investment Company | 42,850,950 |
| Vanguard Emerging Markets Stock Index | 2,305,662 |
| Vanguard REIT Index | 912,075 |
| Vanguard Small-Cap Index | 2,908,437 |
| Vanguard Total International Stock Index | 10,849,202 |
| Vanguard Total Bond Market Index | 2,776,075 |
| **TOTAL** | **$ 434,848,484** |

19.     With Eaton Vance's investment sophistication, combined with the over $400 million of retirement assets in the Plan, the Plan has tremendous leverage to demand and receive superior investment products and services.  Defendants failed to exercise this leverage to benefit

participants.  Eaton Vance saddled each of their captive participants with a sub-standard Plan stacked with inferior to mediocre proprietary Eaton Vance products.  Most of the available investment options were plagued by high relative fees and poor to mediocre investment performance, or both.  Based on the totality of the circumstances, each of the Plan's participants was subjected to the infirmities of a poorly-constructed plan.

### B.  Eaton Vance Disloyally Charged Participants More than Outside Clients

20.     Eaton Vance is a registered investment adviser and its business focuses on providing investment advice to various large investors.  As part of its investment advisory business, Eaton Vance offers its customers—including participants in the Plan—a variety of mutual funds.  Eaton Vance charges set fees for providing investment advice to these mutual funds.  Eaton Vance charges these "investment advisory fees" solely for managing investments and not for services such as custody or recordkeeping, which carry their own distinct fees.  Plan participants cannot negotiate their investment advisory fees with Eaton Vance.  They must accept whatever fees Eaton Vance sets.

21.     In addition to its mutual fund business, Eaton Vance provides investment advisory services to large, outside clients that hire Eaton Vance to manage their individual portfolios (such as "institutional investors" like the Massachusetts State Employees' Retirement System or the Jackson National Life Insurance Company).  These individual portfolios are known as "separate accounts," "separately managed accounts," or "sub-advisory accounts." Because of their size, separate account clients have the bargaining power to negotiate the investment advisory fees they

pay to Eaton Vance.[1] Accordingly, separate account clients typically pay far lower investment advisory fees than Plan participants, who cannot negotiate their investment advisory fees.

22.     Yet the investment advisory services Eaton Vance provides its proprietary mutual funds are no different from the services it provides to separate accounts.  Eaton Vance's separate accounts often contain substantially *the same* investments as Eaton Vance's mutual funds with similar investment strategies.  Indeed, Eaton Vance renders substantially similar investment advisory services to its mutual fund clients and separate account clients who have like asset class types (*e.g.*, equities, bonds, etc.) and like investment strategies (*e.g.*, a strategy for U.S. large-cap equity growth).  Based on information and belief, Eaton Vance assigns the same personnel to manage its proprietary mutual funds and its separate accounts with like investment strategies.

23.     Furthermore, when the Eaton Vance portfolio management team decides to buy a particular stock, it buys a large block of the stock and then allocates it pro rata to each of its accounts that have similar investment strategies, including to separate accounts and proprietary mutual funds.  Slight variations in positions may be attributable to different levels of available cash or specific individual restrictions (*e.g.*, no tobacco stocks), but the end result is that all of the various accounts managed by Eaton Vance with a particular investment strategy have substantially similar investment positions, whether the investor's portfolio is invested in a separate account or a parallel-strategy mutual fund.[2]

---

[1] For instance, Eaton Vance may agree to aggregate the assets of various separate accounts belonging to one client for purposes of calculating the investment advisory fee.  These clients receive the benefit of a lower effective fee rate due to such aggregation.

[2] In addition to providing substantially the same investment advisory services, Eaton Vance provides substantially similar administrative services and related office facilities for both its mutual funds and its separate account clients, which it bundles into the price of its investment advisory fee.

24.     For example, Eaton Vance offers an investment strategy known as Global Macro Absolute Return Advantage.  Eaton Vance offers Plan participants a proprietary mutual fund that invests according to this strategy (the Eaton Vance Global Macro Absolute Return Advantage Fund).  Eaton Vance also manages the same investment strategy for Jackson National Life Insurance Company.  The mutual fund and the Jackson National account have identical investment objectives and invest in securities, derivatives and other instruments to establish long and short investment exposures around the world.  The mutual fund and the Jackson National account both invest in multiple countries and frequently have significant exposure to foreign currencies and investments.  Their investment processes are identical; their benchmark—ICE Bank of America/Merrill Lynch 3-month Treasury Bill—is identical; and their investment team of John Bauer, Michael Cirami, and Eric Stein is identical.  However, Plan participants pay Eaton Vance nearly *double* what Jackson National pays Eaton Vance.

25.     The Plan—with over $400 million in assets—had sufficient assets to qualify for separate account treatment and negotiate lower investment advisory fees with Eaton Vance.  Yet, Eaton Vance loaded the Plan with its proprietary mutual funds, which carried substantially higher investment advisory fees than separate accounts with like strategies.  Accordingly, Plan participants who invested in Eaton Vance proprietary funds paid Defendants significantly higher investment advisory fees than separate account clients—for basically the same investment advisory services.[3]

---

[3] For the avoidance of doubt, Plaintiff is not making a comparison between mutual fund operating expenses and separate account investment advisory fees, but an "apples-to-apples" comparison between the *investment advisory fees* Eaton Vance charges Plan participants and the *investment advisory fees* Eaton Vance charges outside clients.

26.     Based on public information, Eaton Vance does not offer separate accounts for every corresponding mutual fund in the Plan.  However, of the twenty proprietary mutual funds on the Plan with known comparable separate accounts, at least nineteen carry higher investment advisory fees.  Plan participants who invested in any of these nineteen funds paid Eaton Vance higher investment advisory fees than outside clients who invested in the *same investment strategies* with similar assets.  The below chart displays the difference between the investment advisory fees Eaton Vance charges Plan participants and the highest investment advisory fees it charges separate account clients for the same investment strategy.

| *Strategy* | *Fees Defendants Charge Plan Participants* | *Highest Non-Discounted Fees Eaton Vance Defendants Offer to Outside Clients (i.e., Separate Account)* |
|---|---|---|
| *Eaton Vance Stock Fund* | **0.59%** of the fund's net assets | Between **0.35%** on accounts with assets over $200 million and **0.60%** for small accounts with $25 million in assets. |
| *Eaton Vance Atlanta Capital Select Fund[4]* | **0.70%** of the fund's net assets | Between **0.40%** on accounts with assets over $350 million and **0.60%** on smaller accounts with $50 million in assets. |
| *Eaton Vance Focus Growth Opportunities Fund* | **0.75%** to **0.65%** of the fund's net assets. | Between **0.30%** on accounts with assets over $200 million and **0.45%** on smaller accounts with $50 million in assets. |
| *Eaton Vance Growth Fund* | **0.65%** of the fund's net assets. | Between **0.30%** on accounts with assets over $100 million and **0.45%** on smaller accounts with $50 million in assets. |

---

[4] Atlantic Capital—a subsidiary of Eaton Vance—is the investment sub-adviser to this fund.

| | | |
|---|---|---|
| *Eaton Vance Focus Value Opportunities Fund* | **0.75%** of the fund's net assets. | Between **0.50%** on accounts with assets over $200 million and **0.80%** on smaller accounts with assets of $25 million. |
| *Eaton Vance Large Cap Value Fund* | **0.625%** of the fund's net assets. | Between **0.35%** on accounts with assets over $200 million and **0.60%** on smaller accounts with assets of $25 million. |
| *Eaton Vance Atlanta Capital SMID Fund*[5] | **0.81%** of the fund's assets. | Between **0.60%** on accounts with assets over $250 million and **0.80%** on smaller accounts with $50 million in assets. |
| *Eaton Vance Small Cap Fund* | **0.90%** of the fund's net assets. | Between **0.60%** on accounts with assets over $200 million and **0.80%** on smaller accounts with $25 million in assets. |
| *Eaton Vance Income Fund of Boston* | **0.59%** of the fund's net assets. | Between **0.35%** on accounts with assets over $200 million and **0.50%** on smaller accounts with $50 million in assets. |
| *Eaton Vance High Income Opportunities Fund* | **0.43%** of the fund's net assets. | Between **0.35%** on accounts with assets over $200 million and **0.50%** on smaller accounts with $50 million in assets. |
| *Eaton Vance Core Bond Fund* | **0.45%** of the fund's net assets. | Between **0.20%** on accounts with assets over $200 million and **0.25%** on smaller accounts with $100 million in assets. |
| *Eaton Vance Multi-Sector Income Fund* | **0.55%** of the fund's net assets. | Between **0.30%** on accounts with |

---

[5] Atlantic Capital—a subsidiary of Eaton Vance—is the investment sub-adviser to this fund.

| | | |
|---|---|---|
| | | assets over $100 million and **0.45%** on smaller accounts with $25 million in assets. |
| *Eaton Vance Floating Rate Fund* | **0.64%** of the fund's net assets. | Between **0.35%** on accounts with assets over $200 million and **0.475%** on smaller accounts with $100 million in assets. |
| *Parametric Emerging Markets Fund[6]* | **0.71%** to **0.85%** of the fund's net assets. | Between **0.65%** on accounts with assets over $50 million and **0.80%** on small accounts with $150 million in assets. |
| *Parametric Commodity Fund* | **0.55%** of the fund's net assets. | Between **0.35%** on accounts with assets over $200 million and **0.50%** on smaller accounts with $25 million in assets. |
| *Eaton Vance Emerging Markets Local Income* | **0.65%** of the fund's net assets. | Between **0.50%** on accounts with assets over $300 million and **0.65%** on smaller accounts with $150 million in assets. |
| *Eaton Vance Hexavest Global Equity Fund[7]* | **0.80%** of the fund's net assets. | Between **0.40%** on accounts with assets up to $40 million and **0.60%** on accounts with over $10 million in assets. |
| *Eaton Vance Real Estate Fund* | **0.80%** of the fund's net assets. | Between **0.50%** on accounts with assets over $100 million and **0.70%** on smaller accounts with $25 million in assets. |

---

[6] Parametric—a subsidiary of Eaton Vance—is the investment sub-adviser to this fund.

[7] Hexavest—a subsidiary of Eaton Vance—is the investment sub-adviser to this fund.

27.     The separate account advisory fees listed in the above chart represent *non-negotiated, non-discounted fees.*  In other words, these are the highest fees Eaton Vance will charge its separate account clients.  The actual fees Eaton Vance charges are likely lower than those listed because separate account clients have sufficient assets to negotiate lower fees and/or bundle the fees associated with separate accounts in several investment strategies.  Accordingly, in the vast majority of cases, investment advisory fees that Eaton Vance charges participants are higher than the *highest possible* investment advisory fees Eaton Vance charges its outside clients who invest in the same investment strategy with similar assets.

28.     If Eaton Vance were to deal with its Plan participants on terms at least as favorable as it provides to outside investors with similar amounts of assets, Eaton Vance would allow Plan participants to bundle their assets across strategies in separate accounts.  Given the fact that the Plan's total assets exceed $400 million, the resulting reduction in fees would be highly meaningful for Plan participants.

29.     In addition, the separate account fees shown in the chart above are very likely not the net fees that Eaton Vance retains.  Based on information and belief, Eaton Vance pays a commission to the Eaton Vance sales personnel who procure each separate account.  This commission comes out of the investment advisory fee Eaton Vance collects.  By contrast, Eaton Vance does not pay a commission to sales personnel on the Plan assets invested in the mutual funds.  Therefore, not only does Eaton Vance charge plan participants more than outside clients, but the Company also retains a larger percentage of Plan participants' fees than outside clients' fees.  Accordingly, Eaton Vance has multiple (perverse) incentives to offer participants their proprietary mutual funds instead of separate accounts.

16

30.     The total fees that Eaton Vance charges participants should at least be no worse than what it charges its separate account clients with similar amounts of assets under management and identical investment strategies.   Instead, Eaton Vance gouged its employees on fees. Ironically, because many separate account clients are themselves pension funds, Eaton Vance almost certainly gave a better deal to retired workers who had spent their careers at companies other than Eaton Vance—workers to whom Eaton Vance did not owe the same fiduciary duties as to its own Plan participants.

31.     In light of the fee disparities described above, Eaton Vance failed to adequately investigate the use of its own separately managed accounts as investment options for the Plan. This failure is particularly egregious since the largest percentage of Eaton Vance's assets under management comes from non-mutual fund alternative accounts, according to Eaton Vance Corporation's annual reports.

32.     Plaintiff did not have knowledge of all material facts and information regarding the fees Eaton Vance charged its outside clients necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA, until shortly before this suit was filed.

**C.  Eaton Vance Treated Plan Participants Less Favorably Than Other Shareholders**

33.     Adding insult to injury, Eaton Vance also offered Plan participants more expensive I share classes of five mutual funds while it was selling the cheaper R6 share class to the public. Each share class represents an investment interest in the same mutual fund portfolio; the only difference is the cost to the investor.  Under ERISA, Eaton Vance is prohibited from offering its mutual funds to Plan participants under terms and conditions less favorable than those offered to other investors.  By engaging in these prohibited transactions, Eaton Vance offered its proprietary

funds illegally to the Plan and therefore earned millions of dollars in investment advisory fees that otherwise it was not entitled to earn.  The funds at issue include:

Eaton Vance Atlanta Capital SMID-Cap Fund

Eaton Vance Balanced Fund

Eaton Vance Income Fund of Boston

Eaton Vance Large Cap Value Fund

Eaton Vance Multi-Sector Income Fund

34.     Plaintiff did not have knowledge of all material facts and information regarding the fees Eaton Vance charged outside shareholders necessary to understand that the Eaton Vance Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA, until shortly before this suit was filed.

35.     In addition to its separately managed accounts, Eaton Vance offers outside investors another non-mutual fund alternative called collective investment trusts.  Collective trusts are a common investment vehicle in large 401(k) plans and are accessible even to midsize plans with $100 million in assets or more.  *See* Anne Tergesen, *401(k)s Take a New Tack*, Wall St. J. (Sept. 25, 2015, 5:30 AM), http://www.wsj.com/articles/some-funds-in-your-401-k-arent-really-mutual-funds-after-all-1443173400.  Due to their potential to reduce overall plan costs, collective trusts are becoming the norm within larger defined contribution plans.  *See* Investment Company Institute, A Close Look at 401(k) Plans, at 9 (Dec. 2015), *https://www.ici.org/pdf/ppr_15_dcplan_profile_401k.pdf*; *see also* Second Amended Class Action Compl., *Moreno et al. v. Deutchse Bank Americas Holding Corp. et al.*, No. 1:15-cv-09936 (LGS), 2017 WL 942381 (S.D.N.Y.) (describing the ICI report as "reporting that in plans with over $1 billion in assets, by the end of 2013 more assets were held

in collective trusts than in mutual funds").  Portfolios constructed as collective investment trusts mirror the portfolios of their mutual fund counterparts; however, they carry much lower fees. Despite the advantages of collective investment trusts, Eaton Vance refused to offer them to Plan participants.

36.     Eaton Vance would not have had to look past their own business to obtain low-cost alternatives to mutual funds and to obtain the best possible price for the Plan.  Eaton Vance offers Large Cap Growth, Large Cap Value and High Yield strategies for *other* employee benefit plans as collective investment trusts.  Eaton Vance also created a bank loan collective investment trust for Ameriprise as a lower cost alternative to its mutual funds.

37.     By failing to investigate the use of collective investment trusts, Eaton Vance caused the Plan to pay unnecessary fees.  Furthermore, by offering these institutional investment vehicles to shareholders in other plans but not offering them to the Plan's participants, Eaton Vance dealt with other shareholders on a more favorable basis than the Plan's participants.

**D.  Improper Use of Plan Assets to Seed New and Untested Mutual Funds**

38.     Eaton Vance loaded the Plan almost exclusively with Eaton Vance mutual funds, without investigating whether Plan participants would be better served by investments managed by unaffiliated companies or by cheaper alternative products such as separate accounts or collective investment trusts, which Eaton Vance offered to outside clients.  In effect, Eaton Vance used the Plan as an incubating laboratory to promote new and untested mutual funds for the purpose of furthering Eaton Vance's mutual fund business.

39.     Of the 42 total non-money market investments strategies, 35 were managed by one of the Eaton Vance Defendants.  Moreover, Eaton Vance funds were the exclusive actively managed strategies available for Plan participants.  Rather than adhering to a rigorous process of

19

identifying, evaluating, and selecting the optimal investment options for the Plan, the Eaton Vance process was limited solely to deciding which Eaton Vance mutual funds to add and keep in the Plan. Eaton Vance managed these funds for a profit by charging Plan participant significant investment advisory fees.

40.     Many of the proprietary funds selected and/or retained by the Plan have little or no track record. Eaton Vance has a pattern and practice of including new and unproven mutual funds as investment options within the Plan shortly after the funds are launched. While this may benefit Eaton Vance, helping it to achieve economies of scale for new funds and market those new funds to other investors, it has not been beneficial for the Plan and the Plan's participants. To the contrary, these new and untested funds have consistently underperformed, and yet Eaton Vance refuses to remove them from the Plan's investment lineup.

41.     Launching a new mutual fund is a serious economic undertaking for investment advisers. There are significant start-up costs and on-going operational expenses tied to investment personnel, marketing, research, and overhead. During the period when the assets of a small mutual fund generate inadequate investment advisory fees, the investment adviser must advance its fixed costs and operates at a loss until assets grow. The investment adviser can only make a profit when its new mutual funds have received sufficient assets to achieve what is known in the investment industry as adequate economies of scale.

42.     This presents three powerful incentives to attract assets to a newer fund. First, additional assets help lower the fund's expenses as a percentage of total assets, allowing the fund to lower its fees and thereby attract new investors. Second, sufficient new assets relieve the investment adviser of its burden of advancing overhead costs and allows it to collect profits. Finally, mutual funds require assets to manage.

43.     Prudent investors, however, are typically wary of investing in new funds.  New funds are generally imprudent selections for a retirement plan for two reasons.  *First*, there is no track record of success that might justify inclusion within the plan.  *Second*, new funds are typically quite expensive.  Therefore, attracting investors early in a fund's life is a difficult but critical task to the survival of the fund.

44.     Case in point, Eaton Vance does not typically sell its mutual funds directly to the public; instead, Eaton Vance arranges for broker-dealers, such as Merrill Lynch or Morgan Stanley, to sell the Eaton Vance mutual funds to the customers of the broker-dealers.  Arranging for these broker-dealers to sell Eaton Vance mutual funds falls under the purview of the Eaton Vance wholesaler, and involves a process of the mutual fund becoming approved for sale on the broker-dealer's platform.  In most cases, to become an approved mutual fund, the mutual fund must meet certain thresholds in terms of a minimum three-year investment performance track record and minimum level of assets.  It was commonly understood and a customary practice within Eaton Vance that the firm would use the Plan and employee money to establish the three-year performance track record and build-up the assets to the point that the mutual fund would qualify for approval on the broker-dealer's platform.  Eaton Vance's customary practice is anathema to the principle of acting with an "eye single" to the interests of plan participants.

45.     Many of the funds had high fees and performed poorly after Eaton Vance forced them on the Plan.  Eaton Vance's imprudence and disloyalty in selecting and retaining unreasonably expensive and poorly performing funds is not the result of mere negligence.  Rather, Eaton Vance intentionally exposed Plan participants to unreasonably high fees because doing so significantly benefited the Eaton Vance.  As a result, the Eaton Vance process was tainted by a failure of effort, competence, or loyalty.

### E.  Inclusion of Untested Funds Within the Plan

46.     Listed below are the untested Eaton Vance Funds that performed poorly after their inclusion in the Plan.

### a.  Eaton Vance Atlanta Capital Select Equity Fund

47.     In January 2012, Eaton Vance launched the Eaton Vance Atlanta Capital Select Equity Fund.  The Fund's investment objective is to seek long-term capital growth.  The fund normally invests in companies across a broad capitalization range, including smaller companies, but primarily invests in mid- to large-cap companies with capitalizations comparable to those companies included in the Russell 1000 Index.

48.     Eaton Vance added the fund to the Plan shortly after it was launched—even though marketplace replete with established, competitive large-cap growth offerings from companies such as Prudential, Harbor Capital, T. Rowe Price, Fidelity, and Morgan Stanley.

49.     With fees of .70%, Morningstar rates the Select Equity Fund's fees as above average within the universe of large cap growth funds.  Despite collecting above average fees, Eaton Vance and Atlanta Capital achieved below average performance.

50.     Since 2013, of the more than one thousand funds in the Morningstar large cap growth universe, the Select Equity Fund finished in the bottom decile twice, the bottom quartile once, and the bottom half once.  Of the hundreds of funds in the large cap growth universe, as of June 30, 2018, Morningstar ranks the fund's returns on a trailing quarterly basis in the bottom 97th percentile for the 1-year period; the bottom 83rd percentile for the 3-year period; and the bottom 87th percentile for the 5-year period.  On a scale of one star to five stars, with one star being the worst, Morningstar rated this fund two stars in the Large Cap Growth category for the

past three and five years among large cap growth funds.  In other words, the vast majority of large cap growth funds on the market performed better than the Select Equity Fund since 2013.

51.     As shown below, this Fund has been under water since inception, underperforming its benchmark, the Russell 1000 Index, four out of the five years since 2013.  This Fund has also significantly underperformed funds identified by Morningstar as comparator large cap growth funds since 2013.  Eaton Vance would have seen the chronic underperformance in real time—not simply *ex post* with the benefit of hindsight.

| Fund | 2013 | 2014 | 2015 | 2016 | 2017 | Cumulative (2013-2017) |
|---|---|---|---|---|---|---|
| Eaton Vance Atlanta Capital Sel Eq R6 (ESERX) | 29.64 | 11.59 | 2.92 | 5.87 | 19.72 | **+69.74%** |
| | | | | | | |
| Russell 1000 USD | 33.11 | 13.24 | 0.92 | 12.05 | 21.69 | **+81.01%** |
| +/-    Russell 1000 Value USD | -3.47 | -1.65 | 2.00 | -6.19 | -1.97 | |
| +/- Cumulative | | -5.12 | -3.12 | -9.31 | -11.28 | **-11.28%** |
| | | | | | | |
| T. Rowe Price Blue Chip Growth Fund (TRBCX) | 41.57 | 9.28 | 11.15 | 0.98 | 36.55 | **+99.53%** |
| +/-  TRBCX | -11.94 | 2.31 | -8.23 | 4.88 | -16.83 | |
| +/- Cumulative | | -9.63 | -17.86 | -12.98 | -29.81 | **-29.81%** |
| | | | | | | |
| Prudential    Jennison Growth Fund R6 (PJFQX) | 37.06 | 9.61 | 10.80 | -1.50 | 36.54 | **+92.51%** |
| +/-  PJFQX | -7.42 | 1.97 | -7.88 | 7.37 | -16.82 | |
| +/- Cumulative | | -5.45 | -13.33 | -5.96 | -22.78 | **-22.78%** |
| | | | | | | |
| Harbor    Capital Appreciation    Fund Class I (HACAX) | 37.66 | 9.93 | 10.99 | -1.07 | 36.59 | **+94.1%** |
| +/-  HACAX | -8.02 | 1.66 | -8.07 | 6.94 | -16.87 | |
| +/- Cumulative | | -6.36 | -14.43 | -7.49 | -24.36 | **-24.36%** |
| | | | | | | |

52.     The comparator funds listed in the table above are well known, readily available, and easily accessible to all investors.   These superior alternative investments were readily apparent such that a reasonable and objective investigation would have uncovered them.  Eaton Vance would not have had to scour the market to find them.

53.     But driven by self-interest, Eaton Vance selected an expensive and untested Atlanta Capital Select Equity Fund for the Plan when any reasonable fiduciary acting in the bests interests of participants would have engaged a more rigorous process and selected prudently instead of on self-interest.

54.     To make matters worse, Eaton Vance continued to offer the fund long after it became apparent that the fund's performance was inferior to its benchmark and alternative, readily available funds with an equivalent investment strategy.  A fiduciary acting in the best interest of the Plan's participants and with due care would have removed the Atlanta Capital Select Equity Fund from the Plan.

55.     However, Eaton Vance had business and financial incentives to select and maintain the Atlanta Capital Select Equity Fund in the Plan.  Even though the fund was untested and performed poorly, Eaton Vance collected millions of dollars in advisory fees from the fund. Eaton Vance also used the Plan to help increase the assets and develop the track record of this new and untested fund.  By themselves, these actions suggest improper self-dealing.

**b.  Eaton Vance Hexavest Global Equity Fund**

56.     Similarly, Eaton Vance launched the Eaton Vance Hexavest Global Equity Fund in August 2012 and added it to the Plan shortly thereafter.

57.     The fund invests at least 80% of its net assets in equity securities of issuers located throughout the developed world, including the United States.  Although it is not required to do so, typically, the fund invests in companies with large market capitalization.

58.     Despite its lack of track record and a marketplace replete with competitive global equity offerings from companies such as Dodge and Cox, Oakmont, and Artisan, Eaton Vance added the fund to the Plan shortly after it was launched.  Like the Eaton Vance Hexavest fund, each comparator fund invested primarily in the stock of companies with large market capitalizations located throughout the developed world.  And each identified the MSCI World Index as its investment benchmark.

59.     As shown below, the Hexavest Global Equity Fund has been under water since inception, underperforming its benchmark, the MSCI World Index, in three out of the five years and by a significant total of 7.87%.  Since 2013, this Fund has also significantly underperformed funds identified by Morningstar as comparator global equity funds.  Of the hundreds of funds in the global equity universe, as of June 30, 2018, Morningstar ranks the fund's returns on a trailing quarterly basis in the bottom 89th percentile for the 1-year period; the bottom 59th percentile for the 3-year period; and the bottom 70th percentile for the 5-year period.

60.     The below table compared the performance of the Hexavest Global Equity Fund with its benchmark and with comparable global equity funds in each year since 2013 and cumulatively.  Eaton Vance would have seen the chronic underperformance in real time—not simply *ex post* with the benefit of hindsight.

| Fund | 2013 | 2014 | 2015 | 2016 | 2017 | Cumulative (2013-2017) |
|---|---|---|---|---|---|---|
| Eaton Vance Hexavest Global Equity Fund Class I (EHGIX) | 22.36 | 3.90 | -0.36 | 12.07 | 14.82 | **+52.79%** |
| MSCI World NR USD | 26.68 | 4.94 | -0.87 | 7.51 | 22.40 | **+60.66%** |
| +/- MSCI World NR USD | -4.32 | -1.04 | 0.51 | 4.56 | -7.58 | |
| +/- Cumulative | | -5.36 | -4.85 | -0.29 | -7.87 | **-7.87%** |
| Dodge and Cox Global Stock Fund (DODWX) | 33.17 | 6.95 | -8.05 | 17.1 | 21.51 | **+70.68%** |
| +/- DODWX | -10.81 | -3.05 | 7.69 | -5.03 | -6.69 | |
| +/- Cumulative | | -13.86 | -6.17 | -11.2 | -17.89 | **-17.89%** |
| Oakmont Global Fund Institutional Class (OANGX) | 34.12 | 3.7 | -4.38 | 4.69 | 27.34 | **+65.47%** |
| +/- OANGX | -11.76 | 0.2 | 4.02 | 7.38 | -12.52 | |
| +/- Cumulative | | -11.56 | -7.54 | -0.16 | -12.68 | **-12.68%** |
| Artisan Global Value Fund I Class (APHGX) | 31.44 | 4.79 | -2.65 | 10.27 | 21.87 | **+65.72%** |
| +/- APHGX | -9.08 | -0.89 | 2.29 | 1.8 | -7.05 | |
| +/- Cumulative | | -9.97 | -7.68 | -5.88 | -12.93 | **-12.93%** |

61.     The comparator funds listed in the tables above are well known, readily available, and easily accessible to all investors.  These superior alternative investments were readily apparent such that a reasonable and objective investigation would have uncovered them.

62.     But driven by self-interest, Eaton Vance selected an expensive and untested Hexavest Global Equity Fund for the Plan when any reasonable fiduciary acting in the bests interests of participants would have engaged a more rigorous process and selected prudently instead of on self-interest.

63.     To make matters worse, Eaton Vance continued to offer the Hexavest Global Equity Fund long after it became apparent that the fund's performance was inferior to its benchmark and alternative, readily available funds with equivalent investment strategies.  A fiduciary acting in the best interest of the Plan's participants and with due care would have removed the Hexavest Global Equity Fund from the Plan.

64.     However, Eaton Vance had business and financial incentives to select and maintain the Hexavest Global Equity Fund in the Plan.  Even though the fund was untested and performed poorly, Eaton Vance collected millions of dollars in advisory fees from the fund.  Eaton Vance also used the Plan to help increase the assets and develop the track record of this new and untested fund.  By themselves, these actions suggest improper self-dealing.

### c.  Eaton Vance Focused Value Opportunities Fund

65.     Eaton Vance launched the Focused Value Opportunities Fund in 2011 and added it in the Plan shortly thereafter.  With fees of .80%, Morningstar rates the fees as above average within the universe of large cap value funds.  Yet, the fund exhibited below average performance.

66.     Within 3 years, it should have been apparent that the fund was underwater relative to its benchmark, the Russell 1000 Value Index.  Of the hundreds of funds in the large cap universe, as of June 30, 2018, Morningstar ranks the fund's performance on a trailing quarterly basis in the bottom 69th percentile for the 3-year period; and the bottom 76th percentile for the 5-year period.

67.     Moreover, any reasonably prudent and disinterested fiduciary would have known that funds with more established track records and lower expenses—such as the Columbia Select Large Cap Value Fund, the Nuveen Large Cap Value Fund, and the T. Rowe Price Institutional Large Cap Value Fund—regularly outperformed the Focused Value Opportunities Fund.  Eaton

Vance would have seen the chronic underperformance in real time—not simply *ex post* with the benefit of hindsight.

68.     Morningstar identifies each of the funds listed above, and in the chart below, as comparator funds within the large cap value category.  Based on the chart below, Eaton Vance would have seen the chronic underperformance in real time—not simply *ex post* with the benefit of hindsight.

| Fund | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | Cumulative (2012-2017) |
|---|---|---|---|---|---|---|---|
| Eaton Vance Focused Value Fund I (EIFVX) | 17.87 | 32.47 | 10.27 | -0.21 | 7.79 | 20.42 | **+88.61%** |
| | | | | | | | |
| Russell 1000 Value Index | 17.51 | 32.53 | 13.45 | -3.83 | 17.34 | 13.66 | **+90.66%** |
| +/- Russell 1000 Value Index | 0.36 | -0.06 | -3.18 | 3.62 | -9.55 | 6.76 | |
| +/- Cumulative | | 0.3 | -2.88 | 0.74 | -8.81 | -2.05 | **-2.05%** |
| | | | | | | | |
| Columbia Select Large Cap Value I (CSVZX) | 17.84 | 38.06 | 11.07 | -5.58 | 20.66 | 20.36 | **+102.41%** |
| +/- CSVZX | 0.03 | - 5.59 | -0.80 | 5.37 | -12.87 | 0.06 | |
| +/- Cumulative | | -5.56 | -6.36 | -0.99 | -13.86 | -13.80 | **-13.80%** |
| | | | | | | | |
| Nuveen Large Cap Value Fund I (NNGRX) | 15.21 | 36.18 | 13.95 | -9.32 | 19.62 | 16.75 | **+92.39%** |
| +/- NNGRX | 2.66 | -3.71 | -3.68 | 9.11 | -11.84 | 3.67 | |
| +/- Cumulative | | -1.05 | -4.73 | 4.38 | -7.45 | -3.78 | **-3.78%** |
| | | | | | | | |
| T. Rowe Price Institutional Large Cap Value Fund I (TILCX) | 17.85 | 33.98 | 13.13 | -3.32 | 16.20 | 16.83 | **+94.67%** |
| +/- TILCX | 0.02 | -1.51 | -2.86 | 3.11 | -8.41 | 3.59 | |
| +/- Cumulative | | -1.49 | -4.35 | -1.24 | -9.65 | -6.06 | **-6.06%** |

69.     The comparator funds listed in the tables above are well known, readily available, and easily accessible to all investors.  These superior alternative investments were readily apparent such that a reasonable and objective investigation would have uncovered them.  Eaton Vance would not have had to scour the market to find them.

70.     But driven by self-interest, Eaton Vance selected an expensive and untested Eaton Vance Focused Value Fund for the Plan when any reasonable fiduciary acting in the best interests of participants would have engaged a more rigorous process and selected prudently instead of on self-interest.

71.     To make matters worse, Eaton Vance continued to offer the Eaton Vance Focused Value Fund long after it became apparent that the fund's performance was inferior to alternative, readily available funds with equivalent investment strategies.  A fiduciary acting in the best interest of the Plan's participants and with due care would have removed the Eaton Vance Focused Value Fund from the Plan.

72.     However, Eaton Vance had business and financial incentives to select and maintain the Eaton Vance Focused Value Fund in the Plan.  Even though the fund was untested and performed poorly, Eaton Vance collected millions of dollars in advisory fees from the fund.  This by itself is suggestive of improper self-dealing.

### d.  Eaton Vance Richard Bernstein All Asset Strategy

73.     Eaton Vance launched Richard Bernstein All Asset Strategy on October 12, 2010. The fund's objective is total return.  In seeking its investment objective, the Fund invests at least 80% of its net assets (plus any borrowings for investment purposes) in equity securities and derivative instruments that provide exposure to equity.  Morningstar places the fund in the World Stock category.

74.     Since inception, the fund has significantly underperformed its peers in the Morningstar World Stock category, such as Artisan, MFS, and Fidelity.  After three years, it became clear the fund would be a chronic underachiever relative to these more established peer funds.  The fund's investment performance never recovered and continues to underperform.

75.     Each of the funds listed below had more established performance track records than Eaton Vance's newly minted fund.  Furthermore, the Artisan, Fidelity and MFS funds had lower expense ratios than the Eaton Vance fund.  The chart below illustrates the Eaton Vance fund's underperformance in the 2011-2017-time period.  Eaton Vance would have seen the chronic underperformance in real time—not simply *ex post* with the benefit of hindsight.

| Fund | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | Cumulative (2012-2017) |
|---|---|---|---|---|---|---|---|---|
| Eaton Vance Richard Bernstein All Equity Fund (ERBIX) | -6.16 | 12.86 | 29.90 | 2.90 | -0.46 | 9.99 | 20.92 | **+69.95%** |
| | | | | | | | | |
| Artisan Global Value Fund (APHGX) | 1.50 | 19.00 | 31.44 | 4.79 | -2.65 | 10.27 | 21.87 | **+86.22%** |
| +/- APHGX | -7.66 | -6.14 | -1.54 | -1.89 | 2.19 | -0.28 | -0.95 | |
| +/- Cumulative | | -13.80 | -15.34 | -17.23 | -15.04 | -15.32 | -16.27 | **-16.27%** |
| | | | | | | | | |
| Fidelity Advisor Worldwide Fund I Class (FWIFX) | -6.79 | 18.65 | 31.52 | 0.42 | 3.50 | -0.67 | 29.54 | **+76.17%** |
| +/- FWIFX | 0.63 | -5.79 | -1.62 | 2.48 | -3.96 | 10.66 | -8.62 | |
| +/- Cumulative | | -5.16 | -6.78 | -4.3 | -8.26 | 2.4 | -6.22 | **-6.22%** |
| | | | | | | | | |
| MFS Global Equity I (MWEIX) | -4.14 | 23.72 | 27.81 | 4.02 | -1.44 | 7.35 | 23.91 | **+81.23%** |
| +/- MWEIX | -2.02 | -10.86 | 2.09 | -1.12 | 0.98 | 2.64 | -2.99 | |
| +/- Cumulative | | -12.88 | -10.79 | -11.91 | -10.93 | -8.29 | -11.28 | **-11.28%** |

76.     The comparator funds listed in the tables above are well known, readily available, and easily accessible to all investors.  These superior alternative investments were readily apparent such that a reasonable and objective investigation would have uncovered them.  Eaton Vance would not have had to scour the market to find them.

77.     But driven by self-interest, Eaton Vance selected an expensive and untested Richard Bernstein All Equity Fund for the Plan when any reasonable fiduciary acting in the bests interests of participants would have engaged a more rigorous process and selected prudently instead of on self-interest.

78.     To make matters worse, Eaton Vance continued to offer the Richard Bernstein All Equity Fund even long after it became apparent that the fund's performance was inferior to alternative, readily available funds with equivalent investment strategies.  A fiduciary acting in the best interest of the Plan's participants and with due care would have removed the Richard Bernstein All Equity Fund from the Plan.

79.     However, Eaton Vance had business and financial incentives to select and maintain the Richard Bernstein All Equity Fund in the Plan.  Even though the fund was untested and performed poorly, Eaton Vance collected millions of dollars in advisory fees from the fund.  This by itself is suggestive of improper self-dealing.

80.     Eaton Vance's pattern of adding new and untested mutual funds to the Plan to support the Eaton Vance mutual fund business operations, and its failure to remove those funds, constitute breaches of the fiduciary duties of loyalty and prudence.

81.     Plaintiff did not have knowledge of all material facts and information regarding the Eaton Vance selection process and the performance of comparable funds necessary to understand

that Eaton Vance breached its fiduciary duties and engaged in other unlawful conduct in violation of ERISA, until shortly before this suit was filed.

**F. Eaton Vance Retained Poorly Performing Proprietary Funds to Serve Their Own Self-Interest**

82.     To make matters worse, Eaton Vance also retained many of its other proprietary mutual funds in the Plan despite 10-years of abysmal underperformance relative to their stated investment benchmarks and available comparator funds within their respective categories.  By doing so, Eaton Vance collected millions of dollars of fees every quarter from the participants who invested in them.  Any prudent, loyal fiduciary monitoring the Plan would have seen the underperformance in real-time and would have promptly engaged in a rigorous and objective process of identifying, evaluating and selecting their replacements.

83.     For actively managed investment strategies, Eaton Vance only offered participants Eaton Vance proprietary mutual funds, even though comparable but better-performing actively managed options were readily available to the Plan.  Indeed, Eaton Vance's funds were so underperforming—and superior investment options were so readily apparent—that an adequate investigation would have revealed their imprudence.  These facts concerning the chronic underperformance were available in real time to Defendants throughout the class period—not simply *ex post* with the benefit of hindsight.

84.     Not replacing the Eaton Vance funds with better options had a negative impact on the Plan, costing the participants millions of dollars in lost investment performance.

85.     The proprietary mutual funds listed below consistently underperformed relative to not only their benchmarks—and thus the market—but also available alternative funds below. Morningstar identifies each of the alternative funds listed in the charts below as comparator funds

within their respective investment strategies.  Furthermore, in its annual report, Eaton Vance has identified many of the investment advisers who manage these comparator funds as their peer companies.  These companies include Alliance Bernstein, Artisan Partners, Franklin, Invesco, Massachusetts Financial Services (MFS), Nuveen, T. Rowe Price, and Virtus.

### a.  Large Cap Value Fund

86.     With fees of .81%, the Large Cap Value Fund carries fees that Morningstar rates as above average within the universe of large cap value funds.  Despite charging above average fees, Eaton Vance returns below average performance.

87.     In the ten-year period between 2008 and 2017, the Large Cap Value Fund underperformed its benchmark, the Russell 1000 Value Index, seven out of ten years.  The underperformance for an active manager was staggering – 19.39%.   In the five-year period between 2008 and 2012, leading up to the approximate start of the class period, the fund underperformed the Russell 1000 Value Index by 11.19%.

88.     Among the hundreds and hundreds of funds in the Morningstar large cap value category, in 2009 the fund finished in the bottom 84th percentile; in 2010 in the bottom 90th percentile; and in 2011 in the bottom 75th percentile.  As of June 30, 2018, Morningstar ranks the fund's returns on a trailing quarterly basis in the bottom 65th percentile for the 3-year period; the bottom 57th percentile for the 5-year period; and the bottom 90th percentile for the 10-year period.  Given this abysmal performance, Eaton Vance should have undertaken an investigation of readily available alternatives and removed of the fund from the Plan by the start of the class period.

89.     Yet Eaton Vance continued to offer the fund to the Plan despite its poor investment track record, high fees, and a marketplace replete with clearly superior large cap value offerings from companies like MFS, Nuveen, and T. Rowe Price.

90.     As illustrated in the chart below, between 2013 and 2017, the Fund significantly underperformed its benchmark and funds identified by Morningstar as comparator funds in the large cap value strategy.  Eaton Vance would have seen the chronic underperformance in real time—not simply *ex post* with the benefit of hindsight.

| Fund | 2013 | 2014 | 2015 | 2016 | 2017 | Cumulative (2013-2017) |
|---|---|---|---|---|---|---|
| Eaton Vance Large-Cap Value Fund Class R6 (ERLVX) | 29.34 | 11.16 | -0.79 | 9.90 | 15.25 | **+64.86%** |
| | | | | | | |
| Russell 1000 Value TR USD | 32.53 | 13.45 | -3.83 | 17.34 | 13.66 | **+73.15%** |
| +/-  Russell | -3.19 | -2.29 | 3.04 | -7.44 | 1.59 | |
| +/- Cumulative | | -5.48 | -2.44 | -9.88 | -8.29 | **-8.29%** |
| | | | | | | |
| MFS Value Class I (MEIIX) | 35.86 | 10.55 | -0.54 | 14.13 | 17.76 | **+77.76%** |
| +/-  MEIIX | -6.51 | 0.61 | -0.25 | -4.23 | -2.51 | |
| +/- Cumulative | | -5.91 | -6.16 | -10.39 | -12.9 | **-12.90%** |
| | | | | | | |
| Nuveen Large Cap Value Fund I (NNGRX) | 36.18 | 13.95 | -9.32 | 19.62 | 16.75 | **+77.18%** |
| +/- NNGRX | -6.84 | -2.79 | 8.53 | -9.72 | -1.50 | |
| +/- Cumulative | | -9.63 | -1.10 | -10.82 | -12.32 | **-12.32%** |
| | | | | | | |
| T.    Rowe    Price Institutional Large Cap Value Fund (TILCX) | 33.98 | 13.13 | -3.32 | 16.20 | 16.83 | **+76.82%** |
| +/-  TILCX | -4.63 | -1.98 | 2.53 | -6.30 | -1.58 | |
| +/- Cumulative | | -6.61 | -4.08 | -10.38 | -11.96 | **-11.96%** |
| | | | | | | |
| Dodge and Cox Stock Fund (DODGX) | 40.55 | 10.40 | -4.49 | 21.28 | 18.33 | **+86.07%** |
| +/-  DODGX | -11.21 | 0.76 | 3.70 | -11.38 | -3.08 | |
| +/- Cumulative | | -10.45 | -6.75 | -18.13 | -21.21 | **-21.21%** |

91.     The comparator funds listed in the tables above are well known, readily available, easily accessible to all investors, and identified by Morningstar as comparable investments.

These superior alternative investments were readily apparent such that a reasonable and objective investigation would have uncovered them.  Eaton Vance would not have had to scour the market to find them, particularly given Eaton Vance's presence in the investments marketplace.

92.     A fiduciary acting in the best interest of the Plan's participants and with due care would have removed the Eaton Vance Large Cap Value Fund from the Plan.  But, Eaton Vance had business and financial incentives to select and maintain the Eaton Vance Large Cap Value Fund in the Plan.  Even though the Eaton Vance Large Cap Value Fund performed poorly, Eaton Vance collected millions of dollars in advisory fees from the fund.  This by itself is suggestive of improper self-dealing.

### b.  Eaton Vance Growth

93.     With expenses of .80%, Morningstar rates the Growth Fund's fees as above average within the universe of large cap growth funds.  Despite collecting above average fees, Eaton Vance returns below average performance.

94.     In the ten-year period between 2008 and 2017, the Eaton Vance Growth Fund underperformed its benchmark, the Russell 1000 Growth Index, six out of ten years.  The underperformance for an active manager was staggering—almost 16%.  In the five-year period leading up to the approximate start of the class period between 2008 and 2012, the fund underperformed the Russell 1000 Growth Index by 12.19%.

95.     Among the thousand funds in the Morningstar large cap growth category, the Growth Fund performed worse than 55 percent of funds in 2010; worse than 76% of funds in 2011; and worse than 73% of funds in 2012.  Given this abysmal performance, Eaton Vance should have undertaken an investigation of readily available alternatives and removed of the fund by the start of the class period.

96.     Yet Eaton Vance continued to offer the fund to Plan participants despite its poor investment track record, high fees, and a marketplace replete with clearly superior large cap growth offerings from companies such as T. Rowe Price, Alliance Bernstein, and Primecap.

97.     As illustrated in the chart below, the Eaton Vance Stock Fund underperformed both its benchmark and funds identified by Morningstar as comparator funds in the large cap growth strategy in the period between 2013 and 2017.  Eaton Vance would have seen the chronic underperformance in real time—not simply *ex post* with the benefit of hindsight.

| Fund | 2013 | 2014 | 2015 | 2016 | 2017 | Cumulative (2013-2017) |
|---|---|---|---|---|---|---|
| Eaton Vance Growth Fund Class I (ELCIX) | 35.61 | 14.58 | 7.26 | 2.59 | 25.72 | **+85.76**% |
| | | | | | | |
| Russell 1000 Growth TR USD | 33.48 | 13.05 | 5.67 | 7.08 | 30.21 | **+89.49%** |
| +/- Russell 1000 Growth TR USD | 2.13 | 1.53 | 1.59 | -4.49 | -4.49 | |
| +/- Cumulative | | 3.66 | 5.25 | 0.76 | -3.73 | **-3.73%** |
| | | | | | | |
| T. Rowe Price Blue Chip Growth Fund I Class (TBCIX) | 41.57 | 9.28 | 11.15 | 1.14 | 36.71 | **+99.85%** |
| +/- TBCIX | -5.96 | 5.30 | -3.89 | 1.45 | -10.99 | |
| +/- Cumulative | | -0.66 | -4.55 | -3.1 | -14.09 | **-14.09%** |
| | | | | | | |
| Alliance Bernstein Large Cap Growth I Class (ALLIX) | 37.38 | 13.95 | 10.86 | 3.09 | 31.72 | **+97.00%** |
| +/- ALLIX | -1.77 | 0.63 | -3.60 | -0.50 | -6.00 | |
| +/- Cumulative | | -1.14 | -4.74 | -5.24 | -11.24 | **-11.24%** |
| | | | | | | |
| PRIMECAP Odyssey Growth Fund (POGRX) | 39.30 | 13.92 | 6.18 | 8.42 | 32.05 | **+99.87%** |
| +/- POGRX | -3.69 | 0.66 | 1.08 | -5.83 | -6.33 | |
| +/- Cumulative | | -3.03 | -1.95 | -7.78 | -14.11 | **-14.11%** |

98.     The comparator funds listed in the tables above are well known, readily available, easily accessible to all investors, and identified by Morningstar as comparable investments. These superior alternative investments were readily apparent such that a reasonable and objective investigation would have uncovered them.  Eaton Vance would not have had to scour the market to find them, particularly given Eaton Vance's presence in the investments marketplace.

99.     A fiduciary acting in the best interest of the Plan's participants and with due care would have removed the Eaton Vance Stock Fund from the Plan.  But driven by self-interest, Eaton Vance retained the Eaton Vance Growth Fund for the Plan when any reasonable fiduciary acting in the best interests of participants would have engaged a more rigorous process and selected prudently instead of on self-interest.

100.    However, Eaton Vance had business and financial incentives to select and maintain the Eaton Vance Stock Fund in the Plan.  Even though the Eaton Vance Growth Fund performed poorly, Eaton Vance collected millions of dollars in advisory fees from the fund.  This by itself is suggestive of improper self-dealing.

### c.  Parametric Emerging Markets

101.    The Parametric Emerging Markets Fund is another chronic underperformer.  As of August 2018, on a scale of one star to five stars, with one star being the worst, Morningstar rated this fund two stars in the Emerging Markets category for the past three and five years among the hundreds of emerging markets funds.  Of the hundreds of funds in the emerging markets universe as of June 30, 2018, Morningstar ranks the fund's returns on a trailing quarterly basis in the bottom 73rd percentile for the 1-year period; the bottom 73rd percentile for the 3-year period; and the bottom 74th percentile for the 5-year period.

102.     In the five-year period leading up to the approximate start of the class period, the fund underperformed its benchmark, the MSCI Emerging Markets Index, by 5%.  It also underperformed other emerging markets funds managed by T. Rowe Price, Virtus, and Lazard by between 5% and 8%.  The underperformance was such that any prudent fiduciary would have undertaken an investigation of readily available alternatives that should have led to the removal of the fund at the start of the class period.

103.     Yet Eaton Vance kept the fund in the Plan despite the underperformance and a marketplace replete with clearly superior emerging market offerings from companies such as T. Rowe Price, Virtus, and Lazard.  And the underperformed continued unto the class period. The fund performed worse than 82% of funds in the Morningstar emerging markets category in 2017; worse than 71% of funds in the same category in 2015; and worse than 58% of funds in this category in 2014.

104.     The table below illustrates the Parametric Emerging Markets Fund's underperformance during the class period.  The fund, whose performance started deep in the hole beginning in 2013, continued to underperform both its benchmark and funds identified by Morningstar as comparator funds in the emerging markets strategy for the period between 2013 and 2017.  Eaton Vance would have seen the chronic underperformance in real time—not simply *ex post* with the benefit of hindsight.

| Fund | 2013 | 2014 | 2015 | 2016 | 2017 | Cumulative (2013-2017) |
|---|---|---|---|---|---|---|
| Parametric Emerging Markets Fund Class R6 (EREMX) | 0.99 | -3.86 | -16.34 | 12.34 | 27.40 | **+20.53%** |
| | | | | | | |
| MSCI EM NR USD | -2.60 | -2.19 | -14.92 | 11.19 | 37.28 | **+28.76%** |
| +/- MSCI EM NR USD | 3.59 | -1.67 | -1.42 | 1.15 | -9.88 | |
| +/- Cumulative | | 1.92 | 0.5 | 1.65 | -8.23 | **-8.23%** |
| | | | | | | |
| T. Rowe Price Emerging Markets Stock Fund I (PRZIX) | -4.69 | 1.41 | -11.46 | 12.11 | 43.04 | **+45.1%** |
| +/- PRZIX | 5.68 | -5.27 | -4.88 | 0.23 | -15.64 | |
| +/- Cumulative | | 0.41 | -4.47 | -4.24 | -19.88 | **-19.88%** |
| | | | | | | |
| Virtus Vontobel Emerging Markets Opportunities I (HIEMX) | -6.32 | 5.54 | -8.55 | 1.46 | 34.47 | **+26.6%** |
| +/- HIEMX | 7.31 | -9.40 | -7.79 | 10.88 | -7.07 | |
| +/- Cumulative | | -2.09 | -9.88 | 1.00 | -6.07 | **-6.07%** |
| | | | | | | |
| Lazard Emerging Markets Equity Portfolio I (LZEMX) | -0.80 | -4.16 | -20.16 | 20.52 | 28.02 | **+23.42%** |
| +/- LZEMX | 1.79 | 0.30 | 3.82 | -8.18 | -0.62 | |
| +/- Cumulative | | 2.09 | 5.91 | -2.27 | -2.89 | **-2.89%** |

105.    The comparator funds listed in the tables above are well known, readily available, easily accessible to all investors, and identified by Morningstar as comparable investments. These superior alternative investments were readily apparent such that a reasonable and objective investigation would have uncovered them. Eaton Vance would not have had to scour the market to find them, particularly given Eaton Vance's presence in the investments marketplace.

106.    A fiduciary acting in the best interest of the Plan's participants and with due care would have removed the Parametric Emerging Markets Fund from the Plan. But, Eaton Vance

had business and financial incentives to select and maintain the Parametric Emerging Markets Fund in the Plan. Even though the Parametric Emerging Markets Fund performed poorly, Eaton Vance collected millions of dollars in advisory fees from the fund. This by itself is suggestive of improper self-dealing.

### d. Eaton Vance Balanced Fund

107.    Unlike the other funds, the Balanced Fund does not have a single benchmark against which to measure its performance. Morningstar places the fund in the Moderate Target Risk category. Morningstar identifies funds offered by Columbia, Dodge & Cox, and Fidelity as comparator funds in the Moderate Target Risk category that, like the Eaton Vance Balanced Fund invest approximately 50-75% of their assets in equity securities with the remainder in fixed income securities.

108.    In the five-year period between 2008 and 2012, the fund underperformed the comparable Columbia, Dodge & Cox, and Fidelity funds each by 9% or greater. Thus, Eaton Vance should have removed the Fund from the plan at the start of the class period. Yet Eaton Vance retained the Balanced Fund despite the underperformance and a marketplace replete with moderate risk target offerings.

109.    As illustrated in the chart below, the Balanced Fund, whose performance started out deep in the hole beginning in 2013, continued to underperform the funds identified by Morningstar as comparator funds in the balanced strategy for period between 2013 and 2017. Eaton Vance would have seen the chronic underperformance in real time—not simply *ex post* with the benefit of hindsight.

| Fund | 2013 | 2014 | 2015 | 2016 | 2017 | Cumulative (2013-2017) |
|---|---|---|---|---|---|---|
| Eaton Vance Balanced Fund Class R6 (ESIFX) | 20.96 | 9.62 | 2.65 | 4.84 | 13.75 | **+51.82%** |
| | | | | | | |
| Columbia Balanced Fund Institutional Class (CBALX) | 21.30 | 10.22 | 1.90 | 6.43 | 14.29 | **+54.14%** |
| +/- CBALX | -0.34 | -0.60 | 0.75 | -1.59 | -0.54 | |
| +/- Cumulative | | -0.94 | -0.19 | -1.78 | -2.32 | **-2.32%** |
| | | | | | | |
| Dodge & Cox Balanced Fund (DODBX) | 28.37 | 8.87 | -2.87 | 16.56 | 12.59 | **+63.52%** |
| +/- DODBX | -7.41 | 0.75 | 5.52 | -11.72 | 1.16 | |
| +/- Cumulative | | -6.66 | -1.14 | -12.86 | -11.70 | **-11.70%** |
| | | | | | | |
| Fidelity Puritan Fund K (FPUKX) | 20.48 | 10.86 | 1.82 | 5.20 | 18.86 | **+57.22%** |
| +/- FPUKX | 0.48 | -1.24 | 0.83 | -0.36 | -5.11 | |
| +/- Cumulative | | -0.76 | 0.07 | -0.29 | -5.40 | **-5.40%** |

110.     The comparator funds listed in the tables above are well known, readily available, easily accessible to all investors, and identified by Morningstar at comparable investments. These superior alternative investments were readily apparent such that a reasonable and objective investigation would have uncovered them.  Eaton Vance would not have had to scour the market to find them, particularly given Eaton Vance's presence in the investments marketplace.

111.     A fiduciary acting in the best interest of the Plan's participants and with due care would have removed the Eaton Vance Balanced Value Fund from the Plan.  But, Eaton Vance had business and financial incentives to select and maintain the Eaton Vance Balanced Fund in the Plan.  Even though the Eaton Vance Balanced Fund performed poorly, Eaton Vance collected millions of dollars in advisory fees from the fund.  This by itself is suggestive of improper self-dealing.

### e. Eaton Vance Stock

112.     In the ten-year period between 2008 and 2017, the Eaton Vance Stock Fund underperformed its benchmark, the S&P 500, seven out of ten years.  The underperformance for an active manager was significant—8.19%.  In the five-year period leading up to the approximate start of the class period, the Eaton Vance Stock Fund underperformed the S&P 500 four out of five years and by 5.33%.

113.     Among the hundreds and hundreds of funds in the Morningstar large cap category, the Stock Fund performed worse than 69% of funds in 2009; worse than 88% of funds in 2010; and worse than 60% of funds in 2011.  Given this abysmal performance, any reasonable fiduciary would have undertaken an investigation of readily available alternatives and removed of the fund from the Plan at the start of the class period.

114.     Yet Eaton Vance continued to offer the fund to Plan participants despite its poor investment track record, high fees, and a marketplace replete with clearly superior large cap offerings from companies such as Fidelity, Primecap, and MFS.

115.     As illustrated in the chart below, the Eaton Vance Stock Fund underperformed both its benchmark and funds identified by Morningstar as comparator funds in the large cap strategy for the period between 2013 and 2017.   Eaton Vance would have seen the chronic underperformance in real time—not simply *ex post* with the benefit of hindsight.

| Fund | 2013 | 2014 | 2015 | 2016 | 2017 | Cumulative (2013-2017) |
|---|---|---|---|---|---|---|
| Eaton Vance Stock Fund I Class (EIERX) | 33.14 | 12.24 | 4.83 | 7.05 | 20.14 | **+77.4%** |
| | | | | | | |
| S&P 500 | 32.39 | 13.69 | 1.38 | 11.96 | 21.83 | **+81.25%** |
| +/- S&P 500 | 0.75 | -1.45 | 3.45 | -4.91 | -1.69 | |
| +/- Cumulative | | -0.7 | 2.75 | -2.16 | -3.85 | **-3.85%** |
| | | | | | | |
| PRIMECAP Odyssey Stock Fund (POSKX) | 34.39 | 15.04 | 1.68 | 12.80 | 25.96 | **+89.87%** |
| +/- POSKX | -1.25 | -2.80 | 3.15 | -5.75 | -5.82 | |
| +/- Cumulative | | -4.05 | -0.90 | -6.65 | -12.47 | **-12.47%** |
| | | | | | | |
| Fidelity Large Cap Stock Fund (FLCSX) | 39.24 | 10.13 | -3.17 | 16.70 | 18.15 | **+81.05%** |
| +/- FLCSX | -6.11 | 2.11 | 8.00 | -9.65 | 1.99 | |
| +/- Cumulative | | -4.00 | 3.99 | -5.66 | -3.66 | **-3.66%** |
| | | | | | | |
| MFS Core Equity Fund Class I (MRGRX) | 34.49 | 11.36 | -0.14 | 11.38 | 24.77 | **+81.86%** |
| +/- MRGRX | -1.35 | 0.88 | 4.97 | -4.33 | -4.63 | |
| +/- Cumulative | | -0.47 | 4.50 | 0.17 | -4.46 | **-4.46%** |

116.     The comparator funds listed in the tables above are well known, readily available, easily accessible to all investors, and identified by Morningstar as comparable investments. These superior alternative investments were readily apparent such that a reasonable and objective investigation would have uncovered them.  Eaton Vance would not have had to scour the market to find them, particularly given Eaton Vance's presence in the investments marketplace.

117.     A fiduciary acting in the best interest of the Plan's participants and with due care would have removed the Eaton Vance Stock Fund from the Plan.  But, Eaton Vance had business and financial incentives to select and maintain the Fund in the Plan.  Even though the Eaton

Vance Stock Fund performed poorly, Eaton Vance collected millions of dollars in advisory fees from the fund.  This by itself is suggestive of improper self-dealing.

   **f.   Eaton Vance Small Cap**

118.   With fees of 1.10%, the Eaton Vance Small Cap Fund carries fees that Morningstar rates as above average for small cap growth funds.  Despite charging above average fees, Eaton Vance returns below average performance.

119.   In the ten-year period between 2008 and 2017, the Eaton Vance Small Cap Growth Fund underperformed its benchmark, the Russell 2000, seven out of ten years.  For the three-year period from the start of 2010 through the end of 2012, the fund underperformed the Russell 2000 by 6.6%.

120.   Among the hundreds of funds in the Morningstar small cap growth category, the Small Cap Growth Fund performed worse than 64% of funds in 2010; worse than 71% of funds in 2011; and worse than 64% of funds in 2012.  Given this performance, any reasonably prudent fiduciary would have undertaken an investigation of readily available alternatives that should have led to the removal of the fund at the start of the class period.  As of June 30, 2018, Morningstar ranks the fund's returns on a trailing quarterly basis in the bottom 73rd percentile for the 1-year period, the bottom 60th percentile for the 3-year period; and the bottom 97th percentile for the 10-year period.

121.   Yet Eaton Vance continued to offer the fund to Plan participants despite its poor investment track record, high fees, and a marketplace replete with clearly superior small cap growth offerings from companies such as T. Rowe Price, Virtus, and Franklin.

122.   As illustrated in the chart below, the Eaton Vance Stock Fund underperformed both its benchmark and funds identified by Morningstar as comparator funds in the small cap strategy

for the period between 2013 and 2017. Eaton Vance would have seen the chronic underperformance in real time—not simply *ex post* with the benefit of hindsight.

| Fund | 2013 | 2014 | 2015 | 2016 | 2017 | Cumulative (2013-2017) |
|---|---|---|---|---|---|---|
| Eaton Vance Small-Cap Fund Class I (EISGX) | 35.63 | 3.98 | -2.57 | 19.70 | 15.17 | **+71.91%** |
| | | | | | | |
| Russell 2000 TR USD | 38.82 | 4.89 | -4.41 | 21.31 | 14.65 | **+75.26%** |
| +/- Russell 2000 TR USD | -3.19 | -0.91 | 1.84 | -1.61 | 0.52 | |
| +/- Cumulative | | -4.1 | -2.26 | -3.87 | -3.35 | **-3.35%** |
| | | | | | | |
| T. Rowe Price New Horizons Fund (PRNHX) | 49.11 | 6.10 | 4.50 | 7.79 | 31.49 | **+98.99%** |
| +/- PRNHX | -13.48 | -2.12 | -7.07 | 11.91 | -16.32 | |
| +/- Cumulative | | -15.60 | -22.67 | -10.76 | -27.08 | **-27.058%** |
| | | | | | | |
| Virtus KAR Small Cap Growth Fund Class I (PXSGX) | 37.49 | 5.59 | 1.62 | 24.25 | 36.99 | **+105.94%** |
| +/- PXSGX | -1.86 | -1.61 | -4.19 | -4.55 | -21.82 | |
| +/- Cumulative | | -3.47 | -7.66 | -12.21 | -34.03 | **-34.03%** |
| | | | | | | |
| Franklin Small Cap Growth R6 (FSMLX) | 55.29 | 3.96 | -4.26 | 8.92 | 21.51 | **+85.42%** |
| +/- FSMLX | -19.66 | 0.02 | 1.69 | 10.78 | -6.34 | |
| +/- Cumulative | | -19.64 | -17.95 | -7.17 | -13.51 | **-13.51%** |

123.    The comparator funds listed in the tables above are well known, readily available, easily accessible to all investors, and identified by Morningstar as comparable investments. These superior alternative investments were readily apparent such that a reasonable and objective investigation would have uncovered them. Eaton Vance would not have had to scour the market to find them, particularly given Eaton Vance's presence in the investments marketplace.

124.     A fiduciary acting in the best interest of the Plan's participants and with due care would have removed the Eaton Vance Small Cap Fund from the Plan. But, Eaton Vance had business and financial incentives to select and maintain the Eaton Vance Small Cap Fund in the Plan. Even though the Eaton Vance Small Cap Fund performed poorly, Eaton Vance collected millions of dollars in advisory fees from the fund. This by itself is suggestive of improper self-dealing.

**g.  Income Fund of Boston**

125.     In the ten-year period between 2008 and 2017, the Income Fund of Boston underperformed its benchmark, the Bank of America/Merrill Lynch US High Yield Index, six out of ten years, with one tie. In the five-year period between 2008 and 2012, the Income Fund of Boston underperformed its benchmark by more than 5%. It also underperformed funds identified by Morningstar as comparator funds during the same ten- and five-year periods, including funds managed by Mass Mutual, BlackRock, and Lord Abbett. Given this abysmal performance, any reasonably prudent fiduciary would have undertaken an investigation of readily available alternatives and removed the Income Fund of Boston at the start of the Class Period.

126.     Yet Eaton Vance continued to offer the fund to Plan participants despite its poor investment track record, high fees, and a marketplace replete with clearly superior high yield bond offerings from companies such as Mass Mutual, BlackRock, and Lord Abbett.

127.     As illustrated in the chart below, the Income Fund of Boston underperformed both its benchmark and funds identified by Morningstar as comparator funds in the high yield, fixed income strategy for period between 2013 and 2017. Eaton Vance would have seen the chronic underperformance in real time—not simply *ex post* with the benefit of hindsight.

| Fund | 2013 | 2014 | 2015 | 2016 | 2017 | Cumulative (2013-2017) |
|---|---|---|---|---|---|---|
| Eaton Vance Income Fund of Boston Class R6 (EIBRX) | 7.29 | 2.68 | -1.88 | 13.03 | 6.35 | **+27.47%** |
| | | | | | | |
| ICE BofAML US High Yield | 7.42 | 2.50 | -4.64 | 17.49 | 7.48 | **+30.25%** |
| +/- ICE BofAML US High Yield | -0.13 | 0.18 | 2.76 | -4.46 | -1.13 | |
| +/- Cumulative | | 0.05 | 2.81 | -1.65 | -2.78 | **-2.78%** |
| | | | | | | |
| MassMutual Premier High Yield Fund Class R5 (MPHSX) | 10.97 | 2.07 | -0.65 | 15.02 | 7.58 | **+34.99%** |
| +/- MPHSX | -3.68 | 0.61 | -1.23 | -1.99 | -1.23 | |
| +/- Cumulative | | -3.07 | -4.3 | -6.29 | -7.52 | **-7.52%** |
| | | | | | | |
| BlackRock High Yield Bond Portfolio Institutional Shares (BHYIX) | 9.29 | 3.37 | -4.04 | 13.93 | 8.20 | **+30.75%** |
| +/- BHYIX | -2.00 | -0.69 | 2.16 | -0.90 | -1.85 | |
| +/- Cumulative | | -2.69 | -0.53 | -1.43 | -3.28 | **-3.28%** |
| | | | | | | |
| Lord Abbett High Yield Fund I Class (LAHYX) | 9.90 | 3.68 | -2.02 | 16.04 | 8.85 | **+36.45%** |
| +/- LAHYX | -2.61 | -1.00 | 0.14 | -3.01 | -2.50 | |
| +/- Cumulative | | -3.61 | -3.47 | -6.48 | -8.98 | **-8.98%** |

128.    The comparator funds listed in the tables above are well known, readily available, easily accessible to all investors, and identified by Morningstar as comparable investments. These superior alternative investments were readily apparent such that a reasonable and objective investigation would have uncovered them.  Eaton Vance would not have had to scour the market to find them, particularly given Eaton Vance's presence in the investments marketplace.

129.    A fiduciary acting in the best interest of the Plan's participants and with due care would have removed the Income Fund of Boston from the Plan.  But, Eaton Vance had business

and financial incentives to select and maintain the Income Fund of Boston in the Plan. Even though the Income Fund of Boston performed poorly, Eaton Vance collected millions of dollars in advisory fees from the fund. This by itself is suggestive of improper self-dealing.

130. During the class period, Plaintiff did not have knowledge of all material facts and information regarding Eaton Vance's selection process, including information about the performance of comparable funds, necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA.

## G. Eaton Vance Trust Company Collective Investment Trust for Eaton Vance Benefit Plans, Moderate Fund

131. The Eaton Vance Trust Company/Eaton Vance Investment Committee Directed Profit Sharing and Savings Plan Fund is a separate trust fund established and maintained as part of Eaton Vance Trust Company Collective Investment Trust for Eaton Vance Employee Benefit Plans (the "Collective Trust"). As of December 31, 2016, the Collective Trust held $129,000,000 in assets, which made up about 29% of the total assets of the Plan.

132. The investment objective of the Collective Trust is to seek total return. Total return is defined as income plus capital appreciation. The portfolio is designed for Participants who seek to balance downside risks with capital appreciation. The Investment Committee seeks to achieve an asset mix with projected moderate volatility.

133. The Collective Trust is a "fund-of-funds," which means it invests its assets primarily in other mutual funds managed by the Eaton Vance and its subsidiaries. The fund-of-fund structure allowed Eaton Vance to foist even more of its proprietary mutual funds upon Plan participants. Predictably, the Collective Trust suffered from the same infirmities—excessive fees, poor performance, and self-dealing—as the Eaton Vance mutual funds.

134.    As of July 2, 2018, the Collective Trust held the following mutual funds, all of which were managed by the Eaton Vance Defendants, and in the following percentages:

Calvert Ultra-Short Duration Income Fund (R6) CULRX 1.00%

Calvert Emerging Markets Equity Fund (R6) CVMRX 1.00%

Core Bond Fund (I) EIGIX 17.00%

Dividend Builder Fund (I) EIUTX 2.00%

Eaton Vance Hexavest Global Equity Fund (I) EHGIX 6.00%

Emerging and Frontier Countries Equity Fund (I) EICOX 1.00%

Emerging Markets Debt Opportunities Fund (R6) EELDX 4.00%

Emerging Markets Local Income Fund (I) EEIIX 2.00%

Floating-Rate Advantage Fund (I) EIFAX 5.00%

Focused Growth Opportunities Fund (I) EIFGX 5.00%

Focused Value Opportunities Fund (I) EIFVX 6.00%

Global Macro Absolute Return Advantage Fund (I) EGRIX 5.00%

Government Opportunities Fund (I) EIGOX 2.00%

Income Fund of Boston (R6) EIBRX 9.00%

International Small-Cap Fund (I) EILIX 3.00%

Multisector Income Fund (R6) EVBSX 4.00%

Multi-Strategy All Market Fund (I) EIAMX 3.00%

Parametric Emerging Markets Fund (R6) EREMX 6.00%

Parametric International Equity Fund (R6) ESISX 12.00%

Real Estate Fund (I) EIREX 4.00%

Special Equities Fund (I) EISEX 1.00%

Worldwide Health Sciences Fund (I) EIHSX 1.00%

**H. Eaton Vance Used the Fund to Benefit from High Fees and Expenses**

135.    Eaton Vance used the Collective Trust to select Eaton Vance proprietary mutual funds that charged Plan participants more than Eaton Vance charged outside clients for investment advisory services.  As alleged in Paragraphs 127-130, *supra*, the investment advisory fees of virtually all the Collective Trust's underlying mutual funds were higher than the investment advisory fees that the Eaton Vance Defendants charged outside clients for performing similar services.

136.    According to the Eaton Vance October 2017 Fee and Investment Notice, the expenses for the Collective Trust were 0.08%.  However, that number is misleading because it does not account for the operating expenses of the underlying funds, which include millions of dollars of investment advisory fees paid to the Eaton Vance Defendants.

137.    As of December 31, 2017, the operating expense ratio of the Collective Trust, which includes the Collective Trust's pro rata share of the fees of the underlying funds, was a gargantuan 0.77% of the assets.  Morningstar identified the following underlying mutual funds as having either "above average" or "high fees":

Emerging and Frontier Countries Equity Fund

Floating-Rate Advantage Fund

Focused Growth Opportunities Fund

Focused Value Opportunities Fund

Global Macro Absolute Return Advantage Fund

Government Opportunities Fund

International Small-Cap Fund

Multisector Income Fund

Multi-Strategy All Market Fund

Special Equities Fund

## I.   Eaton Vance Used the Fund as an Incubating Laboratory

138.    Eaton Vance also used the Collective Trust to advance its sales and distribution effort.  As alleged in Paragraphs 38-45, *supra*, Eaton Vance used the Plan as an incubating laboratory for its new and untested mutual funds.  Eaton Vance loaded the untested funds on the Plan as a means for gaining approval for placement on broker-dealers' platforms and building its mutual fund business.  Eaton Vance furthered the same improper incubation strategy by having the Collective Trust invest in its new and untested proprietary mutual funds.  Upon information and belief, the Collective Trust invested in the following funds when they had little to no track record:  The International Small Cap Fund; the Calvert Emerging Markets Fund; the Emerging and Frontier Countries Equity Fund; and the Multi Strategy.

## J.   Eaton Vance Caused the Fund to Retain Chronic Underperformers

139.    Eaton Vance launched the Collective Trust in September 2013, so the Collective Trust itself has no long-term track record.  Further, its annualized investment performance is hidden from the Plaintiff because public information about the fund is unavailable.

140.    However, Eaton Vance allowed the Collective Trust to invest in and retain many chronic underperforming proprietary funds when there were readily available alternatives.  Eaton Vance had perverse incentives for retaining the poorly performing proprietary funds in the Collective Trust:  the millions in investment advisory fees that it earned from the proprietary funds.  As alleged in Paragraphs 46-126, *supra*, year after year, the investment performance of many of the funds lagged their benchmarks and comparator funds.  The laggards include the

Eaton Vance Focused Value Opportunities Fund (*see* Paragraphs 65-72, *supra*), Eaton Vance Hexavest Global Equity Fund (*see* Paragraphs 56-64, *supra*)**,** Parametric Emerging Markets Fund (*see* Paragraphs 99-104, *supra*), and the Income Fund of Boston (*see* Paragraphs 121-126, *supra*).

141.    Other funds in the Collective Trust were as bad or worse, including:

- o    *Eaton Vance Dividend Builder Fund*.  For the past ten-year period, Morningstar ranks the Eaton Vance Dividend Builder Fund as performing worse than 94% of the thousands of large cap funds.  Moreover, the Eaton Vance Dividend Builder Fund performed worse than 98% of comparable funds in 2009; worse than 92% of comparable funds in 2010; worse than 68% of comparable funds in 2011; worse than 89% of comparable funds in 2013; worse than 65% of comparable funds in 2016; and worse than 72% of comparable funds in 2017.

- o    *Special Equities Fund*.  Among mid-cap growth funds, Morningstar ranks the Special Equities Fund as performing worse than 53% of comparable funds for the past year; worse than 65% of comparable funds for the past three years; and worse than 79% of comparable funds for the past five years.  Morningstar ranked the fund as performing worse than 96% of comparable funds in 2012; worse than 87% of comparable funds 2014; worse than 70% of comparable funds in 2015; and worse than 94% of comparable funds in 2017.  The fund has not been in operation long enough to establish a ten-year track record.

- o    *Emerging and Frontier Countries Equity Fund*.  For the three years the Emerging and Frontier Countries Equity Fund has been in existence, Morningstar ranks as performing worse than 59% of the hundreds of funds in its emerging markets funds category.

142.     Accordingly, the Collective Trust is a house of cards—a fund-of-funds composed of failing mutual funds.  Eaton Vance—not Plan participants—is the only party who stands to benefits from including the Collective Trust in the Plan.  No reasonably prudent, disinterested fiduciary would have offered and retained the Collective Trust.

143.     During the class period, Plaintiff did not have knowledge of all material facts and information regarding the Eaton Vance selection process necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA.

## K. Eaton Vance Performed Services that were Both Imprudent and Not Necessary for the Operation of the Plan

144.     In contrast to its practice with the Eaton Vance Funds, Eaton Vance did not actively manage the assets of several of its funds.  Instead, Eaton Vance delegated the investment management and investment selection for these funds to affiliated companies, such as Atlanta Capital, Calvert Hexavest, Richard Bernstein, and Parametric.  These affiliated companies furnish investment research, advice and supervision, and determine what securities will be purchased, held or sold by each fund and what portion, if any, of a fund's assets will be held uninvested.

145.     Nonetheless, Eaton Vance collected an investment management fee from these funds, and based on information and belief, retained for itself the difference between the management fee it collected from the fund and the fee it agreed to pay its investment sub-advisers.  Presumably, Eaton Vance retained this fee for monitoring the effectiveness and performance of the sub-advisors.

146.     Yet, Eaton Vance's ostensible monitoring services—and the corresponding fees— were unnecessary.  The duty to monitor the performance of the investment advisers was delegated

in the first instance to the Investment Committee.  Accordingly, the Investment Committee could

have and should have selected and monitored these investment sub-advisers on their own without

having to pay Eaton Vance as a middleman.  Given the Investment Committee's function to

monitor the investment advisers, Eaton Vance's position as the middleman in the arrangement

was superfluous and costly to Plan participants.  From this imprudent arrangement, Eaton Vance

collected millions of dollars in unreasonable and/or excessive fees for performing unnecessary

monitoring services for which the Investment Committee was already responsible.  The funds

included:

  Eaton Vance Atlanta Capital Select Equity

  Eaton Vance Atlanta Capital SMID

  Eaton Vance Hexavest Global Equity

  Eaton Vance Parametric Commodity

  Eaton Vance Parametric Emerging Markets

  Eaton Vance Parametric International Equity

  Eaton Vance Richard Bernstein All Equity[8]

  Eaton Vance Richard Bernstein All Assets

147.     In acting as the investment adviser to these funds under an imprudent structure in

which it did not perform services necessary to the operation of the Plan, Eaton Vance breached

its fiduciary duties of in violation §§ 1104 and 1106(a) and (b).

---

[8] It is worth noting that Richard Bernstein Advisors, the adviser to the All Equity and All Assets
Funds and the only investment adviser not affiliated with Eaton Vance, has an arrangement with
Eaton Vance in which it pays Eaton Vance to sell its advisory services.  Thus, Eaton Vance has
particularly perverse incentive to place the Bernstein Funds on the Plan.

148.     Plaintiff did not have knowledge of all material facts and information regarding the

services Eaton Vance and the Investment Committee jointly performed to understand that

Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of

ERISA, until shortly before this suit was filed.

## VI. CLASS ACTION ALLEGATIONS

149.     Under 29 U.S.C. § 1132(a)(2), any participant or beneficiary of the Plan is

authorized to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's

liability to the Plan under 29 U.S.C. § 1109(a).

150.     In acting in a representative capacity and to enhance the due process protections of

unnamed participants and beneficiaries of the Plan, Plaintiff seek to certify this action as a class

action on behalf of all participants and beneficiaries of the Plan.  Plaintiff seek to certify, and to

be appointed as a representative of, the following class:

    a.  All participants and beneficiaries of the Plan from October 5, 2012 through the date

        of final judgment, excluding the Defendants (the "class period").

151.     This action meets the requirements of Federal Rule of Civil Procedure 23(a) and is

certifiable as a class action for the following reasons:

    a.  The class includes over 1,800 members and is so large that joinder of all its

        members is impracticable.

    b.  There are questions of law and fact common to this class because the

        Defendants owed fiduciary duties to the Plan and to all participants and

        beneficiaries, and took the actions and omissions alleged herein as to the Plan

        and not as to any individual participant.  Thus, common questions of law and

        fact include the following, without limitation: who are the fiduciaries liable for

the remedies provided by 29 U.S.C. § 1109(a); whether the fiduciaries of the Plan breached their fiduciary duties to the Plan; what are the losses to the Plan resulting from each breach of fiduciary duty; and what Plan-wide equitable and other relief the Court should impose in light of Defendants' breach of duty.

c. Plaintiff's claims are typical of the claims of the class because each was a participant during the time period at issue in this action. Plaintiff and all participants in the Plan were similarly harmed by Defendants' misconduct. As a result of Defendants' self-dealing and imprudence, Plaintiff and all other Plan Participants suffered from excessive fees, deficient performance, and inadequate investment options. This directly caused each of them substantial monetary harm. Plaintiff and all other participants' retirement savings are depleted as compared to what they could have realized in a robust and cost-effective Plan.

d. Plaintiff is an adequate representative of the class because she was a participant in the Plan during the relevant period, has no interest that is in conflict with the class, is committed to the vigorous representation of the class, and has engaged experienced and competent attorneys to represent the class.

152. This action may be certified as a class action under Rule 23(b)(1)(A) or (B). Prosecution of separate actions by individual participants and beneficiaries for Defendants' breaches of fiduciary duties would create the risk of: (A) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants in respect to the discharge of their fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a); and (B) adjudications by individual participants and beneficiaries regarding these breaches of

fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests.

153.    Additionally, or in the alternative, certification under Rule 23(b)(2) is appropriate because Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.  Plaintiff seeks comprehensive reformation of the Plan to make it a more viable retirement investment option, which will benefit them and other Plan participants.

154.    Additionally, or in the alternative, this action may be certified as a class under Rule 23(b)(3).  A class action is the superior method for the fair and efficient adjudication of this controversy because joinder of all participants and beneficiaries is impracticable, the losses suffered by individual participants and beneficiaries may be small and it is impracticable for individual members to enforce their rights through individual actions, and the common questions of law and fact predominate over individual questions.  Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiff is aware of no difficulties likely to be encountered in the management of this matter as a class action.

155.    Additionally, or alternatively, this action may be certified as to particular issues under Rule 23(c)(4)—including but not limited to Defendants' liability to the class for their allegedly disloyal and imprudent conduct.

156.    Plaintiff's counsel, Sanford Heisler Sharp LLP, will fairly and adequately represent the interests of the Class and is best able to represent the interests of the Class under Rule 23(g).

## VII.   CAUSES OF ACTION

### COUNT I

**Breach of Duties of Loyalty and Prudence**

**(Violation of ERISA 29 U.S.C. § 1104(a)(1)(A)-(B))**

**(Against All Eaton Vance Defendants)**

157.    Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

158.    29 U.S.C. § 1104 imposes fiduciary duties of prudence and loyalty on Eaton Vance in their administration of the Plan and in their selection and monitoring of Plan investments.

159.    As described throughout this Complaint, Eaton Vance breached its fiduciary duties of prudence and loyalty with respect to the selection, retention, and management of the Plan's investment options by, *inter alia*:

    a.   Selecting and retaining investments in the Plan because they were affiliated with Eaton Vance and would contribute to Eaton Vance's bottom line.

    b.   Failing to monitor Plan investments and investigate whether the investment management services provided by Eaton Vance could be provided at lower cost, with comparable or superior performance, by an investment manager not affiliated with Eaton Vance.

    c.   Failing to remove poorly performing investment options from the Plan and failing to replace those investment options with better performing alternatives.

    d.   Adding new and untested mutual funds to the Plan to support the business objectives of Eaton Vance, despite these funds' lack of a sufficient track record to warrant their addition by the Plan, and subsequently failing to promptly remove these new and untested mutual funds when they performed poorly.

e. Charging Plan participants higher investment advisory fees than separate account clients with like assets.

f. Offering shares classes to the Plan that were more expensive than share classes that Eaton Vance offered and sold to other shareholders outside the Plan.

g. Failing to adequately investigate non-mutual fund alternatives such as collective trusts.

h. Charging Plan participants investment advisory fees for unnecessary sub-advisory relationships.

160. Each Eaton Vance Defendant performing investment-related duties knowingly participated in the breaches of the other Defendants performing such duties, knowing that other Defendants were breaching their fiduciary duties, and enabling commission of these breaches by failing to lawfully discharge their own fiduciary duties or make any reasonable effort under the circumstances to remedy other Defendants' breaches. For these reasons, the Eaton Vance Defendants are also liable as co-fiduciaries under 29 U.S.C. § 1105.

161. Each Eaton Vance Defendant is personally liable, and the Defendants are jointly and severally liable, under 29 U.S.C. §§ 1109(a), 1132(a)(2), and (a)(3), to make good to the Plan the losses resulting from the aforementioned breaches, to restore to the Plan any profits Defendants made through the use of Plan assets, and to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count.

## COUNT II

### Breach of Duties of Loyalty and Prudence:

### Failing to Remove or Replace

### Certain Eaton Vance Proprietary Funds as 401(k) Plan Investment Options

### (Violation of ERISA, 29 U.S.C. § 1104)

### (Against All Eaton Vance Defendants)

162.     Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

163.     Eaton Vance breached its duties of loyalty and prudence by selecting and then failing to timely remove as Plan investment options the following Eaton Vance Funds:

Eaton Vance Large Cap Value Fund

Eaton Vance Stock Fund

Eaton Vance Growth Fund

Eaton Vance Small-Cap Fund

Parametric Emerging Markets Fund

Eaton Vance Balanced Fund

Eaton Vance Income Fund of Boston

Eaton Vance Hexavest Global Equity Fund

Eaton Vance Focused Value Fund

Eaton Vance Atlanta Capital Select Equity Fund

Eaton Vance Richard Bernstein All Asset Strategy

164.     These Eaton Vance proprietary funds charged high fees and exhibited poor performance during the relevant period.  Eaton Vance profited from the Plan by causing the Plan to retain Eaton Vance's own poor-performing proprietary funds.

165.    A prudent investigation not tainted by self-interest would have revealed to a reasonably prudent fiduciary that the Eaton Vance Funds were inferior to other readily apparent investment options.  Eaton Vance's conduct reflects a failure to consider and obtain better performing alternative, unaffiliated funds at the expense and to the detriment of the Plan.

166.    Had a prudent and loyal fiduciary conducted such an investigation, it would have concluded that the Eaton Vance Funds were selected and retained for reasons other than the best interest of the Plan and were causing the Plan to waste millions of dollars of employees' retirement savings.

167.    Eaton Vance committed these breaches during each of the meetings of the Investment Committee that occurred periodically during each year of the class period.  At each of these meetings, the Investment Committee had cause to remove the Eaton Vance Funds based on their poor performance but failed to do so.  A prudent fiduciary would have removed the Eaton Vance Funds from the Plan.

168.    As a direct and proximate result of these breaches of fiduciary duties, the Plan and each of its participants have suffered millions of dollars of damages and lost-opportunity costs which continue to accrue, for which Defendants are jointly and severally liable pursuant to 29 U.S.C. § 1109.

169.    Pursuant to ERISA, 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1109(a), Defendants are liable to make good to the Plan the losses resulting from the aforementioned breaches, to restore to the Plan any profits Defendants made through the use of Plan assets, to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count, and are subject to other equitable or remedial relief as appropriate.

170.     Each Eaton Vance Defendant also knowingly participated in the breach of the other Defendants, knowing that such acts were a breach; enabled the other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties; and knew of the breach by the other Defendants yet failed to make any reasonable effort under the circumstances to remedy the breach.  Thus, each Defendant is liable for the breaches of the other Defendants.

## Count III

**Breach of Duties of Loyalty and Prudence:**

**Unreasonable Fees**

**(Violation of ERISA, 29 U.S.C. § 1104)**

**(Against All Eaton Vance Defendants)**

171.     Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

172.     Eaton Vance is directly responsible for ensuring the Plan's fees are reasonable for the services provided.

173.     Eaton Vance entered into contracts under which Eaton Vance and its affiliates provided investment advisory services to the Eaton Vance proprietary mutual funds offered on the Plan in exchange for compensation.

174.     Eaton Vance's own proprietary mutual funds, which were open to Plan participants through the Plan's menu of funds, paid investment advisory fees to Eaton Vance.  The fees were generated by regularly deducting money from mutual fund investors' accounts as "expenses." Eaton Vance set the amount of its compensation for investment advisory services for the mutual funds in the Plan in the same manner—calculated to earn a profit—as it set its investment advisory fees for all of its clients; though unlike as to its separate account clients, Eaton Vance

charged a higher investment advisory fee  to its proprietary mutual funds and thus to employees who were participants in the Plan.

175.     Eaton Vance charges Plan participants higher investment advisory fees than separate account clients who invested in each of the following investment strategies:

Global Macro Absolute Return Advantage

Eaton Vance Stock Fund

Eaton Vance Atlanta Capital Select Fund

Eaton Vance Focus Growth Opportunities Fund

Eaton Vance Growth Fund

Eaton Vance Focus Value Opportunities Fund

Eaton Vance Large Cap Value Fund

Eaton Vance Atlanta Capital SMID Fund

Eaton Vance Small Cap Fund

Eaton Vance Income Fund of Boston

Eaton Vance High Income Opportunities Fund

Eaton Vance Core Bond Fund

Eaton Vance Multi-Sector Income Fund

Eaton Vance Floating Rate Fund

Parametric Emerging Markets Fund

Parametric Commodity Fund

Eaton Vance Emerging Markets Local Income

Eaton Vance Hexavest Global Equity Fund

Eaton Vance Real Estate Fund

176.    This arrangement allowed Eaton Vance to make a profit from the Plan by collecting more in investment advisory fees from the proprietary Eaton Vance funds than it collected for performing substantially the same services for its separate account clients with like assets and like investment strategies.

177.    Moreover, the Investment Committee members had a potential conflict of interest as employees of the Plan sponsor (Eaton Vance).  Upon information and belief, Investment Committee members failed to expressly consider the potential effect of that conflict of interest on their decision-making.

178.    By using its fiduciary authority as investment adviser to the Eaton Vance proprietary funds to affect its own compensation and by failing to use the excess fees collected from the Eaton Vance proprietary funds to offset fees the Plan would have otherwise had to pay, Eaton Vance failed to discharge its duties with respect to the Plan:

a.    Solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the Plan, in violation of 29 U.S.C. § 1104(a)(1)(A); and

b.    With the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of 29 U.S.C. § 1104(a)(1)(B).

179.    As a direct and proximate result of these breaches of fiduciary duties, the Plan and each of its participants have suffered millions of dollars of damages and lost-opportunity costs which continue to accrue, for which Defendants are jointly and severally liable pursuant to 29

U.S.C. § 1109.   Pursuant to ERISA, 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1109(a), Defendants are liable to make good to the Plan the losses resulting from the aforementioned breaches, to restore to the Plan any profits Defendants made through the use of Plan assets, to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count, and are subject to other equitable or remedial relief as appropriate.

180.    Each Defendant also knowingly participated in the breach of the other Defendants, knowing that such acts were a breach; enabled the other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties; and knew of the breach by the other Defendants yet failed to make any reasonable effort under the circumstances to remedy the breach.   Thus, each Defendant is liable for the breach of the other Defendant.

## Count IV

### Breach of Duties of Loyalty and Prudence:

### Seeding Untested Funds and Retaining Poor Performing Funds

### (Violation of ERISA, 29 U.S.C. § 1104)

### (Against All Eaton Vance Defendants)

181.    Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

182.    Eaton Vance breached its duties of loyalty and prudence by including new and unproven mutual funds as investment options within the Plan shortly after the funds are launched.

183.    Eaton Vance decision to place these new and untested investment options on the Plan was not in the best interested of Plan participants, but instead, designed to benefit Eaton Vance.   By loading these untested funds on the Plan, Eaton Vance used plan participants to increase the assets under management and develop a track record for each of the funds.   This scheme helped Eaton Vance market its funds and qualify them for inclusion on broker-dealers'

sales platforms. Eaton Vance also reaped investment advisory fees from each of the untested funds on the Plan.

184. While Eaton Vance was reaping investment advisory fees from these untested funds, many were underperforming. The underperforming funds at issue include:

Eaton Vance Richard Bernstein All Asset Strategy

Eaton Vance Focused Value Opportunities Fund

Eaton Vance Hexavest Global Equity Fund

Eaton Vance Atlanta Capital Select Equity Fund

185. Eaton Vance has refused to remove these new and untested funds from the Plan's investment lineup even after sustained poor performance.

186. By placing these funds on the platform, and by retaining them despite sustained poor performance, Eaton Vance failed to discharge its duties with respect to the Plan:

   a. Solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the Plan, in violation of 29 U.S.C. § 1104(a)(1)(A); and

   b. With the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of 29 U.S.C. § 1104(a)(1)(B).

187. As a direct and proximate result of these breaches of fiduciary duties, the Plan and each of its participants have suffered millions of dollars of damages and lost-opportunity costs which continue to accrue, for which Defendants are jointly and severally liable pursuant to

29 U.S.C. § 1109.   Pursuant to ERISA, 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1109(a), Defendants are liable to make good to the Plan the losses resulting from the aforementioned breaches, to restore to the Plan any profits Defendants made through the use of Plan assets, to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count, and are subject to other equitable or remedial relief as appropriate.

188.     Each Defendant also knowingly participated in the breach of the other Defendants, knowing that such acts were a breach; enabled the other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties; and knew of the breach by the other Defendants yet failed to make any reasonable effort under the circumstances to remedy the breach.   Thus, each Defendant is liable for the breach of the other Defendant.

## Count V

**Breach of Duties of Loyalty and Prudence:**

**Offering the Eaton Vance Trust Company/Eaton Vance Investment Committee Directed**

**Profit Sharing and Savings Plan Fund**

**(Violation of ERISA, 29 U.S.C. § 1104)**

**(Against All Eaton Vance Defendants)**

189.     Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

190.     Eaton Vance breached its duties of loyalty and prudence by offering—and failing to remove the Eaton Vance Trust Company/Eaton Vance Investment Committee Directed Profit Sharing and Savings Plan Fund (the "Collective Trust").

191.     Eaton Vance used the Collective Trust to select Eaton Vance proprietary mutual funds that charged Plan participants more than it charged outside clients for investment advisory services.   Eaton Vance also used the Collective Trust to advance its sales and distribution effort

by having the Collective Trust invest in its new and untested proprietary mutual funds. Moreover, Eaton Vance caused the Collective Trust to invest exclusively in Eaton Vance funds despite the poor relative performance and high relative fees of the Eaton Vance funds underlying the Collective Trust.

192.     By placing the Collective Trust on the platform, and by retaining the Collective Trust despite the high fees and poor performance of the underlying assets, Eaton Vance failed to discharge its duties with respect to the Plan:

    a.    Solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the Plan, in violation of 29 U.S.C. § 1104(a)(1)(A); and

    b.    With the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of 29 U.S.C. § 1104(a)(1)(B).

193.     As a direct and proximate result of these breaches of fiduciary duties, the Plan and each of its participants have suffered millions of dollars of damages in high fees, poor investment returns, and lost-opportunity costs which continue to accrue, for which Defendants are jointly and severally liable pursuant to 29 U.S.C. § 1109.  Pursuant to ERISA, 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1109(a), Defendants are liable to make good to the Plan the losses resulting from the aforementioned breaches, to restore to the Plan any profits Defendants made through the use of Plan assets, to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count, and are subject to other equitable or remedial relief as appropriate.

194.     Each Defendant also knowingly participated in the breach of the other Defendants, knowing that such acts were a breach; enabled the other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties; and knew of the breach by the other Defendants yet failed to make any reasonable effort under the circumstances to remedy the breach.  Thus, each Defendant is liable for the breach of the other Defendant.

## Count VI

**Breach of Duties of Loyalty and Prudence**

**Unreasonable Fees for Sub-Advisory Services**

**(Violation of ERISA, 29 U.S.C. § 1104)**

**(Against All Eaton Vance Defendants)**

195.     Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

196.     Based on information and belief, the duty to monitor the performance of the Plan's investment advisers is delegated in to the Investment Committee.  Nevertheless, Eaton Vance and its affiliate Boston Management and Research hired affiliated sub-advisers—such as Atlanta Capital, Calvert Hexavest, Richard Bernstein, and Parametric—to perform investment advisory work for certain of the proprietary funds.  Eaton Vance collected an investment advisory fee from these funds, and based on information and belief, retained for itself the difference between the advisory fee it collected from the fund and the fee it agreed to pay these investment sub-advisers, presumably for monitoring the effectiveness and performance of their advisory services.

197.     Given the Investment Committee's function to monitor the investment advisers, Eaton Vance's position as the middleman in the arrangement was superfluous and costly to Plan participants.  From this imprudent arrangement, Eaton Vance collected millions of dollars in

69

unreasonable and/or excessive fees for performing unnecessary monitoring services for which the Investment Committee was already responsible.  The funds included:

Eaton Vance Atlanta Capital Select Equity

Eaton Vance Atlanta Capital SMID

Eaton Vance Hexavest Global Equity

Eaton Vance Parametric Commodity

Eaton Vance Parametric Emerging Markets

Eaton Vance Parametric International Equity

Eaton Vance Richard Bernstein All Equity

Eaton Vance Richard Bernstein All Assets

198.    By collecting fees for performance an unnecessary middleman function, Eaton Vance failed to discharge its duties with respect to the Plan:

a.    Solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the Plan, in violation of 29 U.S.C. § 1104(a)(1)(A); and

b.    With the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of 29 U.S.C. § 1104(a)(1)(B).

199.    As a direct and proximate result of these breaches of fiduciary duties, the Plan and each of its participants have suffered millions of dollars of damages in high fees, poor investment returns, and lost-opportunity costs which continue to accrue, for which Defendants are jointly

and severally liable pursuant to 29 U.S.C. § 1109.  Pursuant to ERISA, 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1109(a), Defendants are liable to make good to the Plan the losses resulting from the aforementioned breaches, to restore to the Plan any profits Defendants made through the use of Plan assets, to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count, and are subject to other equitable or remedial relief as appropriate.

200.     Each Defendant also knowingly participated in the breach of the other Defendants, knowing that such acts were a breach; enabled the other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties; and knew of the breach by the other Defendants yet failed to make any reasonable effort under the circumstances to remedy the breach.  Thus, each Defendant is liable for the breach of the other Defendant.

## Count VII

### Prohibited Transactions Concerning Investment Advisory Fees

### (Violation of ERISA, 29 U.S.C. § 1106)

### (Against All Eaton Vance Defendants)

201.     Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

202.     ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits fiduciaries from causing plans to engage in transactions that they know or should know constitute direct or indirect transfers of the Plans' assets to, or use of the Plans' assets by or for the benefit of, parties in interest.

203.     ERISA § 406(b), 29 U.S.C. § 1106(b) prohibits fiduciary self-dealing.

a.  Subsection (1) provides that a fiduciary shall not "deal with the assets of the plan in his own interest or for his own account."

b.  Subsection (2) provides that a fiduciary shall not "in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries."

c.  Subsection (3) provides that a fiduciary shall not "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

204.    Eaton Vance caused the Plan to utilize the following relatively high-cost investment strategies that generated revenue for Eaton Vance:

Global Macro Absolute Return Advantage

Eaton Vance Stock Fund

Eaton Vance Atlanta Capital Select Fund

Eaton Vance Focus Growth Opportunities Fund

Eaton Vance Growth Fund

Eaton Vance Focus Value Opportunities Fund

Eaton Vance Large Cap Value Fund

Eaton Vance Atlanta Capital SMID Fund

Eaton Vance Small Cap Fund

Eaton Vance Income Fund of Boston

Eaton Vance High Income Opportunities Fund

Eaton Vance Core Bond Fund

Eaton Vance Multi-Sector Income Fund

Eaton Vance Floating Rate Fund

Parametric Emerging Markets Fund

Parametric Commodity Fund

Eaton Vance Emerging Markets Local Income

Eaton Vance Hexavest Global Equity Fund

Eaton Vance Real Estate Fund

205.     Throughout the relevant time period, Eaton Vance charged Plan participants higher investment advisory fees than outside clients who invested in each of the above-listed investment strategies.  Accordingly, Eaton Vance earned unreasonable fees from transactions involving the assets of the Plan that were invested in the Eaton Vance proprietary funds.  Eaton Vance also dealt with the assets of the Plan in their own interest and for their own account when they caused the Plan to pay unreasonable investment management and administrative fees Eaton Vance.

206.     Accordingly, Eaton Vance engaged in prohibited transactions as follows:

a.  By causing the Plan to engage in transactions that they know or should know constitute direct or indirect transfers of the Plans' assets to, or use of the Plans' assets by or for the benefit of, parties in interest, in violation of 29 U.S.C. § 1106(a)(1)(D); and

b.  By causing the Plan to engage in the above conduct and omissions, in which a fiduciary to the Plan dealt with the assets of the plan in his own interest or for his own account in violation of 29 U.S.C. § 1106(b)(1); and

c.  By causing the Plan to engage in the above conduct and omissions, in which a fiduciary to the Plan, in his individual or in any other capacity, acted on behalf of a party whose interests were adverse to the interests of the Plan or the interests of its participants or beneficiaries, in violation of 29 U.S.C. § 1106(b)(2); and

d. By causing the Plan to engage in the above conduct and omissions, in which a fiduciary to the Plan received consideration for his/its own personal account from any party dealing with the Plan in connection with a transaction involving the assets of the Plan, in violation of 29 U.S.C. § 1106(b)(3).

207.     Pursuant to 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1109(a), Eaton Vance is liable to restore all losses suffered by the Plan as a result of these prohibited transactions and disgorge all revenues received and/or earned by Eaton Vance resulting from the above-mentioned prohibited transactions or received in connection with the management of Plan assets or other services performed for the Plan for more than reasonable compensation.

## Count VIII

**Prohibited Transactions Concerning Share Classes of Eaton Vance Mutual Funds**

**(Violation of ERISA 29 U.S.C. § 1106(a) and (b))**

**(Against All Eaton Vance Defendants)**

208.     Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

209.     ERISA § 406(a), 29 U.S.C. § 1106(c), provides, in pertinent part, that a fiduciary shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect furnishing of goods, services, or facilities between the plan and a party in interest;

210.     ERISA § 406(b), 29 U.S.C. § 1106(b), provides, in pertinent part, that a fiduciary with respect to a plan shall not:

(1) deal with the assets of the plan in his own interest or for his own account, or

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

211.    Eaton Vance is both a fiduciary of the Plan within the meaning of ERISA §§ 3(21) and 406(b)(1), 29 U.S.C. §§ 1002(21) and 1106(b)(1) and a party in interest within the meaning of ERISA § 1002(14).

212.    By selecting and maintaining the Eaton Vance Funds as the exclusive, actively managed investment options in the Plan despite their high fees and/or poor performance Eaton Vance received financial benefits adverse to the interests of the participants and beneficiaries. Eaton Vance received consideration for its own account through the receipt of investment management fees paid to it in violation of ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3).

213.    By selecting the Eaton Vance Funds as the options in the Plan and by maintaining these as the options in the Plan, Eaton Vance caused the plan to engage in a prohibited transaction in violation of ERISA § 406(b)(1) (2) and (3), 29 U.S.C. § 1106(b)(1) (2) and (3).

214.    For the following Funds, Eaton Vance knew it was offering shares classes to the Plan that were more expensive than share classes that Eaton Vance offered and sold to other shareholders outside the Plan.  Eaton Vance therefore caused the Plan to offer the below listed Eaton Vance Funds on terms less favorable than those offered to other shareholders:

Eaton Vance Atlanta Capital SMID-Cap Fund

Eaton Vance Balanced Fund

Eaton Vance Income Fund of Boston

Eaton Vance Large Cap Value Fund

Eaton Vance MultiSector Income Fund

215.     The prohibited transactions that Eaton Vance engaged in are as follows:

a.  by causing the Plan to engage in transactions that they know or should know constitute direct or indirect transfers of the Plans' assets to, or use of the Plans' assets by or for the benefit of, parties in interest, in violation of 29 U.S.C. § 1106(a)(1)(D);

b.  causing the Plan to engage in the above conduct and omissions, in which a fiduciary to the Plan dealt with the assets of the plan in his own interest or for his own account in violation of 29 U.S.C. § 1106(b)(1);

c.  causing the Plan to engage in the above conduct and omissions, in which a fiduciary to the Plan, in his individual or in any other capacity, acted on behalf of a party whose interests were adverse to the interests of the Plan or the interests of its participants or beneficiaries, in violation of 29 U.S.C. § 1106(b)(2);

d.  causing the Plan to engage in the above conduct and omissions, in which a fiduciary to the Plan received consideration for its own personal account from any party dealing with the Plan in connection with a transaction involving the assets of the Plan, in violation of 29 U.S.C. § 1106(b)(3); and

e.  as both a fiduciary and a party in interest, Eaton Vance is liable for these violations of ERISA § 406(b)(1) (2) and (3), 29 U.S.C. § 1106(b)(1) (2) and (3), pursuant to ERISA § 502(a)(3).

216.     Each Eaton Vance Defendant performing investment-related duties knowingly participated in the breaches of the other Defendants performing such duties, knowing that other Defendants were breaching their fiduciary duties, and enabling commission of these breaches by

failing to lawfully discharge their own fiduciary duties or make any reasonable effort under the circumstances to remedy other Defendants' breaches.  For these reasons, the Eaton Vance Defendants are also liable as co-fiduciaries under 29 U.S.C. § 1105.

217.    Pursuant to ERISA §§ 502(a)(2) and (a)(3), and 409(a), 29 U.S.C. §§ 1132(a)(2) and (a)(3), and 1109(a), Defendants are liable to disgorge all amounts and profits received as a result of these prohibited transactions, and such other appropriate equitable relief as the Court deems proper.

## COUNT IX

### Prohibited Transactions Concerning Fees for Sub-Advisory Services

### (Violation of ERISA 29 U.S.C. § 1106(b))

### (Against All Eaton Vance Defendants)

218.    Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

219.    As described throughout the Complaint, Eaton Vance is a fiduciary of the Plan as that term is used in 29 U.S.C. §§ 1002(21) and 1106(b).

220.    With respect to the following Funds, Defendant Eaton Vance engaged in prohibited transactions by hiring sub-advisors and retaining fees while performing a superfluous middleman role:

Eaton Vance Atlanta Capital Select Equity

Eaton Vance Atlanta Capital SMID

Eaton Vance Hexavest Global Equity

Eaton Vance Richard Bernstein Equity

Eaton Vance Parametric Commodity

Eaton Vance Parametric Emerging Markets

Eaton Vance Parametric International Equity

221.     For each of the above listed funds, Eaton Vance collected millions of dollars in unreasonable and/or excessive fees for performing unnecessary monitoring services for which the Investment Committee was already responsible.

222.     The prohibited transactions that Eaton Vance engaged in are as follows:

a.  causing the Plan to engage in transactions that they know or should know constitute direct or indirect transfers of the Plans' assets to, or use of the Plans' assets by or for the benefit of, parties in interest, in violation of 29 U.S.C. § 1106(a)(1)(D);

b.  causing the Plan to engage in the above conduct and omissions, in which a fiduciary to the Plan dealt with the assets of the plan in his own interest or for his own account in violation of 29 U.S.C. § 1106(b)(1);

c.  causing the Plan to engage in the above conduct and omissions, in which a fiduciary to the Plan, in his individual or in any other capacity, acted on behalf of a party whose interests were adverse to the interests of the Plan or the interests of its participants or beneficiaries, in violation of 29 U.S.C. § 1106(b)(2);

d.  causing the Plan to engage in the above conduct and omissions, in which a fiduciary to the Plan received consideration for its own personal account from any party dealing with the Plan in connection with a transaction involving the assets of the Plan, in violation of 29 U.S.C. § 1106(b)(3); and

e.  causing the Plan to compensate itself to perform services which were not necessary for the operation of the Plan.

223.     Based on the foregoing facts and other facts set forth in the Complaint, Eaton Vance is liable for violations of 29 U.S.C. § 1106(b) because it knowingly participated in these

prohibited transactions, and made no efforts to prevent these transactions despite having knowledge that the prohibited transactions were taking place.

224.     As a direct and proximate result of these prohibited transactions, the Plan directly or indirectly paid millions of dollars per year in investment management and other fees in transactions that were prohibited under ERISA, resulting in significant losses to the Plan and its participants.

225.     Pursuant to 29 U.S.C. §§ 1109(a), 1132(a)(2), and 1132(a)(3), Defendants are liable to restore all losses suffered by the Plan as a result of the prohibited transactions.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

i)     Declaring that each of the Eaton Vance Defendants who are fiduciaries of the Plan have breached their fiduciary duties under ERISA;

ii)     Ordering each fiduciary found to have breached his/her/its fiduciary duties to the Plan to jointly and severally restore all losses to the Plan that resulted from the breaches of fiduciary duty, or by virtue of liability pursuant to ERISA § 405;

iii)     Entering an order requiring:  (a) the disgorgement of profit made by any Eaton Vance Defendant; (b) declaring a constructive trust over any assets received by any breaching fiduciary in connection with his/her/its breach of fiduciary duties, or violations of ERISA, or any non-fiduciary Defendant who knowingly participated in that breach or violation; (c) requiring the Plan to divest itself of investments in the Eaton Vance Funds; and (d) any other appropriate equitable monetary relief, whichever is in the best interest of the Plan;

iv)     Ordering, pursuant to ERISA § 206(d)(4), 29 U.S.C. § 1056(d)(4), that any amount to be paid to or necessary to satisfy any breaching fiduciary's liability can be satisfied, in whole or in part, by attaching their accounts in or benefits from the Plan;

v)      Removing any breaching fiduciaries as fiduciaries of the Plan and permanently enjoining them from serving as a fiduciary of any ERISA-covered plan in which Plaintiff or any member of the class is a participant or beneficiary;

vi)     Appointing an independent fiduciary, at the expense of the breaching fiduciaries, to administer the Plan and the management of the Plan's investments and/or selection of investment options and/or to oversee the divestment of the Plan's investments;

vii)    Ordering the Plan's fiduciaries to provide a full accounting of all fees paid, directly or indirectly, by the Plan;

viii)   Awarding Plaintiff and the class their attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), the common benefit doctrine and/or the common fund doctrine;

ix)     Awarding Plaintiff and the members of the class pre-judgment and post-judgment interest;

x)      Awarding such equitable, injunctive or other relief as the Court may deem appropriate pursuant to ERISA § 502(a)(3) or any relief to which Plaintiff and the class are entitled to pursuant to Fed. R. Civ. P. 54(c); and

xi)     Awarding such equitable, injunctive or other relief as the Court may deem just and proper.

Dated:  October 5, 2018                    /s/ Andrew Miller_____

Andrew Miller (MA Bar # 682496)
**SANFORD HEISLER SHARP, LLP**
1666 Connecticut Avenue NW, Suite 300
Washington, DC 20009
Telephone: (202) 499-5200
Facsimile: (202) 499-5199
amiller@sanfordheisler.com

*Charles Field
**SANFORD HEISLER SHARP, LLP**
655 West Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 577-4242
Facsimile: (619) 577-4250
cfield@sanfordheisler.com

*David Sanford
*David Tracey
*Meredith Firetog
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Phone: (646) 402-5650
Facsimile: (646) 402-5651
dtracey@sanfordheisler.com
dsanford@sanfordheisler.com
mfiretog@sanfordheisler.com
* *pro hac vice forthcoming*

*Attorneys for Plaintiff and the Proposed Class*