**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| SHANNON PRICE, Individually and on Behalf of All Others Similarly Situated and On Behalf of the EATON VANCE PROFIT SHARING AND SAVINGS PLAN, | ) ) ) ) ) | Civil Action No. 18-12098-WGY |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| EATON VANCE CORPORATION, EATON VANCE MANAGEMENT, EATON VANCE INVESTMENT COMMITTEE, and DOES 1-30, inclusive, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION**
**FOR ENTRY OF PRELIMINARY APPROVAL ORDER**

Andrew H. Miller (MA Bar # 682496)
**SANFORD HEISLER SHARP, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
Telephone: (202) 499-5200
Facsimile: (202) 499-5199
amiller@sanfordheisler.com

*Charles Field
**SANFORD HEISLER SHARP, LLP**
655 West Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 577-4242
Facsimile: (619) 577-4250
cfield@sanfordheisler.com

*David Sanford
*David Tracey
*Meredith Firetog
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Phone: (646) 402-5650
Facsimile: (646) 402-5651
dtracey@sanfordheisler.com
dsanford@sanfordheisler.com
mfiretog@sanfordheisler.com

**\*Admitted pro hac vice*
*Counsel for Plaintiff and the Proposed Class*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................1

II. SUMMARY OF CLAIMS AND DEFENSES.........................................................2

   **A.** Claims..............................................................................................................2

   **B.** Defenses ..........................................................................................................3

III. LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS ....................3

   A. Pre-Suit Discovery, Negotiations, and Settlement ..............................................3

   B. Plaintiff's Services to the Class Members...........................................................4

IV. OVERVIEW OF THE SETTLEMENT TERMS ....................................................5

   A. Proposed Settlement Class................................................................................5

   B. Monetary Relief ...............................................................................................6

   C. Review by Independent Fiduciary .....................................................................6

   D. Attorneys' Fees and Expenses ..........................................................................7

   E. Service Award..................................................................................................7

   F. Release of Claims ............................................................................................7

   G. Class Notice and Settlement Administration ......................................................8

III. ARGUMENT ............................................................................................................9

   A. The Proposed Settlement Warrants Preliminary Approval...................................9

      **1.** The Class is Adequately Represented and The Settlement is the Product of Arm's Length Negotiations.....................................................................................10

      **2.** The Settlement Provides Significant Relief to the Class and Proposes an Effective Method of Distribution that Treats All Class Members Fairly ....................................11

      **3.** The Costs, Risks, and Delay of Trial and Appeal.........................................................12

B.   Certification of the Settlement Class Is Appropriate ........................................................14

    1.   The Proposed Class Satisfies Rule 23(a) ............................................................14

        a.   Numerosity...................................................................................................15

        b.   Commonality................................................................................................15

        c.   Typicality ....................................................................................................15

        d.   Adequacy .....................................................................................................16

    2.   The Settlement Class Should Be Certified Under Rule 23(b)(1)..........................17

C.   The Proposed Notice Plan Is Adequate ..........................................................................18

IV. CONCLUSION..........................................................................................................................19

## TABLE OF AUTHORITIES

**Pages**

**Cases**

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997)................................................................................................14

*Andrews v. Bechtel Power Corp.*,
    780 F.2d 124 (1st Cir. 1985)................................................................................16

*In re Bank of Boston Corp. Sec. Litig.*,
    762 F. Supp. 1525 (D. Mass. 1991) ....................................................................15

*Bonime v. Doyle*,
    416 F. Supp. 1372 (S.D.N.Y. 1976), aff'd, 556 F.2d 555 (2d Cir. 1977)..............14

*Braden v. Wal Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) ...............................................................................13

*Brotherston v. Putnam Investments, LLC*,
    No. CV 15-13825-WGY, 2016 WL 1397427 (D. Mass. Apr. 7, 2016) .................12

*Caufield v. Colgate-Palmolive Co.*,
    2017 WL 3206339 (S.D.N.Y. July 27, 2017) .......................................................17

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)...................................................................................11

*Dennard v. Transamerica Corp.*,
    No. C15-0030 (N.D. Iowa May 20, 2016).......................................................11, 12

*Durrett v. Housing Auth.*,
    896 F.2d 600 (1st Cir. 1990).................................................................................9

*In re G.E. ERISA Litig.*,
    No. 17-CV-12123-IT, 2018 WL 6592091 (D. Mass. 2018) ..................................16

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3rd Cir. 1995) .................................................................................9

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................13

*Greenspun v. Bogan*,
    492 F.2d 375 (1st Cir. 1974) ..........................................................................................10

*Krueger v. Ameriprise Fin., Inc.*,
    304 F.R.D. 559 (D. Minn. 2014) .....................................................................................18

*LaLonde v. Textron, Inc.*,
    369 F.3d 1 (1st Cir. 2004) ...............................................................................................12

*In Re Lupron Mktg. & Sales Practices Litig.*,
    228 F.R.D. 75 (D. Mass. 2005) .........................................................................................9

*Medoff v. CVS Caremark Corp.*,
    No. 09-CV-554-JNL, 2016 WL 632238 (D.R.I. Feb. 17, 2016) ....................................11

*Mehling v. New York Life Ins. Co.*,
    248 F.R.D. 455 (E.D. Pa. 2008) ......................................................................................11

*Meiners v. Wells Fargo*,
    898 F. 3d 890 (8th Cir. 2018) .........................................................................................13

*Milken & Assoc. Sec. Lit.*,
    150 F.R.D. 46 (S.D.N.Y. 1993) ......................................................................................14

*Moreno v. Deutsche Bank*,
    2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017) .................................................................17

*Moreno v. Deutsche Bank Americas Holding Corp.*,
    No. 15 CIV. 9936 (S.D.N.Y. Aug. 14, 2018) ............................................................11, 12

*Morse v. Stanley*,
    732 F.2d 1139 (2d Cir. 1984) .........................................................................................18

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ........................................................................................................17

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley
    Inv. Mgmt., Inc.* 712 F.3d 705 (2d. Cir. 2013) .............................................................13

*In re Puerto Rican Cabotage Antitrust Litig.*,
    269 F.R.D. 125 (D.P.R. 2010) ........................................................................................11

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005) .....................................................................................7, 9

*Scott v. First American Title Ins. Co.,*
    No. 06-cv-286-JD, 2008 U.S. Dist. LEXIS 117205 (D.N.H. Nov. 5, 2008) ..........................10

*Swack v. Credit Suisse Boston,*
    230 F.R.D. 250 (D. Mass. 2005) ...........................................................................................15

*Trombley v. Bank of Am. Corp.,*
    Civil No. 08-cv-456-JD, 2011 U.S. Dist. LEXIS 83777 (D.R.I. July 28, 2011) ....................10

*Turner v. Murphy Oil USA, Inc.,*
    472 F. Supp. 2d 830 (E.D. La. 2007) ....................................................................................13

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.,*
    2017 WL 2655678 (C.D. Cal. June 15, 2017) ...................................................................17, 18

*Wal-Mart Stores Inc v. Visa USA Inc,*
    396 F.3d 96 (2d Cir. 2005).....................................................................................................18

*In re Warner Communications Sec. Litigation,*
    618 F. Supp. 735 (S.D.N.Y. 1985) ........................................................................................14

## Statutes

29 U.S.C. § 1104 (ERISA § 404) ...................................................................................................2

29 U.S.C. § 1104(a)(1)(A) (ERISA § 404(a)(1)(A)) .....................................................................2

29 U.S.C. § 1104(a)(1)(B) (ERISA § 404(a)(1)(B))......................................................................2

29 U.S.C. § 1106 (ERISA § 406) ...................................................................................................2

## Regulations

Fed. R. Civ. P. 23(a) ...................................................................................................14, 15, 16, 17

Fed. R. Civ. P. 23(b)(1)..........................................................................................................14, 17, 18

Fed. R. Civ. P. 23(e) .........................................................................................................18, 19

Fed. R. Civ. P. 23(g) .....................................................................................................................17

Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg.
    33830.........................................................................................................................................6

**<u>Other Authorities</u>**

*Manual for Complex Litigation* (Fourth) § 21.632 (2015) .............................................................9

## A.  INTRODUCTION

On behalf of herself and approximately 2,600 participants and former participants in the Eaton Vance 401(k) Profit Sharing and Savings Plan (the "Class" and/or "Class Members"), Shannon Price ("Plaintiff"), plaintiff in the above-captioned class action lawsuit (the "Class Action"), respectfully submits this memorandum in support of her unopposed motion for preliminary approval of a $3,450,000 ERISA class settlement (the "Settlement").

Plaintiff respectfully requests that the Court enter an order to preliminarily approve the Settlement negotiated by Plaintiff and Defendants[1] in this Class Action (the "Parties"). The Parties seek to settle all claims alleged in a complaint (the "Complaint") on behalf of all Class Members. The Parties reached the Settlement without significant in-court litigation activity. Instead, the Parties conducted meaningful negotiations with an eye towards the strengths and weaknesses of their positions and the value of the claims.  That the Parties were able to reach such a favorable settlement without years of costly litigation was remarkable.  The early resolution of this matter presents substantial benefits to the Class Members and promotes judicial economy.

Under the terms of the proposed Settlement, Defendants will pay $3,450,000 into a settlement fund ("Settlement Fund"), which will be allocated pro rata among Class Members in the Eaton Vance 401(k) Profit Sharing and Savings Plan (the "Plan") during the Class Period (after deduction of any attorneys' fees, expenses, and a class representative service award approved by the Court). The Plaintiff's legal counsel, Sanford Heisler Sharp, LLP (hereinafter "Plaintiff's

---

[1]        "Defendants" refers to Eaton Vance Corp. and Eaton Vance Management, together with their affiliates and subsidiaries (also referred to as "Eaton Vance").  Eaton Vance is a Boston-based financial services firm whose principal business is managing mutual funds and providing other investment management and advisory services to individuals and institutions.  Eaton Vance Investment Committee was responsible for selecting the investment options made available to the Plan's participants and were fiduciaries under ERISA.

Counsel") has determined the Settlement will provide fair and adequate relief to the proposed Class Members for the claims alleged in the Complaint.

To effectuate the Settlement, Plaintiff respectfully moves the Court to: (1) certify the Settlement Class as non-opt-out class under Fed. R. Civ. 23(b)(2), and appoint Plaintiff's Counsel as Lead Class Counsel; (2) preliminarily approve the Settlement; (3) enjoin Class Members from pursuing claims that arise out of, or relate in any way to, the claims at issue in this action pending final approval of the Settlement; (4) direct notice to the Class Members and approve the plan and form of notice; (5) appoint Analytics, LLC as Settlement Administrator and Escrow Agent and direct it to implement the plan of notice to Class Members in the form approved by the Court; (6) schedule a Final Approval Hearing at which time Class Members who have given notice of their intent to appear may be heard ("Fairness Hearing"); and (7) schedule a hearing on Plaintiff's forthcoming application for fees and costs.

## II.     SUMMARY OF CLAIMS AND DEFENSES

### A.     Claims

Plaintiff, individually and as representative of a class of current and former Plan participants, filed the Class Action in her capacity as participant in the Plan against Defendants on October 5, 2018. The Class Action alleges that Defendants violated ERISA §§ 404 and 406, 29 U.S.C. §§ 1104, 1106, as described below.

ERISA requires that plan fiduciaries act solely in the interest of Plan when making decisions with respect to selecting, removing, replacing, and monitoring the Plan's investments. Plaintiff alleges that Defendants are plan fiduciaries and failed to fulfill these fiduciary duties with respect to the investment offerings in the Plan, which included investment options that benefitted Eaton Vance ("proprietary funds") and other options from unaffiliated investment managers,

including Vanguard and Fidelity ("non-proprietary funds").  Among other things, Plaintiff alleges that Defendants failed to fulfill their fiduciary duties by offering proprietary funds in the Plan, by failing to monitor Plan investment options and remove poorly performing ones, and otherwise by providing Plan participants with insufficient selection (including because Eaton Vance proprietary funds were the exclusive actively managed investment strategies available on the Plan).  Plaintiff brought claims against Defendants for breaches of duties of loyalty and prudence in violation of § 404(a)(1)(A) and (B) of ERISA and engaging in prohibited transactions in violation of § 406 of ERISA.

**B.      Defenses**

Defendants deny the allegations and contend that their process for selecting, overseeing, and retaining the Plan's investment options complied with the fiduciary standards under ERISA. Defendants also maintain that offering Eaton Vance's products as Plan options is not only exceedingly common, but also specifically authorized by statutory and regulatory exemptions. Defendants maintain that they did not engage in prohibited transactions, nor did they breach their fiduciary duties to the Plan under ERISA.  Furthermore, Defendants maintain that ERISA's three-year statute of limitations bars all prohibited transaction claims alleged in the Complaint (i.e., Counts VII through IX).

**III.    LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS**

**A.      Pre-Suit Discovery, Negotiations, and Settlement**

Before filing the Complaint, Plaintiff's Counsel undertook extensive and careful investigation to support the allegations in the Complaint. Among other things, Plaintiff's Counsel examined and evaluated: the  disclosure documents  provided to Plan participants that detailed fees and expenses and the investment performance of each Plan option relative to their respective

investment benchmarks; the Plan' Summary Plan Description; Department of Labor filings from the Plan; Registration Statements and Annual Reports filed by each of the Plan's investment options with the Securities and Exchange Commission; Securities and Exchange Commission filings entered on Form ADV by Eaton Vance Management and its affiliated investment advisers; and the investment structure and fees paid by the Plan in comparison with other types of investments and fees generally. Plaintiff's Counsel also incorporated financial data and performance calculations derived from Morningstar, a leading organization in the U.S. for investment fund performance and ratings, detailing the annual investment performance of the Plan's investment options relative to multiple comparator funds and applicable investment benchmarks for the past ten years.   Field Decl. ¶5. The analysis of complex financial and investment data by Plaintiff's Counsel is evident throughout the Complaint, particularly in Section V.

After the Complaint was filed, the Parties entered into confidential discussions about Plaintiff's allegations. Over the course of five months, the Parties engaged in continuous, arm's length negotiations over the terms of a potential class action settlement. Field Decl. ¶6. The Parties met and conferred by phone on October 23, 2018, January 8, 2019, February 6, 2019, February 8, 2019 to discuss settlement possibilities. On February 11, 2019, Defendants filed a Motion to Dismiss Counts VII, VIII, and IX of the Complaint.  The Defendants' legal analysis relating both to the ERISA statute of limitations and prior ERISA cases decided in the District Court for the District of Massachusetts laid the groundwork for further negotiations.  The Parties renewed discussions and were able to make progress.  The Parties met and conferred by phone on February 16, 2019, February 25, 2019, February 26, 2019, February 27, 2019, March 4, 2019, and March 6,

2019 to review and discuss their analyses.  The Parties finally reached an agreement in principle to settle the case on March 11, 2019. Field Decl. ¶7.

Thereafter, the parties prepared and executed the Settlement Agreement, memorializing the terms of the Settlement for which Plaintiff now seeks preliminary approval. See Settlement Agreement, attached as Exhibit 1. The terms of the Settlement Agreement were the result of extensive, arm's length negotiation.

**B.**      **Plaintiff's Prior Employment At Eaton Vance And Her Services to the Class Members In This Action**

Plaintiff worked as the Director of Marketing for Eaton Vance Investment Counsel from June 2015 to May 2018, and previously held various positions at Eaton Vance Distributors, Inc.  . In this action, Plaintiff has been involved throughout this process and has contributed to every aspect of the investigation and settlement of the class claims. Price Decl. ¶6-7. Plaintiff has spent significant time in service to the Class consulting with lawyers from Plaintiff's Counsel on a variety of issues and reviewing and providing input on the Complaint. *Id*. Plaintiff participated in meetings with Plaintiff's Counsel to aid in the initial investigation, factual development, and resolution of this case. *Id*. Plaintiff gathered documents and spent several hours speaking with Plaintiff's Counsel to help them understand the Plan and Defendant's practices related to structuring, pricing and selecting their investment products.  In working with Plaintiff's Counsel, Plaintiff drew from her own observations of the Defendants' pricing and selection processes.  From the inception of this Class Action, Plaintiff has faithfully attended to her duties to act on behalf of other current and former Plan participants. Price Decl.  ¶5.    Plaintiff understands her responsibilities as the representative of Class Members and has been in regular contact with Plaintiff's Counsel to monitor the action and provide important input and advice.

The Plaintiff in this action also commenced a separate proceeding against certain Eaton Vance entities asserting unrelated claims stemming from her employment at, and separation from, the company.  The parties to that action are in the process of resolving it.

## IV.    OVERVIEW OF THE SETTLEMENT TERMS

### A.    Proposed Settlement Class

The Settlement Agreement calls for certification of the following Class:

> All current and former participants in the Plan who carried a positive account balance from October 5, 2012 to the date of the Final Approval Order.  Excluded from the class are Defendants and members of the Eaton Vance Investment Committee during the Class Period.

Settlement Agreement. ¶1.8. There are approximately 2,600 Class Members.

### B.    Monetary Relief

Under the Settlement, Defendants will pay $3,450,000 into the Settlement Fund. Following any deductions for Court-approved (a) attorneys' fees and costs, (b) class representative compensation, and (c) administrative expenses (the "Net Settlement Amount"), the Net Settlement Amount will be distributed to Class Members according to a Plan of Allocation in which the Settlement Administrator shall determine each Class Member's Entitlement Amount by calculating each Class Member's pro rata share of the Net Settlement Amount. *Id*. ¶5.1(b).

Current participants in the Plan will have their Plan accounts automatically credited with their share of the Settlement Fund. *Id*. ¶5.2(a). If the current participant is no longer an active employee or does not have an investment election on file, the current participant's settlement payments will be invested in the Plan's default investment option. *Id*. ¶5.2(c) Former participants will receive their settlement payments directly by check, or the former Plan participants can submit

a rollover form to the Settlement Administrator to instead elect to receive their settlement payment through a rollover into an eligible retirement account or plan. *Id*. ¶5.3.

### C.     Review by Independent Fiduciary

Defendants will retain an Independent Fiduciary to review the Settlement on behalf of the Plan. *Id*. ¶¶1.32, 2.2; *see also* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830 ("PTE 2003-39"). All reasonable costs expenses of the Independent Fiduciary, shall be borne by the Settlement Fund.  The Parties will provide the Independent Fiduciary with sufficient information to support the Independent Fiduciary's review and evaluation. Settlement Agreement. ¶2.2(d). The Independent Fiduciary will issue its report at least 30 days prior to the Fairness Hearing. *Id*. ¶2.2(b).

### D.     Attorneys' Fees and Expenses

Plaintiff's Counsel will apply for reasonable attorney's fees and reimbursement of their out-of-pocket costs – in a combined amount totaling $1.15 million, or one-third of the $3.45 million cash Fund. *Id*. ¶6.1 . Subject to Court approval, lead class counsel fees, costs and expenses, and a service award payment to Plaintiff (as explained below) shall be paid from the Settlement Fund prior to distribution to Class Members. *Id*. ¶¶6.1, 62.

### E.     Incentive Award

Plaintiff shall petition the Court for an incentive award not to exceed $5,000 in recognition of her service as Class Representative. *Id*. ¶6.2.  Public policy strongly supports service awards as recognition for Plaintiff's important service in participating in the suit and promoting class action settlement. Such awards compensate plaintiffs for the efforts and risks they have undertaken, without which no settlement would be possible. And, they provide an incentive for other

employees to bring cases that vindicate the public's interest in having retirement funds prudently managed. *In re Relafen Antitrust Litig*., 231 F.R.D. 52, 82 (D. Mass. 2005)

**F.    Release of Claims**

In exchange for the relief provided by the Settlement, the Settlement Class will release Defendants and affiliated persons and entities from all claims:

(a)    That were asserted in the Action or could have been asserted in the Action, or that arise out of, relate to, are based on, or have any connection with any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions, or occurrences asserted in the Action, whether or not pleaded in the Complaint, including but not limited to those that arise out of, relate to, are based on, or have any connection with:  (1) the selection, retention, and monitoring of the Plan's investment options and service providers, (2) the performance, fees, and other characteristics of the Plan's investment options and their specific share classes, (3) the Plan's fees and expenses, including without limitation fees and expenses associated with the provision of recordkeeping and subadvisory services, (4) the nomination, appointment, retention, monitoring, and removal of the Plan's fiduciaries, and (5) the approval by the Independent Fiduciary of the Settlement Agreement;

(b)    that would be barred by res judicata based on the Court's entry of the Final Approval Order;

(c)    that relate to the direction to calculate, the calculation of, and/or the method or manner of the allocation of the Net Settlement Fund pursuant to the Plan Of Allocation; or

(d)    that relate to the approval by the Independent Fiduciary of the Settlement Agreement. Settlement Agreement. ¶1.39.

Notwithstanding the above, the Settlement Class will not release:  (i) claims to enforce the Settlement Agreement, and (ii) claims for denial of benefits from the Plan.  Id.

### G. Class Notice and Settlement Administration

Class Members will receive a direct notice of the settlement ("Settlement Notice") via first-class mail. Id. ¶¶ 3.2(b) & Exhibit 1-B. The Settlement Notice sent to Former Participants also will include a Former Participant Rollover Form enabling them to make the elections described above. Id. ¶¶ 3.2(c) & Exhibit 1-A. The Settlement Notices provide information to the Class Members regarding, among other things: (1) the nature of the claims; (2) the scope of the Class; (3) the terms of the Settlement; (4) Class Members' right to object to the settlement and the deadline for doing so; (5) the class-wide release; (6) the identity of Lead Class Counsel and the amount of compensation they will seek in connection with the Settlement; (7) the amount of any requested Class Representative's service award; (8) the date, time, and location of the final approval hearing; (9) Class Members' right to appear at the final approval hearing; and (10) the process for electing to receive settlement payment through a rollover into an eligible retirement account or plan (for former Plan participants only). See id., Exhibit 1-B

The Settlement Administrator will establish a Settlement Website and a toll-free telephone call center facility that will provide callers the option to speak with a live operator if necessary. Id. ¶3.3. In addition, the Notice to Class Members will include contact information for Class Counsel who Class Members may contact for information.  These resources will be available should Class Members need more information about the Settlement.

## III. ARGUMENT

### A. The Proposed Settlement Warrants Preliminary Approval

It is well settled in this Circuit that settlement is a highly favored means of resolving complex class action litigations. See *Durrett v. Housing Auth.,* 896 F.2d 600, 604 (1st Cir. 1990) (recognizing public policy encourages class action settlements); *In Re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005). Settlement spares the litigants the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources. *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3rd Cir. 1995)

Court approval of a proposed class action settlement involves two steps: preliminary and final approval. *In re Relafen*, 231 F.R.D. at 57. At the "preliminary approval" stage, the Court is not required to undertake an in-depth consideration of the final approval factors. Instead, it "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of the notice of the certification, proposed settlement, and date of the final fairness hearing." *Manual for Complex Litigation* (Fourth) § 21.632 (2015).

"A proposed settlement may be given preliminary approval where it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval." *Trombley v. Bank of Am. Corp.,* Civil No. 08-cv-456-JD, 2011 U.S. Dist. LEXIS 83777, at *14-15 (D.R.I. July 28, 2011) (citations and internal quotation marks omitted); *accord Scott v. First American Title Ins. Co.*, No. 06-cv-286-JD, 2008 U.S. Dist. LEXIS 117205, at *8-9 (D.N.H. Nov. 5, 2008). As the First Circuit has observed:

> [A]ny settlement is the result of a compromise – each party surrendering something in order to prevent unprofitable litigation, and the risks and costs inherent in taking litigation to completion. A district court, in reviewing a settlement proposal, need not engage in a trial of the merits, for the purpose of settlement is precisely to avoid such a trial.

*Greenspun v. Bogan*, 492 F.2d 375, 381 (1st Cir. 1974).

### 1. The Class is Adequately Represented and The Settlement is the Product of Arm's Length Negotiations

The Parties reached this settlement as the result of good faith, arm's length negotiations by experienced counsel. As detailed in Section B.1.d below and in the Declaration of David W. Sanford and Charles H. Field, Plaintiff's Counsel are experienced in complex class actions, including ERISA class actions involving 401(k) plans. Before filing this action, Plaintiff's counsel conducted a detailed investigation of the Plan's investment options, which included extensive analysis of Plan-related documentation and investment performance data. Field Decl. ¶5. The parties conducted confidential discussions about Plaintiff's allegations. Over the course of five months, the Parties engaged in continuous, arm's length negotiations over the terms of a potential class action settlement. Field Decl. ¶6 The Parties also continued litigating this matter and fully briefed a motion to dismiss. Dkt. Nos. at 12-14, 25.

The Parties reached an agreement in principle to settle the case on March 11, 2019. Field Decl. ¶7. Thereafter, the parties prepared, negotiated, and executed the Settlement Agreement, memorializing the terms of the Settlement for which Plaintiff now seeks preliminary approval. Although there has been no formal discovery to date, the Plaintiff's efforts as described support a finding that the settlement was reached through robust investigation. *Cf. In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 141 (D.P.R. 2010) (noting that the parties were sufficiently informed by limited informal discovery that occurred prior to settlement); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2001) (upholding settlement where "although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information.").

### 2. The Settlement Provides Significant Relief to the Class and Proposes an Effective Method of Distribution that Treats All Class Members Fairly

The Settlement Agreement fashions significant relief for the Class. The $3.45 million deal is outstanding at this early stage in the litigation. By comparison, in *Dennard v. Transamerica Corp.*, another case involving proprietary funds, the parties reached a gross settlement of $3.8 million more than one year after filing the action. *Dennard v. Transamerica Corp.*, No. C15-0030, Dkt. No 86-1 at 25 (N.D. Iowa May 20, 2016). Here, the settlement is particularly remarkable considering the gross amount  per Class Member—almost $1350 per Class Member. By contrast, *Dennard*'s $3.8 million deal was distributed between at least 16,000 plan participants—about $237 per participant in gross benefits. In *Moreno v. Deutsche Bank,* another ERISA action involving proprietary funds that was actively litigated for almost three years, the settlement provided $631.12 gross benefits per Class Member. *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 CIV. 9936, Dkt No. 321 at 19 (S.D.N.Y. Aug. 14, 2018). Even after accounting for attorneys' fees and costs, the net value of the settlement per Class Member ( over $800) is significantly higher than the gross value per participant value of *Dennard* and *Moreno*.

The negotiated settlement amount also represents a significant portion of the total damages that Plaintiff alleges were caused by Defendants' alleged fiduciary breaches. Plaintiff hired an expert who calculated the likely total damages at about $14.9 million. Field Decl. ¶9 Accordingly, the gross settlement amount ($3.45 million) represents approximately 23% of the total damages, which is well within the range found reasonable in other class action settlements. *See Medoff v. CVS Caremark Corp.*, No. 09-CV-554-JNL, 2016 WL 632238, at *6 (D.R.I. Feb. 17, 2016) (noting that 5.33% is "well above the median percentage of settlement recoveries in comparable securities class action cases."). *See also Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (20% recovery in ERISA class action approved).

The Parties have developed neutral methods to fairly and effectively apportion the relief between class members. All eligible Settlement Class Members will receive a pro rata share of the Settlement Fund based on their average account balance. To minimize costs, each current participant's settlement award will be deposited directly into their 401(k) account. The former participants will receive a direct payment by check but can otherwise elect to have their distribution rolled over into an eligible retirement account or plan. Settlement Agreement. ¶5.3. This is consistent with other settlements and will minimize the portion of the Settlement Fund paid as taxes and also minimize waste due to uncashed checks. *See e.g. Dennard*, No. C15-0030, Dkt. No 86-1 at 42; *Moreno*, No. 15 CIV. 9936, Dkt No. 321 at 8.

### 3. The Costs, Risks, and Delay of Trial and Appeal

The costs and risks of litigating this action further highlight the benefits of the settlement. Plaintiff's ERISA claims are based on a breach of prudence and loyalty and prohibited transactions. Both are factually complex. See *Brotherston v. Putnam Investments, LLC*, No. CV 15-13825-WGY, 2016 WL 1397427, at *1 (D. Mass. Apr. 7, 2016). The First Circuit has described ERISA jurisprudence as an "important and complex area of law" that "is neither mature nor uniform. . ." *LaLonde v. Textron, Inc*., 369 F.3d 1, 6 (1st Cir. 2004).

This complexity adds a layer of risk and uncertainty to the Plaintiff's claims. To prevail on the breach of prudence claims, Plaintiff must prove that Defendants' process for monitoring Plan options was "tainted by a failure of effort, competence or loyalty." *Braden v. Wal Mart Stores, Inc.,* 588 F.3d 585, 596 (8th Cir. 2009). Plaintiff must prove that the disputed investments underperformed relative to comparable benchmarks for an extended period, that Eaton Vance failed to remove the disputed investments timely and, as a result, the Plan suffered investment losses. *Meiners v. Wells Fargo*, 898 F. 3d 890 (8th Cir. 2018). Plaintiff also would have to prove

13

through expert testimony that the investment benchmarks were in fact comparable to the disputed investments and that the underperformance analysis was not based on the benefit of pure hindsight. *Id.*; *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.* 712 F.3d 705 (2d. Cir. 2013). If Plaintiff was unsuccessful on any of these points, the recovery could be diminished or lost all together.

Although Plaintiff believes there is strong support for her claims, there is risk "inherent in taking any litigation to completion." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 849 (E.D. La. 2007). This is illustrated by another recent case challenging the inclusion of proprietary funds in a 401(k) plan, which resulted in dismissal in favor of the defendants. See *Meiners, supra* (granting defendants' motion to dismiss). The trial court's ruling in *Meiners*, which the Eighth Circuit upheld on appeal, demonstrates the risk of loss posed by a case such as this.

There are additional risks to the claims set forth in the prohibited transactions claims at Counts VII, VIII, and IX of the Complaint. At the time of Settlement, Defendants' Motion to Dismiss Counts VII, VIII and IX was pending before the Court.  (Dkt. No. 12.)  In their motion papers, Defendants sought to dismiss these three claims because (1) there is nothing inherently wrong with offering the Plan proprietary Eaton Vance funds, and that such offerings are exempt transactions under ERISA's prohibited transaction rules, (2) each claim was barred by ERISA's three-year statute of limitations, and (3) each claim should be dismissed insofar they are brought under ERISA §§ 406(a)(1)(D) and (b)(1) because the Complaint failed to alleged that the challenged transactions involve "assets of the plan." (Dkt. No. 13.)  Although Plaintiff is confident that Defendants would not prevail, Defendants raised plausible defenses that, if recognized by the Court, could significantly diminish or even defeat recovery.

14

Even if Plaintiff can establish a fiduciary breach, calculation of ERISA damages is "complex, time-consuming and expensive." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004). This intricate and complex process can have unexpected results, and the Parties' models would no doubt vary greatly. This complexity favors settlement.[2]

Furthermore, this case is far from trial. Absent a settlement, the Parties would have to incur the risks and additional costs associated with a trial. Significant discovery remains to be taken and significant (and expensive) expert discovery would also be required for both sides. Any judgment after trial or summary judgment would have presented significant legal questions which the Parties could appeal, likely lasting years.

Accordingly, based on risks and expenses of continuing the litigation, the settlement amount is entirely appropriate and favorable to Class Members.

**B.      Certification of the Settlement Class Is Appropriate**

**1.   The Proposed Class Satisfies Rule 23(a)**

In seeking preliminary approval of the Settlement, the Parties have stipulated to a Class. Class certification must meet the requirements of Rule 23 even when it is pursuant to a settlement. See *Amchem Prods. v. Windsor*, 521 U.S. 591, 619-29 (1997). To effectuate the Settlement, Plaintiff seek (i) the designation of the Plaintiff as Class Representative (ii) the designation of Plaintiff's Counsel as class counsel for the Class; and (iii) certification of a non-opt out Class in the Class Action pursuant to Rule 23(b)(1). The starting point for certification of a Class is to determine if it satisfies Rule 23(a)'s four requirements: numerosity, commonality, typicality, and adequacy of representation.

---

[2] See *In re Warner Communications Sec. Litigation*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985); *Milken & Assoc. Sec. Lit.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement and noting that damage calculations are often a "battle of experts at trial, with no guarantee of the outcome"); *Bonime v. Doyle*, 416 F. Supp. 1372 (S.D.N.Y. 1976), aff'd, 556 F.2d 555 (2d Cir. 1977) (difficulty in determining damages a factor supporting settlement).

### a. Numerosity

Rule 23(a)(1) permits class treatment where "the class is so numerous that joinder of all members is impracticable." The Plan's filings with the Department of Labor show approximately 1,900 current participants as of December 31, 2017.  Accordingly, numerosity is easily satisfied.

### b. Commonality

The proposed Class easily satisfies Rule 23(a)(2), which requires "questions of law and fact common to the class." Actions involving breach of ERISA's fiduciary duties present common questions of law and fact. *Payne v. Goodyear Tire & Rubber Co*., 216 F.R.D. 21, 25 (D. Mass. 2003). Here, common questions relate to Defendants' alleged breaches of ERISA's fiduciary duty, such as whether Defendants were fiduciaries and whether their selection and retention of Plan investment options were a product of a loyal and prudent investment process, as well as common damages issues, that predominate over any individual issues.

### c. Typicality

Rule 23(a)(3)'s typicality requirement asks whether the Plaintiff's and putative class members' claims arise from the same course of conduct and whether the claims are based on the same legal theory. *See Swack v. Credit Suisse Boston*, 230 F.R.D. 250, 260 (D. Mass. 2005). Factual distinctions between class members' claims will not destroy typicality as long as they have the same essential characteristics. *See Id.* at 260; *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D. Mass. 1991). Plaintiff was employed by Eaton Vance Investment Counsel and is a participant in the Plan whose claims arise from her participation in the Plan during the Class Period. Plaintiff's claims are identical to the legal claims belonging to all Class Members and would present proof of Defendants' liability on the basis of common facts underlying those claims.

16

### d. Adequacy

Rule 23(a)(4) requires that class representatives fairly and adequately protect the interests of Class Members. Two factors must be satisfied: "[t]he moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985).

Plaintiff easily satisfies both prongs of the adequacy requirement. The interests of Plaintiff and absent class members align because she brings the same claims for the same remedies under the same legal theories, and each will get their proportionate share under the Plan of Allocation. Plaintiff demonstrated her adequacy and dedication to the case and the Class through her active involvement in this Class Action and risking her career prospects and reputation in the process. Plaintiff, who suffered losses as a participant in the Plan, has no interests that are antagonistic to the interests of any of the Class Members. Plaintiff seeks to increase the value of the Plan's net assets, and thus the net assets of Class Members' individual Plan accounts proportionally to the losses of each such individual Plan account. The relief has significant value to Class Members.

The second prong of the adequacy requirement is also met.  To date, Plaintiff's Counsel has invested over an estimated 600 hours in attorney and staff time to this matter.  Plaintiff's Counsel is a preeminent nationwide plaintiffs' firm specializing in complex class litigation. *See* Sanford Decl. ¶6-12 . Sanford Heisler Sharp, LLP has served as lead or co-lead counsel in approximately 50 class and collective actions, covering class members in most of the states in the union. *Id*. ¶7.  Plaintiff's Counsel has extensive experience in dealing with ERISA and fiduciary duty issues as well as overseeing the administration and operation of the types of investment funds

at issue here. Field Decl. ¶¶13-17. In this District, Plaintiff's Counsel is Co-Lead Counsel in pending ERISA class action litigation, *In re G.E. ERISA Litig.*, No. 17-CV-12123-IT, 2018 WL 6592091 (D. Mass. 2018) (denying in part and granting in part motion to dismiss ERISA claims). *Id*. ¶13. Counsel also is prosecuting ERISA class action cases in the Northern District of Georgia, the Southern District of New York, and the Northern District of Iowa. *Id*.

Accordingly, both Rule 23(a)(4) and Rule 23(g) are satisfied. The Plaintiff should be designated as representative of the Settlement Class, and Plaintiff's Counsel should be designated as lead class counsel.

### 2. The Settlement Class Should Be Certified Under Rule 23(b)(1)

Under Rule 23(b)(1), a class may be certified if the prosecution of separate actions would create a risk of inconsistent judgments that would establish incompatible standards of conduct for Defendants or if adjudication of individual members' claims would, as a practical matter, be dispositive of the claims of other class members. Rule 23(b)(1). One "classic example[]" of such a risk is a case that charges "'a breach of trust by an . . . fiduciary similarly affecting the members of a large class' of beneficiaries, requiring an accounting or similar procedure 'to restore the subject of the trust.'" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (quoting Advisory Committee's Notes on Fed. R. Civ. P. 23)).  Accordingly, ERISA class action cases typically are certified under Rule 23(b)(1)(A) and (B).  *Caufield v. Colgate-Palmolive Co.*, 2017 WL 3206339, at *6 (S.D.N.Y. July 27, 2017). *See also Moreno v. Deutsche Bank*, 2017 WL 3868803, at *10 (S.D.N.Y. Sept. 5, 2017) (certifying class under Rule 23(b)(1)(B)); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.,* 2017 WL 2655678, at *8 (C.D. Cal. June 15, 2017) (same); *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 578 (D. Minn. 2014) (same).

Allowing opt-outs here would create the risk that participants subject to the same conduct would not be treated the same, which is inconsistent with ERISA's duty of impartiality. *See Morse v. Stanley*, 732 F.2d 1139, 1145 (2d Cir. 1984). Moreover, since each Class Member's individual loss is relatively modest, it is highly unlikely that they would be interested in paying the substantial legal fees necessary to litigate their loss. While Participants cannot opt-out of the settlement, all Participants may object to the Settlement or express any concerns they may have before final Court approval. Therefore, Plaintiff respectfully submits that there is good reason and just cause to certify the Settlement Class, for settlement purposes, under Rule 23(b)(1).

### C.      The Proposed Notice Plan Is Adequate

Due process and Rule 23(e) require the Court to "direct notice in a reasonable manner to all class members" who will be bound by the Settlement. Notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. Notice is adequate if it may be understood by the average class member." *Wal-Mart Stores Inc v. Visa USA Inc*, 396 F.3d 96, 114 (2d Cir. 2005) (quotation marks and citations omitted).

The Settlement Agreement provides for notice to Class Members, and an opportunity for Class Members to object to the proposed Settlement. The Parties have agreed, subject to Court approval, to a notice plan, which calls for mailed notice that provide Class Members with sufficient information to make an informed decision about the proposed Settlement. The proposed Notice Plan satisfies all due process considerations and meets the requirements of Rule 23(e)(1). The proposed Notice Plan will fully apprise Class Members of the existence of the lawsuit, the Settlement, and all information needed to make informed decisions.  This notice and the manner

in which it will be disseminated to Settlement Class Members satisfy Rule 23(e)(1) and should be approved.

Finally, the Court should approve Analytics, LLC as Settlement Administrator and Escrow Agent, charged with undertaking the responsibilities described in the Settlement Agreement. The Court should schedule a fairness hearing and hearing on Plaintiff's motion of an award of reasonable attorney's fees and service award to Plaintiff, as set forth in the proposed Preliminary Approval Order.

### D. CONCLUSION

Plaintiff respectfully requests that the Court grant this Motion, and enter the Proposed Order attached as Exhibit 2 hereto: (1) granting preliminary approval of the Settlement: (2) certifying the Class for settlement purposes; (3) enjoining Class Members from pursuing claims that arise out of, or relate in any way to, the claims at issue in this action pending final approval of the Settlement;  (4) appointing Sanford Heisler Sharp, LLP as Lead Class Counsel; (5) approving the form and manner of Class notice; (6) appointing Analytics, LLC as Settlement Administrator and Escrow Agent and directing it to implement the plan of Notice to Class Members; and (7) setting date for hearing on Final Approval of Settlement and Lead Class Counsel's fees and costs and the payment of the service award to Plaintiff.

Dated: May 6, 2019

Respectfully submitted,

/s/ Andrew H. Miller

Andrew H. Miller (MA Bar # 682496)
**SANFORD HEISLER SHARP, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
Telephone: (202) 499-5200
Facsimile: (202) 499-5199
amiller@sanfordheisler.com

20

*Charles Field
**SANFORD HEISLER SHARP, LLP**
655 West Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 577-4242
Facsimile: (619) 577-4250
cfield@sanfordheisler.com

*David Sanford
*David Tracey
*Meredith Firetog
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Phone: (646) 402-5650
Facsimile: (646) 402-5651
dtracey@sanfordheisler.com
dsanford@sanfordheisler.com
mfiretog@sanfordheisler.com
*Admitted pro hac vice*

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2019, a true and correct copy of the foregoing was served via the Court's electronic filing system, which all counsel of record registered as District of Massachusetts CM/ECF users will receive via electronic notification.

s/ Andrew H. Miller

Andrew H. Miller

21