# Exhibit 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SHANNON PRICE, Individually and on Behalf of  :
All Others Similarly Situated and On Behalf of the
EATON VANCE PROFIT SHARING AND  :
SAVINGS PLAN,

  :

             Plaintiff,                  Civil Action

  :  No. 18-12098-WGY
      v.

  :

EATON VANCE CORPORATION, EATON
VANCE MANAGEMENT, EATON VANCE  :
INVESTMENT COMMITTEE, and DOES 1-30,
inclusive,  :

          Defendants.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## CLASS ACTION SETTLEMENT AGREEMENT

      This Class Action Settlement Agreement, dated May 6, 2019 (the "Settlement Agreement"), is made and entered into by and among:  (i) Plaintiff Shannon Price ("Plaintiff") (on behalf of herself and each Class Member), by and through her counsel of record in the Litigation; and (ii) Eaton Vance Corp. ("Eaton Vance" or the "Company"), Eaton Vance Management, Eaton Vance Investment Committee, and Does 1-30 (collectively, "Defendants"), by and through their counsel of record in the Litigation.[1]  The Settlement Agreement is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims, subject to the approval of the Court and the terms and conditions set forth in this Stipulation.

### ARTICLE I

### DEFINITIONS

      1.1    "Action" means the civil action captioned *Shannon Price v. Eaton Vance Corp. et al.*, Civil Action No. 18-12098-WGY, pending in the United States District Court for the District of Massachusetts.

      1.2    "Active Participant" means any Class Member who, as of the date of the Preliminary Approval Order, has a Plan account with a balance greater than $0.00 and is eligible to make contributions to the account.

---

[1]     Except as otherwise specified, all capitalized terms shall have the meanings set forth in Article I of this Stipulation.

1.3     "Administrative Expenses" means expenses incurred in the administration of this Settlement Agreement, including (a) all fees, expenses, and costs associated with the production and dissemination of the Notice to Class Members and related tax expenses (including taxes and tax expenses described in Section 4.5); (b) all expenses incurred by the Settlement Administrator in administering and effectuating this settlement; (c) all fees and expenses associated with the Settlement Website and telephone support line described in Article III; (d) all fees charged by the Settlement Administrator; and (e) all fees and expenses charged by the Independent Fiduciary and Escrow Agent.  Administrative Expenses shall be paid from the Gross Settlement Amount.

1.4     "Alternate Payee" means a person, other than an Active Participant, Inactive Participant, Former Participant, or Beneficiary, who is entitled to a benefit under the Plan as a result of a Qualified Domestic Relations Order.

1.5     "Attorneys' Fees" means the amount awarded by the Court as compensation for the services provided by Class Counsel and the expenses incurred by Class Counsel in connection with the Action, which shall be recovered from the Gross Settlement Amount.

1.6     "Beneficiary" means a person who currently is entitled to receive a benefit under the Plan that is derivative of the interest of an Active Participant, Inactive Participant, or Former Participant, other than an Alternate Payee.  A Beneficiary includes, but is not limited to, a spouse, surviving spouse, domestic partner, or child who currently is entitled to a benefit.

1.7     "CAFA Notice" means the notice required to be provided pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.

1.8     "Class" means that settlement class proposed for certification, which is comprised of all current and former participants in the Plan who carried a positive account balance from October 5, 2012 to the date of the Final Approval Order.  Excluded from the class are Defendants and members of the Eaton Vance Investment Committee during the Class Period.

1.9     "Class Counsel" means Charles Field of Sanford Heisler Sharp, LLP.

1.10     "Class Member" means a member of the Class.

1.11     "Class Period" means October 5, 2012 through the date of the Final Approval Order, inclusive.

1.12     "Class Representative" means the named Plaintiff in this Action, Shannon Price.

1.13     "Company" means Eaton Vance Corp.

1.14     "Complaint" means the document filed at ECF No. 1 on October 5, 2018 in this Action.

1.15    "Court" means the United States District Court for the District of Massachusetts.

1.16    "Defendants" means Eaton Vance Corp., Eaton Vance Management, Eaton Vance Investment Committee, and Does 1-30.

1.17    "Defendants' Counsel" means James R. Carroll, Eben P. Colby, and Michael S. Hines of Skadden, Arps, Slate, Meagher & Flom LLP.

1.18    "Defendants' Released Claims" means all claims, whether known or unknown (including Unknown Claims), and whether arising under federal, state, or any other law, which have been, or could have been, asserted in the Action or in any court or forum, by Defendants against Plaintiff or any Class Members, or their attorneys (including Class Counsel), which arise out of or relate in any way to the institution, prosecution or settlement of the Action, except for claims to enforce the Settlement Agreement.

1.19    "Effective Date" means one business day following the later of (a) the date upon which the time expires for filing or noticing any appeal of the Final Approval Order; or (b) if there are any appeals, the date of dismissal or completion of any appeal, in a manner that finally affirms and leaves in place the Final Approval Order without any material modifications, of all proceedings arising out of the appeal(s) (including, but not limited to, the expiration of all deadlines for motions for reconsideration or rehearing or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal(s) following decisions on remand).

1.20    "Entitlement Amount" means that portion of the Net Settlement Amount payable to an individual Class Member, as determined according to the procedures described in Article V herein.

1.21    "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

1.22    "Escrow Account" means an account at an established financial institution agreed upon by the Parties that is established for the deposit of the Gross Settlement Amount and amounts relating to it, such as income earned on the investment of the Gross Settlement Amount.

1.23    "Escrow Agent" means Analytics LLC, an independent contractor to be retained by Class Counsel and approved by the Court, which will serve as escrow agent for any portion of the Gross Settlement Amount deposited in or accruing in the Escrow Account pursuant to this Settlement.

1.24    "Fairness Hearing" means the hearing to be held before the Court pursuant to Federal Rule of Civil Procedure 23(e) to determine whether the Settlement Agreement should receive final approval by the Court.

1.25    "Final Approval Order" means the order and final judgment of the Court approving the Settlement, in substantially the form attached as Exhibit 3 to the Memorandum in Support of Plaintiff's Motion for Entry of Preliminary Order.

3

1.26    "Former Participant" means any Class Member who had a Plan account with a balance greater than $0.00 during the Class Period but who does not have a Plan account with a balance greater than $0.00 as of the date of the Preliminary Approval Order.

1.27    "Former Participant Rollover Form" means the form described generally in Section 5.3 herein, substantially in the form attached as Exhibit A hereto.

1.28    "Former Participant Rollover Form Deadline" means a date that is no later than ten (10) calendar days before the Fairness Hearing.

1.29    "Gross Settlement Amount" means the sum of three million, four hundred and fifty thousand U.S. dollars (USD $3,450,000.00), contributed to the Qualified Settlement Fund as described in Article IV herein.  The Gross Settlement Amount shall be the full and sole monetary payment to the Plaintiff, Class Members, and Class Counsel made on behalf of Defendants in connection with this Settlement Agreement.

1.30    "Inactive Participant" means any Class Member who, as of the date of the Preliminary Approval Order, has a Plan account with a balance greater than $0.00 and is ineligible to make contributions to the account.

1.31    "Incentive Award" means the amount of incentive or service award awarded by the Court to the Plaintiff.

1.32    "Independent Fiduciary" means the person or entity selected by Eaton Vance to serve as an independent fiduciary with respect to the Settlement Agreement for the purpose of rendering the determination described in Section 2.2 herein.

1.33    "Net Settlement Amount" means the Gross Settlement Amount, plus any interest or income earned on the Qualified Settlement Fund, less Administrative Expenses, Attorneys' Fees, any Incentive Award, and any other Court-approved deductions.

1.34    "Notice" means the form of Court-approved notice of this Settlement Agreement that is disseminated to Class Members.  The Parties shall propose that the Court approve the form of notice attached as Exhibit B hereto.  The Notice to Former Participants will include the Former Participant Rollover Form.

1.35    "Non-Proprietary Funds" means the following funds, regardless of share class:  Dreyfus Mid-Cap Index, Fidelity Extended Market Index, GE Institutional Equity Investment, GE Institutional International Equity, Schwab Government Money, Schwab Government Money, Vanguard 500 Index, Vanguard 500 Index, Vanguard 500 Index Signal, Vanguard Emerging Markets Stock Index, Vanguard REIT Index, Vanguard Small-Cap Index, Vanguard Total Bond Market Index, and Vanguard Total International Stock Index.

1.36    "Non-Rollover-Electing Former Participant" means a Former Participant who has not submitted a completed, satisfactory Former Participant Rollover Form by the Former Participant Rollover Form Deadline set by the Court, or whose Former Participant Rollover Form is rejected by the Settlement Administrator.

4

1.37   "Parties" means Plaintiff and Defendants.

1.38   "Plaintiff" means Shannon Price.

1.39   "Plaintiff's Released Claims" means any and all claims, actions, demands, rights, obligations, liabilities, damages, attorneys' fees, expenses, costs, and causes of action, whether known or unknown (including Unknown Claims as defined herein), against any of the Released Parties with respect to the Plan:

(a)   that were asserted in the Action or could have been asserted in the Action, or that arise out of, relate to, are based on, or have any connection with any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions, or occurrences asserted in the Action, whether or not pleaded in the Complaint, including but not limited to those that arise out of, relate to, are based on, or have any connection with: (1) the selection, retention, and monitoring of the Plan's investment options and service providers, (2) the performance, fees, and other characteristics of the Plan's investment options and their specific share classes, (3) the Plan's fees and expenses, including without limitation fees and expenses associated with the provision of recordkeeping and subadvisory services, (4) the nomination, appointment, retention, monitoring, and removal of the Plan's fiduciaries, and (5) the approval by the Independent Fiduciary of the Settlement Agreement;

(b)   that would be barred by res judicata based on the Court's entry of the Final Approval Order;

(c)   that relate to the direction to calculate, the calculation of, and/or the method or manner of the allocation of the Net Settlement Fund pursuant to the Plan Of Allocation; or

(d)   that relate to the approval by the Independent Fiduciary of the Settlement Agreement.

Notwithstanding anything herein, the following shall not be included in the definition of Plaintiff's Released Claims: (i) claims to enforce the Settlement Agreement, and (ii) claims for denial of benefits from the Plan.

1.40   "Plan" means the Eaton Vance Profit Sharing and Savings Plan.

1.41   "Plan Of Allocation" means the methodology for allocating and distributing the Net Settlement Amount as described in Article V herein.

1.42   "Preliminary Approval Order" means the order of the Court preliminarily approving the Settlement Agreement, in substantially the form attached as Exhibit 2 to the Memorandum in Support of Plaintiff's Motion for Entry of Preliminary Order.

1.43   "PTE 2003-39" means U.S. Department of Labor Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75,632 (Dec. 31, 2003), as amended.

1.44    "Proprietary Funds" means the following funds, regardless of share class: Calvert Emerging Markets Equity Fund, Calvert Equity, Calvert Green Bond Fund, Calvert US Large-Cap Core Responsible Index Fund, Eaton Vance Atlanta Capital Focused Growth, Eaton Vance Atlanta Capital Horizon Growth, Eaton Vance Atlanta Capital Select Equity, Eaton Vance Atlanta Capital SLCT Equity, Eaton Vance Atlanta Capital SMID-Cap, Eaton Vance Balanced Fund, Eaton Vance Bond, Eaton Vance Build America Bonds, Eaton Vance Commodity Strategy, Eaton Vance Core Bond, Eaton Vance Core Plus Bond, Eaton Vance Diversified Currency Income, Eaton Vance Dividend Builder, Eaton Vance Emerging Markets Local Income, Eaton Vance Floating Rate, Eaton Vance Floating-Rate & High Income, Eaton Vance Floating-Rate Advantage, Eaton Vance Focused Growth Opportunities, Eaton Vance Focused Value Opportunities, Eaton Vance Global Income Builder, Eaton Vance Global Macro Absolute Return, Eaton Vance Global Macro Absolute Return Advantage, Eaton Vance Global Natural Resources, Eaton Vance Government Obligations, Eaton Vance Greater China Growth, Eaton Vance Greater India, Eaton Vance Growth, Eaton Vance Hedged Stock Fund, Eaton Vance Hexavest Emerging Markets Equity, Eaton Vance Hexavest Global Equity, Eaton Vance Hexavest International Equity, Eaton Vance Hexavest US Equity, Eaton Vance High Income Opportunities, Eaton Vance Income Fund of Boston, Eaton Vance Investment Grade Income, Eaton Vance Large-Cap Core Research, Eaton Vance Large-Cap Growth, Eaton Vance Large-Cap Value, Eaton Vance Low Duration, Eaton Vance Multi Cap Growth, Eaton Vance Multisector Income, Eaton Vance Multi-Strategy Absolute Return, Eaton Vance Multi-Strategy All Market, Eaton Vance Parametric Absolute Return, Eaton Vance Parametric Commodity Strategy, Eaton Vance Parametric Currency, Eaton Vance Parametric Emerging Markets, Eaton Vance Parametric International Equity, Eaton Vance Parametric Market Neutral, Eaton Vance Parametric Option Absolute Return Strategy, Eaton Vance Parametric Structured Absolute Return, Eaton Vance Parametric Structured Commodity Strategy, Eaton Vance Parametric Structured Currency, Eaton Vance Parametric Structured Emerging Markets, Eaton Vance Parametric Structured International Equity, Eaton Vance Real Estate, Eaton Vance Richard Bernstein All Asset Strategy, Eaton Vance Richard Bernstein Equity Strategy, Eaton Vance Risk-Managed Equity Option, Eaton Vance Short Duration Government Income, Eaton Vance Short Duration Inflation-Protected Income, Eaton Vance Short Duration Real Return, Eaton Vance Short Duration Strategy Income, Eaton Vance Short Term Real Return, Eaton Vance Small-Cap, Eaton Vance Small-Cap Value, Eaton Vance Special Equities, Eaton Vance Stock, Eaton Vance Strategic Income, Eaton Vance Trust Company Collective Investment Trust for Eaton Vance Benefit Plans Moderate Fund, Eaton Vance Trusty Company/Eaton Vance Investment Committee-Directed Profit Sharing and Savings Plan Fund, Eaton Vance US Government Money Market, and Eaton Vance Worldwide Health Sciences.

1.45    "Qualified Domestic Relation Order" means a judgment, decree, or order (including the approval of a property settlement) that is made pursuant to state domestic relations law (including community property law) and that relates to the provision of child support, alimony payments, or marital property rights for the benefit of a spouse, former spouse, child, or other dependent of an Active Participant, Inactive Participant, or Former Participant and which has been determined qualified pursuant to the Plan's procedures.

1.46    "Qualified Settlement Fund" means the interest-bearing settlement fund account to be established and maintained by the Escrow Agent as described in Article IV herein.

1.47    "Recordkeeper" means Schwab Retirement Plan Services, Inc.

1.48    "Released Parties" means each Defendant and its present, former, or future affiliates, agencies, agents, assigns, associates, directors, employees, officers, parents, partners, representatives, subsidiaries, predecessors and successors, and all respective heirs, executors, administrators, agents, attorneys, personal representatives, predecessors, successors, stockholders, partners, servicers, subrogees, officers, directors, associates, controlling persons, employees, attorneys, counselors, insurers, financial or investment advisors, consultants, accountants, investment bankers, commercial bankers, or advisors of any of the foregoing.

1.49    "Rollover-Electing Former Participant" means a Former Participant who has submitted a completed, satisfactory Former Participant Rollover Form by the Former Participant Rollover Form Deadline set by the Court and whose Former Participant Rollover Form is accepted by the Settlement Administrator.

1.50    "Settlement Administrator" means Analytics LLC, an independent contractor to be retained by Class Counsel and approved by the Court.

1.51    "Settlement Agreement" means the compromise and resolution embodied in this agreements and its exhibits.

1.52    "Settlement Allocation Score" has the meaning ascribed to it in Section 5.1 herein.

1.53    "Settlement Website" means the internet website established by the Settlement Administrator as described in Section 3.3 herein.

1.54    "Unknown Claims" means any and all of Plaintiff's Released Claims which Plaintiff or any Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Parties, which if known by him, her or it might have affected his, her, or its decision(s) with respect to the release of the Released Parties, or might have affected his, her, or its decision(s) not to object to this Settlement Agreement. With respect to any and all of Plaintiff's Released Claims, the Parties stipulate and agree that upon the Effective Date, the Parties and Class Members shall be deemed to have waived, and by operation of the entry of the Final Approval Order shall have expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Parties acknowledge, and Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of

7

Plaintiff's Released Claims was separately bargained for and was a material and necessary element of the Settlement.

## ARTICLE II

## SETTLEMENT APPROVAL

2.1     Preliminary approval by Court.  On or before May 6, 2019, Plaintiff, through Class Counsel, shall apply to the Court for entry of the Preliminary Approval Order in substantially the form attached as Exhibit 2 to the Memorandum in Support of Plaintiff's Motion for Entry of Preliminary Order hereto, which shall include, among other provisions, a request that the Court:

(a)     appoint Plaintiff as Class Representative of the Class;

(b)     appoint Class Counsel to represent the Class;

(c)     approve the Parties' selection of Settlement Administrator and Escrow Agent;

(d)     conditionally certify the Class under Federal Rule of Civil Procedure 23(b)(1) for settlement purposes only and without prejudice to Defendants' right to contest class certification if the Final Approval Order is not entered;

(e)     preliminarily approve this Settlement Agreement for purposes of disseminating notice to the Class;

(f)     approve the form and contents of the Notice (including the Former Participant Rollover Form to be sent to Former Participants) and hold that mailing copies of the Notice to Class Members by first class mail, postage prepaid complies fully with the requirements of Federal Rule of Civil Procedure 23, the United States Constitution, and any other applicable law;

(g)     preliminarily bar and enjoin the institution and prosecution of any Plaintiff's Released Claims against any Released Parties by Class Members and their respective heirs, Beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns, pending final approval of this Settlement Agreement, even if any Class Member may thereafter discover facts in addition to or different from those which the Class Members or Class Counsel now know or believe to be true with respect to the Action and Plaintiff's Released Claims;

(h)     provide that Class Members may object to the Settlement Agreement prior to the Fairness Hearing according to a designated schedule; and

(i)     schedule a Fairness Hearing to (1) review comments and/or objections regarding this Settlement Agreement, (2) consider the fairness, reasonableness, and adequacy of this Settlement Agreement, (3) consider whether the Court should issue a Final Approval Order approving this Settlement Agreement, awarding any Attorneys' Fees and

Incentive Award, and dismissing this Action with prejudice, and (4) consider such other matters as the Court may deem appropriate.

2.2     Review by Independent Fiduciary.  The Company shall, in its sole discretion, select and retain the Independent Fiduciary, on behalf of the Plan, to determine whether to approve and authorize Plaintiff's Released Claims on behalf of the Plan.

(a)     The Independent Fiduciary shall comply with all relevant requirements set forth in PTE 2003-39.

(b)     The Independent Fiduciary shall notify the Company and Class Counsel of its determination in writing and in accordance with PTE 2003-39, which notification shall be delivered no later than thirty (30) calendar days before the Fairness Hearing.

(c)     If the Independent Fiduciary disapproves or otherwise does not authorize the Settlement Agreement or refuses to execute the release on behalf of the Plan, the , the Defendants (and only the Defendants) may (but need not) terminate the Settlement Agreement.

(d)     The Parties shall comply with reasonable requests for information made by the Independent Fiduciary.

(e)     All fees and expenses associated with the Independent Fiduciary's retention and determination shall be considered Administrative Expenses.

2.3     Final approval by Court.  No later than fourteen (14) calendar days before the Fairness Hearing, or by such other deadline as specified by the Court, Class Counsel shall apply to the Court for entry of the Final Approval Order in substantially the form attached as Exhibit 3 to the Memorandum in Support of Plaintiff's Motion for Entry of Preliminary Order hereto, which shall include, among other provisions, a request that the Court:

(a)     dismiss the Action with prejudice and without costs, except as contemplated by this Settlement Agreement;

(b)     decree that neither the Final Approval Order nor this Settlement Agreement constitutes an admission by any Defendant or Released Party of any liability or wrongdoing whatsoever;

(c)     bar and enjoin all Class Members from asserting any of Plaintiff's Released Claims against any of the Released Parties;

(d)     determine that this Settlement Agreement is entered into in good faith and represents a fair, reasonable, and adequate settlement that is in the best interests of the Class Members; and

(e)     preserve the Court's continuing and exclusive jurisdiction over the Parties and all Class Members to administer, construe, and enforce this Settlement Agreement in

accordance with its terms for the mutual benefit of the Parties, but without affecting the finality of the Final Approval Order.

## ARTICLE III

## SETTLEMENT ADMINISTRATION

3.1    CAFA Notice.  No later than ten (10) calendar days after the Plaintiff's filing of this Settlement Agreement and motion for entry of the Preliminary Approval Order with the Court, the Settlement Administrator shall provide appropriate notice of this Settlement Agreement to the Attorney General of the United States and to the Attorneys General of all states in which Class Members reside, as specified in 28 U.S.C. § 1715(b).  The costs of such notice shall be considered an Administrative Expense.  Upon completing such notice, the Settlement Administrator shall provide written notice to Class Counsel and Defendants' Counsel.

3.2    Notice to Class Members.

(a)    The Company shall cause the Recordkeeper (or its designee) to provide to the Settlement Administrator all information necessary to disseminate the Notice to Class Members and implement the Plan Of Allocation no later than fourteen (14) calendar days after the entry of the Preliminary Approval Order.

(b)    No later than thirty (30) calendar days after the entry of the Preliminary Approval Order, or by such other deadline as specified by the Court, the Settlement Administrator shall send the Notice by first-class mail, postage prepaid to Class Members.

(c)    The Notice shall be in the form approved by the Court, which shall be in substantially the form attached as Exhibit B hereto.  The Notice to Former Participants will include the Former Participant Rollover Form.

(d)    The Notice shall be sent to the last known address of each Class Member provided by the Recordkeeper (or its designee), unless an updated address is obtained by the Settlement Administrator through its efforts to verify the last known address provided by the Recordkeeper (or its designee).

(e)    The Settlement Administrator shall use commercially reasonable efforts to locate any Class Member whose Notice is returned and mail such Notices to those Class Members one additional time.

(f)    The Settlement Administrator shall post a copy of the Notice and the Former Participant Rollover Form on the Settlement Website.

3.3    Settlement Website.

(a)    No later than thirty (30) calendar days after the entry of the Preliminary Approval Order, the Settlement Administrator shall establish the Settlement Website.  The Settlement Administrator shall maintain the Settlement Website until no later than one year after the Effective Date or thirty (30) calendar days after the receipt of the notice(s)

referenced in Section 5.5, whichever is earlier, at which point the Settlement Administrator shall take down the Settlement Website.

(b)     The Settlement Website shall contain a copy of the Notice, Former Participant Rollover Form, and relevant case documents, including but not limited to a copy of all documents filed with the Court in connection with the Settlement.  No other information or documents will be posted on the Settlement Website unless agreed to in advance by the Parties in writing.

(c)     The Settlement Website shall also include a toll-free telephone number and mailing address through which Settlement Class Members may contact the Settlement Administrator (or its designee) directly.  With approval and input from Class Counsel and Defendants' Counsel, the Settlement Administrator shall develop a question-and-answer script for use with callers to the toll-free telephone number.

3.4     Distribution of Net Settlement Amount.  The Settlement Administrator shall distribute the Net Settlement Amount to Class Members in accordance with the Plan Of Allocation as described in Article V herein.  Subject to at least thirty (30) calendar days' written notice from the Settlement Administrator, the Company shall use reasonable efforts to cause the Recordkeeper (or its designee) to provide an updated list of Active Participants and Inactive Participants prior to the distribution, so as to identify any such participants who have taken a full distribution from their Plan account and no longer have a Plan account with a balance greater than $0.00.

3.5     Maintenance of records.  The Settlement Administrator shall maintain reasonably detailed records of its activities carried out under this Settlement Agreement.  The Settlement Administrator shall maintain all such records as required by applicable law in accordance with its business practices and provide same to Class Counsel and Defendants' Counsel upon their request. The Settlement Administrator shall provide such information as may reasonably be requested by Plaintiff or Defendants or their counsel relating to the administration of the Settlement Agreement.

3.6     No liability.  Defendants, Defendants' Counsel, and Defendant Released Parties shall have no responsibility for, interest in, or liability whatsoever, with respect to:

(a)     any act, omission, or determination of the Settlement Administrator;

(b)     any act, omission, or determination of Class Counsel or their designees or agents in connection with the administration of the Settlement Agreement;

(c)     the management, investment, or distribution of the Settlement Fund; or

(d)     the determination, administration, calculation, or payment of any claims asserted against the Qualified Settlement Fund.

11

## ARTICLE IV

## ESTABLISHMENT OF QUALIFIED SETTLEMENT FUND

4.1     Establishment of the Qualified Settlement Fund.  No later than five (5) business days after entry of the Preliminary Approval Order, the Escrow Agent shall establish an escrow account.  The Parties agree that the escrow account is intended to be, and will be, an interest-bearing Qualified Settlement Fund within the meaning of U.S. Department of Treasury Regulation § 1.468B-1 (26 C.F.R. § 1.468B-1).  In addition, the Escrow Agent timely shall make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in 26 C.F.R. § 1.468B-1(j)(2)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to prepare and deliver, in a timely and proper manner, the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

4.2     Funding of the Qualified Settlement Fund.  In consideration of all the promises and agreements set forth in the Settlement Agreement, the Company will contribute, or cause to be contributed, the Gross Settlement Amount to the Qualified Settlement Fund.  No other Defendant shall have any obligation to contribute financially to the Qualified Settlement Fund.  The Company shall contribute the Gross Settlement Amount to the Qualified Settlement Fund, and this funding, in the aggregate, together with any interest and investment earnings thereon, shall constitute the Qualified Settlement Fund:

(a)     No later than fourteen (14) calendar days after the later of (i) the Preliminary Order is entered, or (ii) the escrow account described in Section 4.1 is established and the Escrow Agent shall have furnished to Defendants in writing the escrow account name, IRS W-9 form, and all necessary wiring instructions, the Company shall cause to be deposited one hundred thousand U.S. dollars (USD $100,000.00) of the Gross Settlement Amount into the Qualified Settlement Fund to fund any Administrative Expenses that arise before the entry of the Final Approval Order.

(b)     No later than fourteen (14) calendar days after entry of the Final Approval Order, the Company shall cause the remaining portion of the Gross Settlement Amount (three million, three hundred and fifty thousand U.S. dollars (USD $3,350,000.00)).

4.3     Qualified Settlement Fund administrator.  For the purpose of § 468B of the Internal Revenue Code of 1986, as amended (26 U.S.C. § 468B) and the regulations promulgated thereunder, the administrator of the Qualified Settlement Fund shall be the Escrow Agent.  The Escrow Agent, or the Settlement Administrator on its behalf, shall timely and properly cause to be filed all informational and other tax returns necessary or advisable with respect to the Gross Settlement Amount (including without limitation applying for a taxpayer identification number for the Qualified Settlement Fund and filing the returns described in 26 C.F.R. § 1.468B-2(k)).  Such returns, as well as the election described in Section 4.1, shall be consistent with this Article and, in all events, shall reflect that all taxes (including any estimated taxes, interest, or penalties) on the income earned by the Gross Settlement Amount shall be deducted and paid from the Gross Settlement Amount as described in Section 4.5 herein.

4.4     Investment of the Qualified Settlement Fund.  The Escrow Agent shall invest the Qualified Settlement Fund in short-term United States agency or Treasury securities or other instruments backed by the full faith and credit of the United States government or an agency thereof, or fully insured by the United States Government or an agency thereof, and shall reinvest the proceeds of these investments as they mature in similar instruments at their then-current market rates.

4.5     Taxes on the income of the Qualified Settlement Fund.  All taxes on any income of the Qualified Settlement Fund and expenses and costs incurred in connection with the taxation of the Qualified Settlement Fund (including, without limitation, expenses of tax attorneys and accountants) are Administrative Expenses and shall be timely paid by the Escrow Agent out of the Qualified Settlement Fund.  The Escrow Agent, or the Settlement Administrator on its behalf, shall be responsible for making provision for the payment from the Qualified Settlement Fund of all taxes and tax expenses, if any, owed with respect to the Qualified Settlement Fund and for all tax reporting, remittance, and/or withholding obligations, if any, for amounts distributed from it.  Defendants, Defense Counsel, and Class Counsel have no responsibility or any liability for any taxes or tax expenses owed by, or any tax reporting or withholding obligations, if any, of the Qualified Settlement Fund.

**ARTICLE V**

**PLAN OF ALLOCATION**

5.1     Calculation of payments to individual Class Members.  Payments to each Class Member shall by calculated by the Settlement Administrator as follows, based on information provided by the Recordkeeper:

(a)     For each Class Member, the Settlement Administrator shall determine a Settlement Allocation Score.  A Class Member's Settlement Allocation Score shall be weighted by eighty percent (80%) to his or her Plan account balance invested in Proprietary Funds and by twenty percent (20%) to his or her Plan account balance invested in Non-Proprietary Funds.  Accordingly, each Settlement Allocation Score shall be a Class Member's aggregate year-end Plan account balance during the Class Period, measured in points such that each dollar invested in Proprietary Funds equals four (4) points and each dollar invested in Non-Proprietary Funds equals one (1) point; provided, however, that each Class Member's year-end Plan account balance for the year 2012 shall be multiplied by 87/365, and each Class Member's year-end Plan account balance for the year 2019 shall be the Plan account balance as of March 31, 2019.

(b)     The Settlement Administrator shall determine each Class Member's Entitlement Amount by calculating each Class Member's pro rata share of the Net Settlement Amount, based on his or her Settlement Allocation Score compared to the sum of all Class Members' Settlement Allocation Scores.

(c)     The aggregate of all Class Members' Entitlement Amounts may not exceed the Net Settlement Amount.  In the event that the Settlement Administrator determines that aggregate monetary payment pursuant to the Plan Of Allocation would exceed the Net

Settlement Amount, the Settlement Administrator is authorized to make such pro rata changes as are necessary to ensure that the aggregate monetary payment pursuant to the Plan Of Allocation does not exceed the Net Settlement Amount.

    5.2    <u>Payments to Active Participants and Inactive Participants.</u>

    (a)    Upon completing the calculation of each Class Member's Entitlement Amount and no later than thirty (30) calendar days following the Effective Date, the Settlement Administrator shall provide the Company (or its designee), Class Counsel,and the Recordkeeper information in a mutually agreeable format concerning each Active Participant and each Inactive Participant's Entitlement Amount, and any other information requested by the Company or the Recordkeeper as necessary to effectuate this Article.

    (b)    No later than ten (10) calendar days after completing the steps described in Section 5.2(a) herein and upon written notice to the Company and the Recordkeeper, the Settlement Administrator shall effect a transfer from the Qualified Settlement Fund to the Plan of all monetary payments payable to Active Participants and Inactive Participants. The Recordkeeper shall thereafter credit the individual Plan account of each Active Participant and Inactive Participant in an amount equal to that individual's Entitlement Amount.

    (c)    Each Active Participant and each Inactive Participant's Entitlement Amount shall be invested in accordance with and in proportion to such Active Participant's investment elections then on file for new contributions to his or her Plan account. If the Active Participant or Inactive Participant does not have an investment election on file, then such individual shall be deemed to have directed payment of his or her Entitlement Amount to be invested in the Plan's qualified default investment alternative, as defined in 29 C.F.R. § 2550.404c-5.

    (d)    If, as of the date on which the Recordkeeper credits the individual Plan account of each Active Participant and Inactive Participant with his or her Entitlement Amount, an individual believed to be an Active Participant or an Inactive Participant no longer has a Plan account balance greater than $0.00, he or she will be treated as a Former Participant. The Recordkeeper shall promptly transmit a list of such individuals to the Settlement Administrator, who shall effectuate payment to such individuals in accordance with Section 5.3 herein.

    5.3    <u>Payments to Former Participants.</u>

    (a)    Each Former Participant (or the Beneficiaries or Alternate Payees of Former Participants) will have the opportunity to elect a tax-qualified rollover of his or her Entitlement Amount to an individual retirement account or other eligible employment plan, which he or she has identified on the Former Participant Rollover Form, provided that the Former Participant supplies adequate information to the Settlement Administrator to effect the rollover. Payments to each Former Participant shall depend on whether each is a Rollover-Electing Former Participant or a Non-Rollover-Electing Former Participant:

    (i)    <u>Rollover-Electing Former Participants.</u> Upon completing the calculation of each Class Member's Entitlement Amount and no later than forty (40) calendar

days following the Effective Date, the Settlement Administrator shall effect a rollover from the Qualified Settlement Fund to the individual retirement account or other eligible employer plan elected by each Rollover-Electing Former Participant in his or her Former Participant Rollover Form (if the conditions for such rollover are satisfied) and any associated paperwork necessary to transfer such Entitlement Amount by rollover.  If the Settlement Administrator is unable to effectuate the rollover instructions of any Rollover-Electing Former Participant as provided in his or her Former Participant Rollover Form, he or she will be treated as a Non-Rollover-Electing Former Participant.

(ii)    Non-Rollover-Electing Former Participants.  Upon completing the calculation of each Class Member's Entitlement Amount and no later than forty (40) calendar days following the Effective Date, the Settlement Administrator shall issue a check from the Qualified Settlement Fund to each Non-Rollover-Electing Former Participant, in the amount of each Former Participant's Entitlement Amount (less any withholdings).

5.4    Payments to Beneficiaries and Alternate Payees.

(a)    Beneficiaries of Active Participants or Inactive Participants that are entitled to receive all or a portion of an Active Participant's or Inactive Participant's Entitlement Allocation under this Article shall receive such settlement payments in the form of a check issued by the Settlement Administrator.  Beneficiaries of Former Participants that are entitled to receive all or a portion of a Former Participant's Entitlement Allocation under this Article will receive such settlement payments under the methods described in Section 5.3 for Former Participants.

(b)    Alternate Payees of Active Participants or Inactive Participants that are entitled to receive all or a portion of an Active Participant's or Inactive Participant's Entitlement Allocation under this Article shall receive such settlement payments pursuant to the terms of the applicable Qualified Domestic Relations Order.  Alternate Payees of Former Participants that are entitled to receive all or a portion of a Former Participant's Entitlement Allocation under this Article will receive such settlement payments under the methods described in Section 5.3 for Former Participants.

(c)    The Settlement Administrator shall have sole and final discretion to determine the amounts to be paid to Beneficiaries and Alternate Payees in accordance with the Plan of Allocation set forth in this Article and as ordered by the Court.

(d)    All checks issued in accordance with the Plan Of Allocation shall be mailed to the address of each Class Member (or his or her Beneficiary or Alternate Payee) provided by the Recordkeeper or any updated address obtained by the Settlement Administrator.

(e)    All checks issued in accordance with the Plan of Allocation shall expire no later than one hundred twenty (120) calendar days after their issue date.  All checks that are undelivered or are not cashed before their expiration date shall revert to the Qualified Settlement Fund, which limitation shall be printed on the face of each check.  The voidance of checks shall have no effect on Class Members' release of claims, obligations, representations, or warranties as provided herein, which shall remain in full effect.

     5.5     Notice of completion of Plan Of Allocation.  Within ten (10) business days of completing all aspects of the Plan Of Allocation, the Settlement Administrator shall provide written notice of its implementation of the Plan Of Allocation to Class Counsel and Defendants' Counsel.  Such notice shall provide, in reasonable detail, a summary of the steps taken to implement the Plan Of Allocation.

     5.6     Disbursement of undistributed monies from the Qualified Settlement Fund.  No sooner than one hundred and fifty (150) calendar days following the last date on which any check was mailed pursuant to Section 5.4(d) herein, any portion of the Qualified Settlement Fund remaining after distributions, including costs and taxes, shall be paid to the Plan for the purpose of defraying administrative fees and expenses of the Plan.

     5.7     Responsibility for taxes.  Each Class Member who receives a payment pursuant to the Settlement Agreement shall be fully and ultimately responsible for payment of any and all federal, state or local taxes resulting from or attributable to the payment received by such person.  Each Class Member shall hold Defendants, Defendants' Counsel, Released Parties, Class Counsel, and the Settlement Administrator harmless from (a) any tax liability, including without limitation penalties and interest, related in any way to payments or credits under the Agreement, and (b) the costs (including, without limitation, fees, costs and expenses of attorneys, tax advisors, and experts) of any proceedings (including, without limitation, any investigation, response, and/or suit), related to such tax liability.

### ARTICLE VI

### **ATTORNEYS' FEES AND INCENTIVE AWARD**

     6.1     Attorneys' Fees.  No later than fourteen (14) days prior to the deadline provided in the Preliminary Approval Order for Class Members to object to the Settlement Agreement, Class Counsel may file an application with the Court for payment of their reasonable Attorneys' Fees, to be deducted from the Gross Settlement Amount.  Defendants agree not to object to Class Counsel's application for Attorneys' Fees if limited to one million, one hundred and fifty thousand U.S. dollars (USD $1,150,000.00) or thirty-three and a third percent (33.33%) of the Gross Settlement Amount.  Notwithstanding anything herein, the Court's failure to approve, in whole or in part, any application for Attorneys' Fees sought by Class Counsel shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination of the Settlement.

     6.2     Incentive Award.  No later than fourteen (14) days prior to the deadline provided in the Preliminary Approval Order for Class Members to object to the Settlement Agreement, Class Counsel may file an application with the Court for payment of an Incentive Award to Plaintiff in an amount not to exceed five thousand U.S. dollars (USD $5,000.00).  Notwithstanding anything herein, the Court's failure to approve, in whole or in part, any application for an Incentive Award sought by Class Counsel shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination of the Settlement.

## ARTICLE VII

## RELEASES AND COVENANT NOT TO SUE

7.1     Releases.  Subject to Article IX below, the obligations incurred pursuant to this Settlement Agreement shall be in full and final disposition and settlement of any and all of Plaintiff's Released Claims.

(a)     Upon the Effective Date, Plaintiff and every Class Member on behalf of themselves, their heirs, executors, administrators, successors, and assigns, and the Plan (subject to Independent Fiduciary approval as described in Section 2.2 herein) shall, with respect to each and every Released Claim, be deemed to fully, finally and forever release, relinquish and forever discharge each and every Released Claim (including Unknown Claims) against any and all of the Released Parties, and forever shall be enjoined from prosecuting any such Released Claim.

(b)     Upon the Effective Date, Defendants, on behalf of themselves and their successors and assigns shall be deemed to fully, finally and forever release, relinquish and forever discharge each and every Defendant's Released Claims (including Unknown Claims), and forever shall be enjoined from prosecuting any such claims.

(c)     Nothing herein shall preclude any action to enforce the Settlement Agreement.

7.2     Covenant not to sue.  As of the Effective Date, the Class Members and the Plan (subject to Independent Fiduciary approval as described in Section 2.2 herein) acting individually or together, or in combination with others, shall not sue or seek to institute, maintain, prosecute, argue, or assert in any action or proceeding (including but not limited to a U.S. Internal Revenue Service determination letter proceeding, a U.S. Department of Labor proceeding, an arbitration, or a proceeding before any state insurance or other department or commission), any cause of action, demand, or claim adverse to Plaintiff's Released Parties on the basis of, in connection with, or arising out of any of Plaintiff's Released Claims.  Nothing herein shall preclude any action to enforce the Settlement Agreement.

## ARTICLE VIII

## REPRESENTATIONS AND WARRANTIES

8.1     Parties' representations and warranties.  The parties represent and warrant as follows, and each Party acknowledges that each other Party is relying on these representations and warranties in entering into the Settlement Agreement:

(a)     that they are voluntarily entering into the Settlement Agreement as a result of arm's-length negotiations, and that in executing this Settlement Agreement they are relying solely upon their own judgment, belief, and knowledge, and upon the advice and recommendations of counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters that relate in any way to the subject matter hereof;

17

(b)     that they assume the risk of mistake as to facts or law;

(c)     that they recognize that additional evidence may come to light, but that they nevertheless desire to avoid the expense and uncertainty of litigation by entering into the Settlement Agreement;

(d)     that they have carefully read the contents of the Settlement Agreement, and the Settlement Agreement is signed freely by each individual executing the Settlement Agreement on behalf of each Party; and

(e)     that they have made such investigation of the facts pertaining to the subject matter of the Settlement Agreement as they deem necessary.

8.2     Signatories' representations and warranties.  The persons executing the Settlement Agreement represent that they have been duly authorized to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement in order to effectuate its terms.

## ARTICLE IX

## TERMINATION

9.1     Right to terminate by each Party.  Each Party shall have the right to terminate and abandon the Settlement Agreement by providing written notice of their election to do so to the other Party no later than fourteen (14) calendar days after:

(a)     the Court declines to approve the Settlement Agreement or any material part of it;

(b)     the Court declines to enter the Preliminary Approval Order or materially modifies the contents of the Preliminary Approval Order;

(c)     the Court declines to enter the Final Approval Order or materially modifies the contents of the Final Approval Order; or

(d)     the Final Approval Order is vacated, reversed, or modified in any material respect on any appeal or other review or in a collateral proceeding occurring prior to the Effective Date.

Notwithstanding anything herein, no order of the Court, or modification or reversal on appeal of any order of the Court, solely concerning Attorneys' Fees or any Incentive Award shall constitute grounds for termination of the Settlement Agreement.

9.2     Right to terminate by Defendants.  Defendants (and only Defendants) shall have the right to terminate and abandon the Settlement Agreement in the event that the Independent Fiduciary disapproves or otherwise does not authorize the Settlement Agreement or refuses to approve the Plan's release of Plaintiff's Released Claims.  In such an event, no later than fourteen (14) calendar days after receipt of the Independent Fiduciary's determination,

Defendants shall provide written notice to Plaintiff of (a) their election to exercise their right to terminate and abandon the Settlement Agreement, or (b) their election to waive that right.

      9.3   <u>Reversion to prior positions.</u>  If the Settlement Agreement is terminated in accordance with this Article, then the Parties and Class Members will be restored to their respective positions immediately before the execution of the Settlement Agreement, this Action shall proceed in all respects as if the Settlement Agreement and any related orders had not been entered, any order entered by the Court pursuant to the terms of this Settlement Agreement shall be treated as vacated *nunc pro tunc*, the fact of this Settlement Agreement and the terms contained herein shall not be admissible in any proceeding for any purpose, and the Parties expressly and affirmatively reserve all claims, remedies, defenses, arguments, and motions as to all claims and requests for relief that might have been or might be later asserted in the Action. Further, Defendants' right to oppose a later-filed motion for class certification, if any, will be unimpaired by this Settlement Agreement and related proceedings.

## ARTICLE X

## NO ADMISSION OF WRONGDOING

      10.1   The Settlement Agreement, whether or not consummated, and any proceedings taken pursuant to it, is for settlement purposes only and entered into solely for the purpose of avoiding possible future expenses, burdens, or distractions of litigation, and Defendants and the Released Parties deny any and all wrongdoing. Defendants and the Released Parties specifically and expressly deny any and all liability in connection with any claims which have been made or could have been made, or which are the subject matter of, arise from, or are connected, directly or indirectly, with or related in any way to the Action, including, but not limited to, any violation of any federal or state law (whether statutory or common law), rule, or regulation, and Defendants and the Released Parties deny that any violation of any such law, rule, or regulation has ever occurred.

      10.2   The Settlement Agreement, whether or not consummated, and any negotiations, proceedings, or agreements relating to the Settlement Agreement, and any matters arising in connection with settlement negotiations, proceedings, or agreements:

      (a)   shall not be offered or received against Defendants or any of the Released Parties as evidence of, or be construed as or deemed to be evidence of, any presumption, concession, or admission by Defendants or a Released Party of the truth of any fact alleged by Plaintiff or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, or wrongdoing on the part of Defendants or any of the Released Parties, or the appropriateness of certifying a non-settlement class;

      (b)   shall not be offered or received against Defendants or any of the Released Parties as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by Defendants or any of the Released Parties;

(c)     shall not be offered or received against Defendants or any of the Released Parties as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against Defendants or any of the Released Parties, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement Agreement; provided, however, that if this Settlement Agreement is approved by the Court, Defendants or the Released Parties may refer to it to effectuate the liability protection granted them hereunder; and

(d)     shall not be construed against Defendants or any of the Released Parties as an admission or concession that the consideration to be given hereunder represents the amount which could or would have been recovered after trial of the Action.

10.3    In the event that the Settlement Agreement does not become final for any reason, Defendants reserve their rights to oppose certification of any plaintiff's claim in future proceedings.  In such circumstances, this Settlement Agreement shall not be described as, construed as, offered, or received against any Released Party as res judicata, issue preclusion, law of the case, estoppel, or any other legal or equitable theory as to the propriety of certification of any class under Federal Rule of Civil Procedure 23.

## ARTICLE XI

## MISCELLANEOUS

11.1    <u>No disparaging statements.</u>  Plaintiff, Class Counsel, Defendants, and Defendants' Counsel shall make no statements to the press or make any other public statement describing this Settlement Agreement that disparage any Party or any Released Parties or accuse any Party or any Released Parties of wrongdoing.

11.2    <u>Exhibits included.</u>  The exhibits to the Settlement Agreement are integral parts of the Parties' agreement and are incorporated by reference as if set forth herein.

11.3    <u>Cooperation.</u>   Class Counsel and Defendant's Counsel agree to cooperate fully with one another in seeking Court entry of the Preliminary Approval Order and Final Approval Order.

11.4    <u>Entire agreement.</u>  This Settlement Agreement and all of the exhibits appended hereto constitute the entire agreement of the Parties with respect to their subject matter and supersede any prior agreement, whether written or oral, as to that subject matter.  No representations or inducements have been made by any Party hereto concerning the Settlement Agreement or its exhibits other than those contained and memorialized in such documents.  The provisions of the Settlement Agreement and its exhibits may not be modified or amended, nor may any of their provisions be waived, except by a writing signed by all Parties hereto or their successors-in-interest.

11.5    <u>Waiver.</u>  The waiver by any Party of a breach of the Settlement Agreement by any other Party shall not be deemed a waiver of any other breach of the Settlement Agreement.

11.6    Construction of agreement.  This Settlement Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that the Stipulation is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to its preparation.

11.7    Headings.  The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

11.8    Governing law.  The Settlement Agreement and all documents necessary to effectuate it shall be governed by the internal laws of the Commonwealth of Massachusetts without regard to its conflict of law doctrines, except to the extent that federal law requires that federal law govern, and except that all computations of time with respect to the Settlement Agreement shall be governed by Federal Rule of Civil Procedure 6.

11.9    Fees and expenses.  Except as otherwise expressly set forth herein, each Party shall pay all fees, costs, and expenses incurred in connection with the Action, including fees, costs, and expenses incident to the negotiation, preparation, or compliance with the Settlement Agreement, and including any fees, expenses, and disbursements of its counsel and other advisors.  Nothing in the Settlement Agreement shall require Defendants to pay any monies other than as expressly provided herein.

11.10    Execution in counterparts.  The Settlement Agreement may be executed in one or more counterparts and may be executed by facsimile signature.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties shall exchange among themselves signed counterparts.

11.11    Notices.  Unless otherwise provided herein, any notice, demand, or other communication under the Settlement Agreement (other than Notices to Class Members or other notices provided at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and delivered by hand, sent by registered or certified mail postage prepaid, or delivered by reputable express overnight courier as follows:

(a)    if to Plaintiff:

Charles H. Field
SANFORD HEISLER SHARP, LLP
655 West Broadway, Suite 1700
San Diego, California 92101

(b)    if to Defendants:

James R. Carroll
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116

21

11.12   Retention of jurisdiction.   The Parties shall request that the Court retain jurisdiction of this matter after the Effective Date and enter such orders as are necessary or appropriate to effectuate the terms of the Settlement Agreement.


AGREED TO ON BEHALF OF PLAINTIFF Shannon Price, individually and as Class Representative

Dated:        5/6/2019                          By:  *Charles H. Field*
                                                Charles H. Field
                                                SANFORD HEISLER SHARP, LLP
                                                655 West Broadway, Suite 1700
                                                San Diego, California 92101
                                                (619) 577-4252
                                                cfield@sanfordheisler.com

AGREED TO ON BEHALF OF DEFENDANTS Eaton Vance Corp., Eaton Vance Management, Eaton Vance Investment Committee, and Does 1-30

Dated:        5/6/2019                          By:  *James R. Carroll*
                                                James R. Carroll
                                                SKADDEN, ARPS, SLATE, MEAGHER &
                                                   FLOM LLP
                                                500 Boylston Street
                                                Boston, Massachusetts 02116
                                                (617) 573-4800
                                                james.carroll@skadden.com

# Exhibit A

**Eaton Vance 401(k) Profit Sharing and Savings Plan Settlement Administrator**
**P.O. Box [number]**
**[City, State, ZIP]**
**[www.settlementwebsite.com]**

| ATTORNEY WORK PRODUCT |
| PRIVILEGED & CONFIDENTIAL |
| SASMF DRAFT MAY 2, 2019 |

## FORMER PARTICIPANT ROLLOVER FORM

JOHN Q CLASSMEMBER                         Claim Number: 1111111
123 MAIN ST APT 1
ANYTOWN, ST 12345

This Former Participant Rollover Form is **ONLY** for Class Members who are **Former Participants**, or the beneficiaries or alternate payees of Former Participants (all of whom will be treated as Former Participants). A Former Participant is a Class Member who does not have a Plan account with a balance greater than $0.00 as of the date of [the Preliminary Approval Order].

Former Participants that would like to elect to receive their settlement payment through a rollover to a qualified retirement account must complete, sign, and mail this form with a postmark on or before **10 days before Fairness Hearing, 2019**.  Please review the instructions below carefully. **Former Participants who do not complete and timely return this form will receive their settlement payment by a check payable to you.**  If you have questions regarding this form, you may contact the Settlement Administrator as indicated below:

WWW.SETTLEMENTWEBSITE.COM OR CALL [PHONE NUMBER]

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PART 1: INSTRUCTIONS FOR COMPLETING FORMER PARTICIPANT ROLLOVER FORM

1.  If you would like to receive your settlement payment through a rollover to a qualified retirement account, complete this rollover form.  You should also keep a copy of all pages of your Former Participant Rollover Form, including the first page with the address label, for your records.

2.  **Mail your completed Former Participant Rollover Form postmarked on or before 10 days before Fairness Hearing to the Settlement Administrator at the following address:**

**Eaton Vance 401(k) Profit Sharing and Savings Plan Settlement Administrator**
**P.O. Box [number] [City, State, ZIP]**

It is <u>your</u> responsibility to ensure the Settlement Administrator has timely received your Former Participant Rollover Form.

3.  Other Reminders:

    •  You must provide date of birth, social security number, signature, and a completed Substitute IRS Form W-9, which is attached as part 5 to this form.

    •  If you desire to do a rollover and you fail to complete all of the rollover information in Part 4, below, payment will be made to you by check.

1

- If you change your address after sending in your Former Participant Rollover Form, please provide your new address to the Settlement Administrator.

- **Timing of Payments to Eligible Class Members.** The timing of the distribution of the Settlement payments are conditioned on several matters, including the Court's final approval of the Settlement and any approval becoming final and no longer subject to any appeals in any court. An appeal of the final approval order may take several years. If the Settlement is approved by the Court, and there are no appeals, the Settlement distribution likely will occur within six months of the Court's Final Approval Order.

4. **Questions?** If you have any questions about this Former Participant Rollover Form, please call the Settlement Administrator at [phone number]. The Settlement Administrator will provide advice only regarding completing this form and will not provide financial, tax or other advice concerning the Settlement. You therefore may want to consult with your financial or tax advisor. Information about the status of the approval of the Settlement and the Settlement administration is available on the settlement website, [www.settlementwebsite.com].

You are eligible to receive a payment from a class action settlement. The court has preliminarily approved the class settlement of *Price v. Eaton Vance Corporation., et al.*, Case No. 18-12098-WGY  (D. Mass.). That settlement provides allocation of monies to the individual accounts of certain persons who participated in the Eaton Vance 401(k) Profit Sharing and Savings Plan ("Plan") at any time between October 5, 2012 and [Date of Prelim Order Executed] ("Class Members"). Class Members who had a Plan account with a balance greater than $0.00 during the Class Period but who do not have a Plan account with a balance greater than $0.00 as of the date of Date of Preliminary Approval ("Former Participants") will receive their allocations in the form of a check or in the form of a rollover if and only if they mail a valid Former Participant Rollover Form postmarked on or before **10 days before Fairness Hearing, 2019** to the Settlement Administrator with the required information to effectuate the rollover. For more information about the settlement, please see the Notice Of Class Action Settlement And Fairness Hearing, visit [www.settlementwebsite.com], or call [phone number].

Because you are a Former Participant in the Plan, you must decide whether you want your payment (1) sent payable to you directly by check or (2) to be rolled over into another eligible retirement plan or into an individual retirement account ("IRA"). To elect a rollover, please complete and mail this Former Participant Rollover Form postmarked on or before **10 days before Fairness Hearing, 2019** to the Settlement Administrator. If you do not return this form, your payment will be sent to you directly by check.

## PART 2: PARTICIPANT INFORMATION



**[FORMER PARTICIPANT ROLLOVER FORM CONTINUES ON THE NEXT PAGE]**

## PART 3: BENEFICIARY OR ALTERNATE PAYEE INFORMATION (*IF APPLICABLE*)

☐ Check here if you are the **surviving spouse or other beneficiary** for the Former Participant and the Former Participant is deceased. **Documentation must be provided showing current authority of the representative to file on behalf of the deceased**. Please complete the information below and then continue on to Parts 4 and 5 on the next page.

☐ Check here if you are an alternate payee under a qualified domestic relations order (QDRO). The Settlement Administrator may contact you with further instructions. Please complete the information below and then continue on to Parts 4 and 5 on the next page.

First Name                                    Middle   Last Name

Mailing Address

City                                                          State   Zip Code

Home Phone                           Work Phone or Cell Phone

Participant's Social Security Number      Participant's Date of Birth

Email Address                          M M      D D      Y Y Y Y

3

**[FORMER PARTICIPANT ROLLOVER FORM CONTINUES ON THE NEXT PAGE]**

## PART 4: PAYMENT ELECTION

**Direct Rollover to an Eligible Plan** – Check only one box below and complete the Rollover Information Section below:

☐ Government 457(b)        ☐ 401(a)/401(k)                        403(b)

☐ Direct Rollover to a Traditional IRA   ☐ Direct Rollover to a Roth IRA (subject to ordinary income tax)        403(b)

**Rollover Information:**

Company or Trustee's Name (to whom the check should be made payable)

Company or Trustee's Mailing Address 1

Company or Trustee's Mailing Address 2

Company or Trustee's City                                    State    Zip Code

Your Account Number                                Company or Trustee's Phone Number

## PART 5: SIGNATURE, CONSENT, AND SUBSTITUTE IRS FORM W-9

UNDER PENALTIES OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA, I CERTIFY THAT ALL OF THE INFORMATION PROVIDED ON THIS FORMER PARTICIPANT ROLLOVER FORM IS TRUE, CORRECT, AND COMPLETE AND THAT I SIGNED THIS FORMER PARTICIPANT ROLLOVER FORM.

1. The Social Security number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to back up withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. person (including a U.S. resident alien).

M M    D D    Y Y Y Y

**Participant Signature**                                                    **Date Signed** *(Required)*

Note: If you are subject to backup withholding, you must cross out item 2 above. The IRS does not require your consent to any provision of this document other than this Form W-9 certification to avoid backup withholding.

# Exhibit B

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

**If you are currently a participant in the Eaton Vance Profit Sharing and Savings Plan (the "Plan") or were a participant in the Plan at any time from October 5, 2012 to the present, you are a part of a class action settlement.**

IMPORTANT
PLEASE READ THIS NOTICE CAREFULLY
THIS NOTICE RELATES TO THE PENDENCY OF A CLASS ACTION LAWSUIT AND, IF YOU ARE A SETTLEMENT CLASS MEMBER, CONTAINS IMPORTANT INFORMATION ABOUT YOUR RIGHTS TO OBJECT TO THE SETTLEMENT

*A Federal Court authorized this notice.  You are not being sued.*
*This is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action lawsuit against Eaton Vance Corp., Eaton Vance Management, and Eaton Vance Investment Committee (collectively, "Eaton Vance"). The class action lawsuit involves whether or not Eaton Vance complied with its fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") in managing the Plan.

- You are included as a Class Member if you are currently a Plan participant, or if you were a Plan participant at any time from October 5, 2012 to the present (the "Class Period").

- Eaton Vance has agreed to pay $3,450,000.00 into a settlement fund.  Class Members are eligible to receive a pro rata share of the amount in the settlement fund remaining after payment of administrative expenses, any attorneys' fees and expenses that the Court awards to Plaintiff's lawyers, and any service award to Plaintiff.  The amount of each Class Member's payment is based on his or her Plan account balance.  Payments to current Plan participants will be deposited into their respective Plan accounts.  Payments to former Plan participants will be made directly to former Plan participants by check, or former Plan participants can instead elect to receive their payment through a rollover to a qualified retirement account.

- Please read this notice carefully. Your legal rights are affected whether you act, or don't act.

| THIS TABLE CONTAINS A SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **OBJECT BY [DATE]** | You may write to the Court if you don't like the Settlement to explain why you object. |
| **ATTEND A HEARING** | You may ask to speak in Court about the fairness of the Settlement. |
| **DO NOTHING** | You will get a share of the Settlement benefits to which you are entitled and will give up your rights to sue Eaton Vance about the allegations in this case. |

## BASIC INFORMATION

| 1.  What is this notice and why should I read it? |
| --- |

A court authorized this notice to let you know about a proposed settlement of a class action lawsuit called *Price v. Eaton Vance Corp., Eaton Vance Management, Eaton Vance Investment Committee, and Does 1-30*, D. Mass. Civil Action No. 18-12098-WGY (the "Action"), brought on behalf of the Class Members, and pending in the United States District Court for the District of Massachusetts. You need not live in Massachusetts to get a benefit under the Settlement. This notice describes the Settlement. Please read this notice carefully to determine whether you wish to participate in the Settlement.  Your rights and options—**and the deadlines to exercise them**—are explained in this notice.  Please understand that if you are a settlement class member, your legal rights are affected regardless of whether you act.

| 2. What is a class action lawsuit? |
| --- |

A class action is a lawsuit in which one or more plaintiffs sue on behalf of a group of people who allegedly have similar claims ("Plaintiff"). After the Parties reached an agreement to settle this case, the Court granted preliminary approval of the Settlement and preliminarily determined that the case should be treated as a class action for settlement purposes. Among other things, this preliminary approval permits Class Members to voice their support of or opposition to the Settlement before the Court makes a final determination as whether to approve the Settlement. In a class action, the court resolves the issues for all class members.

## THE CLAIMS IN THE LAWSUIT AND THE SETTLEMENT

| 3. What is this lawsuit about? |
| --- |

Plaintiff filed a class action complaint against Defendants Eaton Vance Corp., Eaton Vance Management, Eaton Vance Investment Committee, and Does 1-30 on behalf of a class of Plan participants alleging that Eaton Vance breached its fiduciary duties and committed prohibited transactions under ERISA by including investment options in the Plan that are affiliated with Eaton Vance ("Affiliated Funds").  A more complete description of what Plaintiff alleges is in the Complaint, which is available on the Settlement Website at [ ].

Eaton Vance denies Plaintiff's claims of wrongdoing or liability against it, and asserts that its conduct was lawful.  Eaton Vance is settling the Action solely to avoid the expense, inconvenience, and inherent risk and disruption of litigation.

| 4. Why is there a Settlement? |
| --- |

The Court has not decided in favor of either side in the case. Instead, both sides agreed to a settlement. That way, both sides avoided the cost and risk of a trial, and the affected current and former Plan participants will get substantial benefits that they would not have received if Plaintiff had litigated the case and lost. The Plaintiff and her attorneys think the settlement is in the best interests for everyone who participated in the Plan during the Class Period.

## WHO'S INCLUDED IN THE SETTLEMENT?

| 5. How do I know if I am in the Settlement Class? |
| --- |

The Court decided that everyone who fits this description is a member of the **Settlement Class**:

All current and former participants in the Plan who carried a positive account balance from October 5, 2012 to the date on which the Settlement is finally approved by the Court.

The Court has excluded from the Settlement Class Eaton Vance Corp., Eaton Vance Management, Eaton Vance Investment Committee, and the members of the Eaton Vance Investment Committee during the Class Period.

If you meet the definition above, you are a member of the Settlement Class.

## THE SETTLEMENT BENEFITS

| 6. What does the Settlement provide? |
| --- |

Eaton Vance has agreed to pay $3,450,000 to Class Members, which includes amounts for expenses associated with administering the Settlement, as well as attorney's fees and a service award to Plaintiff (the latter of which two categories must be approved by the Court). (See Questions No. 9-10.) The amount of each Class Member's payment is based on the size of his or her Plan account balance, including the proportion of his or her Plan account balance that is invested in Affiliated Funds.

If you are a Class Member (see Question No. 5) and you are currently a Plan participant, your payment will be deposited into your Plan account in accordance with your investment elections for new contributions. If you have not made any such elections, your payment will be invested in the Plan's qualified default investment alternative.

If you are a beneficiary entitled to receive payments on behalf of a Class Member (a "Beneficiary"), you will receive your payment under the Settlement directly in the form of a check. If you are an alternate payee entitled to receive payments on behalf of a Class Member pursuant to a Qualified Domestic Relations Order (an "Alternate Payee"), you will receive your payment of the Settlement (pursuant to the terms of your Qualified Domestic Relations Order) directly in the form of a check.

If you are a Class Member and you *previously* participated in the Plan but no longer do so (or you are a Beneficiary or an Alternate Payee of such a Class Member), then you will receive a payment under the Settlement directly in the form of a check. You do not have to submit a claim to receive a payment under the settlement. If, however, you would prefer to receive your settlement payment through a rollover to a qualified retirement account, you must complete, sign, and mail the enclosed Former Participant Rollover Form by [10 days before Fairness Hearing, 2019].

## HOW TO GET BENEFITS

| **7. How do I get benefits?** |
|---|

Class Members do not have to submit claim forms in order to receive settlement benefits.

The benefits of the Settlement will be distributed automatically once the Court approves the Settlement, either to Class Members' Plan accounts (for current Plan participants) or by check (for former Plan participants, and eligible Beneficiaries and Alternate Payees of Class Members). (See Question No. 6.) **Former Plan participants who would prefer to receive their settlement payment through a rollover to a qualified retirement account must complete, sign, and mail the enclosed Former Participant Rollover Form by [10 days before Fairness Hearing, 2019].** Former Plan participants who fail to complete, sign, and mail their Former Participant Rollover Form will receive their Settlement distribution by check.

| **8. When will I get my payment?** |
|---|

If you are a current Plan participant, then you will receive your pro rata share of the $3,450,000 in the form of a deposit into your Plan account effective no later than forty (40) days after the settlement has received final approval and/or after any appeals have been resolved in favor of the settlement. The hearing to consider the final fairness of the settlement is scheduled for [ ].

Any eligible Beneficiaries or Alternate Payees will receive their payment under the Settlement in the form of a check within 40 days after the settlement has received final approval and/or after any appeals have been resolved in favor of the settlement.

If you are a former Plan participant (or a Beneficiary or Alternate Payee of such participant) who timely submits a Former Participant Rollover Form, the Settlement Administrator will effect a rollover of your pro rata share of the $3,450,000 to your qualified retirement account selected in that Form within 40 days after the settlement has received final approval and/or after any appeals have been resolved in favor of the settlement. If you are a former Plan participant (or a Beneficiary or Alternate Payee of such participant) who does not submit a Former Participant Rollover Form, a check in the amount of your pro rata share of the $3,450,000 will be issued to you within 40 days after the settlement has received final approval and/or after any appeals have been resolved in favor of the settlement.

All checks will expire and become void 120 days after they are issued, if they have not been cashed.

These payments may have certain tax consequences; you should consult your tax advisor.

## THE LAWYERS REPRESENTING YOU

| **9. Who represents the Settlement Class?** |
|---|

For purposes of the settlement, the Court has appointed lawyers from the law firm of Sanford Heisler Sharp, LLP as Class Counsel. If you want to be represented by your own lawyer, you may hire one at your own expense. In addition, the Court appointed Plaintiff Shannon Price to serve as the Class Representative. She is also a Class Member.

Subject to approval by the Court, Class Counsel has proposed that up to $5,000 may be paid to Plaintiff as the Class Representative in recognition of time and effort she expended on behalf of the Settlement Class.  The Court will determine the proper amount of any award to Plaintiff.  The Court may award less than that amount.

| **10. How will the lawyers be paid?** |
| --- |

From the beginning of the case, which was filed in October 2018, to the present, Class Counsel have not received any payment for their services in prosecuting the case or obtaining the settlement, nor have they been reimbursed for any out-of-pocket expenses they have incurred.  Class Counsel will apply to the Court for an award of attorneys' fees not to exceed 33% of the $3,450,000 settlement amount plus their costs and expenses incurred in prosecution of the case.  Eaton Vance has agreed not to object to such an application.  The Court will determine the proper amount of any attorneys' fees and expenses to award Class Counsel.

Any attorneys' fees and expenses awarded by the Court will be paid to Class Counsel from the $3,450,000 settlement fund.  The Class Members will not have to pay anything toward the fees or expenses of Class Counsel.

## YOUR RIGHTS AND OPTIONS

| **11. What is the effect of final approval of the Settlement?** |
| --- |

If the Court grants final approval of the settlement, a final order and judgment dismissing the case will be entered in the Action.  Payments under the settlement will then be processed and distributed. The release by Class Members will also take effect.  All members of the Settlement Class will release and forever discharge Eaton Vance and each of the Released Parties from any and all Released Claims (as defined in the Settlement Agreement).  Please refer to Section IV of the Settlement Agreement for a full description of the claims and persons that will be released upon final approval of the settlement.

No Class Member will be permitted to continue to assert Released Claims in any other litigation against Eaton Vance or the other persons and entities covered by the Release.  If you object to the terms of the Settlement Agreement, you may notify the Court of your objection.  (See Table on page 1 of this Notice.)  If the settlement is not approved, the case will proceed as if no settlement had been attempted or reached.

If the settlement is not approved and the case resumes, there is no assurance that a class would be certified for litigation purposes or that members of any certified class will recover more than is provided for under the Settlement, or anything at all.

| **12. What happens if I do nothing at all?** |
| --- |

If you do nothing, you will release any claims you may have against Eaton Vance or the Released Parties concerning the conduct Plaintiff alleges in her complaint.  (See Question No. 14.)  You may also receive a payment as described in Question No. 8.

| **13. How do I get out of the Settlement?** |
| --- |

If the Court approves the Settlement, you will be bound by it and will receive whatever benefits you are entitled to under its terms.  You cannot exclude yourself from the Settlement, but you may notify the Court of your objection to the Settlement.  (See Question No. 15.)  If the Court approves the Settlement, it will do so under Federal Rule of Civil Procedure 23(b)(1), which does not permit Class Members to opt out of the Class.

| **14. Can I sue Eaton Vance for the same thing later?** |
|---|

No.  If the Court approves the Settlement, you will have given up any right to sue Eaton Vance for the claims being resolved by this Settlement.

| **15. How do I object to the Settlement?** |
|---|

You can object to the settlement if you don't like any part of it. If you object, you must give the reasons why you think the Court should not approve the settlement. The Court will consider your views. Your objection to the settlement must be postmarked no later than [ ] and must be sent to the Court and the attorneys for the Parties at the addresses below:

| Court | Class Counsel | Defendant's Counsel |
|---|---|---|
| Clerk of the Court<br>United States District Court<br>District of Massachusetts<br>John Joseph Moakley<br>   U.S. Courthouse<br>1 Courthouse Way,<br>   Suite 2300<br>Boston, MA 02210 | Charles H. Field<br>SANFORD HEISLER<br>   SHARP, LLP<br>655 West Broadway, Suite<br>   1700<br>San Diego, California 92101 | James R. Carroll<br>Eben P. Colby<br>Michael S. Hines<br>SKADDEN, ARPS, SLATE,<br>   MEAGHER & FLOM LLP<br>500 Boylston Street<br>Boston, MA 02116 |

The objection must be in writing and include the case name *Price v. Eaton Vance Corp., et al.*, Civil Action No. 18-12098-WGY; as well as include your (a) name; (b) address; (d) a statement that you are a member of the Settlement Class; (e) the specific grounds for the objection (including all arguments, citations, and evidence supporting the objection); (f) all documents or writings that you desire the Court to consider (including all copies of any documents relied upon in the objection); (g) your signature; and (h) a notice of intention to appear at the Fairness Hearing (if applicable).  (If you are represented by counsel, you or your counsel must file your objection through the Court's CM/ECF system.)  The Court will consider all properly filed comments from Settlement Class Members.  If you wish to appear and be heard at the Fairness Hearing in addition to submitting a written objection to the settlement, you or your attorney must say so in your written objection.

Class Counsel will file with the Court and post on the Settlement Website its request for attorneys' fees two weeks prior to [objection deadline].

## THE COURT'S FAIRNESS HEARING

| **17. When and where will the Court hold a hearing on the fairness of the Settlement?** |
| --- |

A Fairness Hearing has been set for [date] at [time], before The Honorable William G. Young at the John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Boston, Massachusetts 02210 in [courtroom].  At the hearing, the Court will hear any comments, objections, and arguments concerning the fairness of the proposed Settlement, including the amount requested by Class Counsel for attorneys' fees and expenses and the incentive award to Plaintiff as the Class Representative.   You do not need to attend this hearing.  You also do not need to attend to have an objection considered by the Court. (See Question No. 19.)

<u>Note</u>:  The date and time of the Fairness Hearing are subject to change by Court Order, but any changes will be posted at [ ].

| **18. Do I have to come to the Fairness Hearing?** |
| --- |

No. Class Counsel will answer any questions the Court may have.  But you are welcome to come at your own expense.  If you send an objection, you don't have to come to Court to talk about it.  As long as any written objection you choose to make was filed and mailed on time and meets the other criteria described in the Settlement Agreement, the Court will consider it.  You may also pay another lawyer to attend, but you don't have to.

| **19. May I speak at the hearing?** |
| --- |

You may ask the Court for permission to speak at the hearing concerning any part of the proposed settlement by following the instructions in Question No. 15 above.

## GETTING MORE INFORMATION

| **20. Where can I get additional information?** |
| --- |

This notice provides only a summary of the matters relating to the settlement.  For more detailed information, you may wish to review the Settlement Agreement.  You can view the Settlement Agreement and get more information at [URL].  You can also get more information by writing to the Settlement Administrator at [ ] or calling toll-free [ ].  The Agreement and all other pleadings and papers filed in the case are available for inspection and copying during regular business hours at the office of the Clerk of the U.S. District Court located at the John Joseph Moakley U.S. Courthouse, One Courthouse Way, Suite 2300, Boston, Massachusetts 02210.

If you would like additional information, you can also call Class Counsel at [800 number].

**PLEASE DO <u>NOT</u> CONTACT THE COURT, THE JUDGE, OR EATON VANCE WITH QUESTIONS ABOUT THE SETTLEMENT.**