**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SHANNON PRICE, Individually and on Behalf of All Others Similarly Situated and On Behalf of the EATON VANCE PROFIT SHARING AND SAVINGS PLAN,<br><br>Plaintiff,<br><br>vs.<br><br>EATON VANCE CORPORATION, EATON VANCE MANAGEMENT, EATON VANCE INVESTMENT COMMITTEE, and DOES 1-30, inclusive,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 18-12098-WGY |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**

Andrew Miller (MA Bar # 682496)
**SANFORD HEISLER SHARP, LLP**
700 Pennsylvania Ave. SE, Suite 300
Washington, DC 20009
Telephone: (202) 499-5200
Facsimile: (202) 499-5199
amiller@sanfordheisler.com

*Charles Field
**SANFORD HEISLER SHARP, LLP**
655 West Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 577-4242
Facsimile: (619) 577-4250
cfield@sanfordheisler.com

*David Sanford
*David Tracey
*Meredith Firetog
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Phone: (646) 402-5650
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com
dtracey@sanfordheisler.com
mfiretog@sanfordheisler.com

*Admitted pro hac vice
Counsel for Plaintiff and the Proposed Class

i

## **TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................1

II.  BACKGROUND ..................................................................................................2

    A. Procedural History..........................................................................................2

    B. Pre-Suit Discovery, Negotiations, and Settlement .........................................4

    C. The Settlement Agreement, Approval, and Settlement Administration.........5

    D. Additional Work to Be Performed .................................................................6

III. THE COURT SHOULD APPROVE THE FEE PETITION AS FAIR AND REASONABLE ...................................................................................................6

    A. Legal Standard................................................................................................7

    B. Relevant Factors to be Applied to Class Counsel's Request for a Percentage of the Fund Attorneys' Fee Recovery....................................................................7

        1. The Size of the Fund Created and the Number of Persons Benefitted ......................8

        2. No Class Members Object to the Proposed Fee.........................................9

        3. The Skill and Efficiency of Counsel ........................................................10

        4. Complexity and Duration of Litigation....................................................11

        5. Financial Risks to the Attorneys ..............................................................12

        6. Amount of Time Devoted to the Case ......................................................14

        7. The Awards in Similar Cases....................................................................16

    C. A Lodestar Cross-Check Confirms the Fee Request Is Reasonable ............17

IV. CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF EXPENSES SHOULD BE GRANTED ................................................................................18

V.  PLAINTIFF SHOULD BE AWARDED A $5,000 INCENTIVE AWARD....................18

VI. CONCLUSION..................................................................................................20

# TABLE OF AUTHORITIES

**Pages**

## Cases

*Abbott v. Lockheed Martin Corp.*,
No. 06-CV-701-MJR-DGW, 2015 WL 4398475 (S.D. Ill. July 17, 2015) ..................... 17

*Beesley v. Int'l Paper Co.*,
No. 3:06-CV-703-DRH-CJP, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ...................... 17

*Beneli v. BCA Fin. Servs., Inc.*,
324 F.R.D. 89 (D.N.J. 2018) .......................................................................................... 10

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ......................................................................................................... 7

*Braden v. Wal Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ........................................................................................ 13

*Brotherston v. Putnam Invs., LLC*,
No. CV 15-13825-WGY, 2016 WL 1397427 (D. Mass. Apr. 7, 2016) .......................... 11

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .......................................................................................... 13

*Dennard v. Transamerica Corp.*,
No. C15-0030 (N.D. Iowa May 20, 2016) .................................................................. 9, 20

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ............................................................................................ 13

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000) ............................................................................................ 8

*Harshbarger v. Penn Mut. Life Ins. Co.*,
No. CV 12-6172, 2017 WL 6525783 (E.D. Pa. Dec. 20, 2017) ....................................... 10

*Hill v. State St. Corp.*,
No. CIV.A. 09-12146-GAO, 2015 WL 127728 (D. Mass. Jan. 8, 2015) .................... 7, 19

*In re Fid./Micron Sec. Litig.*,
167 F.3d 735 (1st Cir. 1999) ..................................................................................... 2, 18

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................................... 10

*In re Lucent Techs., Inc., Sec. Litig.*,
    327 F. Supp. 2d 426 (D.N.J. 2004) ................................................................ 10

*In re Lupron Mktg. & Sales Practices Litig.*,
    No. 01-CV-10861-RGS, 2005 WL 2006833 (D. Mass. Aug. 17, 2005) ......................... 13

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ................................................................... 13

*In re Milken & Assoc. Sec. Litig.*,
    150 F.R.D. 46 (S.D.N.Y. 1993) .................................................................... 14

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005) ............................................................... passim

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) ........................................................................ 18

*In re Stocker Yale, Inc. Sec. Litig.*,
    No. 1:05CV00177-SM, 2007 WL 4589772 (D.N.H. Dec. 18, 2007) ............................ 16

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*,
    56 F.3d 295 (1st Cir. 1995) ..................................................................... 7, 17

*In re TJX Companies Retail SEC Breach Litig.*,
    584 F. Supp. 2d 395 (D. Mass. 2008) ............................................................... 8

*In re Tyco Int'l Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007) ............................................................... 17

*In re WorldCom Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) .............................................................. 18

*Krueger v. Ameriprise Fin., Inc.*,
    No. 11-CV-02781 SRN/JSM, 2015 WL 4246879 (D. Minn. July 13, 2015) .............. 2, 17

*Kruger v. Novant Health, Inc.*,
    No. 1:14CV208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ................................ 2, 11

*Lapan v. Dick's Sporting Goods*,
    No. 13 Civ. 11390 (D. Mass. Apr. 19, 2016) ...................................................... 16

*Lauture v. A.C. Moore Arts & Crafts, Inc.*,
    No. 17-CV-10219, 2017 WL 5900058 (D. Mass. Nov. 28, 2017) ........................... 16, 19

*Medoff v. CVS Caremark Corp.*,
No. 09-CV-554-JNL, 2016 WL 632238 (D.R.I. Feb. 17, 2016) ...................................... 9

*Mehling v. New York Life Ins. Co.*,
248 F.R.D. 455 (E.D. Pa. 2008) ..................................................................................... 9

*Meiners v. Wells Fargo*,
898 F.3d 820 (8th Cir. 2018) ....................................................................................... 13

*Moreno v. Deutsche Bank Americas Holding Corp.*,
No. 15 CIV. 9936 (S.D.N.Y. Aug. 14, 2018) ................................................................ 9

*New England Carpenters Health Benefits Fund v. First Databank*,
2009 WL 2408560 (D. Mass. 2009) ............................................................................... 8

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley
Inv. Mgmt., Inc.*,
712 F.3d 705 (2d. Cir. 2013) ....................................................................................... 14

*Savani v. URS Prof. Sols., LLC*,
121 F. Supp. 3d 564 (D.S.C. 2015) .............................................................................. 11

*Scovil v. Fedex Ground Package Sys., Inc.*,
No. 10-cv-515-DBH, 2014 WL 1057079 (D. Me. March 14, 2014) ........................... 2, 20

*Short v. Brown Univ.*,
No. 17-cv-00318 (D.R.I. Aug. 2, 2019) ....................................................................... 17

*Spano v. Boeing Co*,
No. 06-CV-743-NJR-DGW, 2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ..................... 17

*United States v. 8.0 Acres of Land*,
197 F.3d 24 (1st Cir. 1999) ........................................................................................... 7

**Statutes**

29 U.S.C. § 1104 (ERISA § 404) ............................................................................ 3, 11, 12
29 U.S.C. § 1106 (ERISA § 406) .................................................................................... 3

**Other Authorities**

Manual for Complex Litigation § 14.122 .......................................................................... 17
Restatement (Third) of Trusts § 100 (2012) .................................................................... 12

**Regulations**

Fed. R. Civ. Proc. 23(d) ................................................................................................. 19
Fed. R. Civ. Proc. 23(e) ................................................................................................. 19

## I.    INTRODUCTION

On May 22, 2019, the Court granted preliminary approval of a $3.45 million settlement of this class action for breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"). Dkt. No. 45. At the preliminary approval hearing, the Court observed that the "Settlement Agreement has been negotiated in good faith at arms-length between experienced attorneys familiar with the legal and factual issues of [the] case." *Id.* at 2. Pursuant to the Settlement Agreement, Plaintiff Shannon Price now seeks an award of reasonable attorneys' fees, costs, and a service award.

Under the terms of the Settlement Agreement, Class Counsel, Sanford Heisler Sharp, LLP ("Sanford Heisler") is authorized to apply to the Court for an award of up to $1,150,000 (*i.e.*, one-third of the Settlement Amount) as reasonable attorneys' fees, plus expenses. Furthermore, Plaintiff Price is authorized to seek up to $5,000 as a service award for her service to the Class. Dkt. No. 32-1 at 16. During the hearing on Plaintiffs' motion for preliminary approval, the Court observed that the case "has been well-handled by Plaintiffs' Counsel" and indicated that attorneys' fees based upon one-third of the Settlement Amount was acceptable. The Court suggested, however, that the fee award should be "reduce[d] by the cost of settlement administration," so that those costs are not borne by the Class. May 20, 2019 Hr'g Tr. of Prelim. Approval of Settlement ("Hr'g Tr.") at 6:17.

Plaintiff Price believes that the Court's suggested approach to attorneys' fees is appropriate in this case. Accordingly, Plaintiff seeks an award of award of $1,110,000 in attorneys' fees to compensate Class Counsel for their time investigating, litigating, and settling this matter. This amount represents one-third of the $3.45 million Settlement ($1,150,000) less $40,000 in anticipated costs to be paid to the Settlement Administrator, Independent Fiduciary, and Escrow

Agent. In addition to the attorneys' fees award, Plaintiff seeks an award of costs in the amount of $12,411.79 for litigation expenses Class Counsel has incurred in investigating, prosecuting, and settling this action. Furthermore, Plaintiff seeks a service award of $5,000 for her service to the Class Members, and the effort, time, and risk she undertook in this litigation.

The requested $1,110,000 attorneys' fee award, $12,411.79 in litigation costs, and the $5,000 service award are reasonable and fully justified for the work that Counsel and Plaintiff performed on behalf of the class. In similar ERISA breach of fiduciary duty cases, courts routinely award one-third of the settlement amount as attorneys' fees. *E.g.*, *Kruger v. Novant Health, Inc.*, No. 1:14CV208, 2016 WL 6769066, at *2 (M.D.N.C. Sept. 29, 2016); *Krueger v. Ameriprise Fin., Inc.*, No. 11-CV-02781 SRN/JSM, 2015 WL 4246879, at *2 (D. Minn. July 13, 2015). Here, pursuant to the Court's suggestion, Plaintiff seeks less than one-third of the settlement amount. Moreover, Plaintiff's requests for reimbursement of Counsel's litigation expenses and a service award of $5,000 is fully in line with awards in other class actions. *See, e.g.*, *In re Fid./Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) ("[L]awyers whose efforts succeed in creating a common fund . . . [may] recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax."); *Scovil v. Fedex Ground Package Sys., Inc.*, No. 10-cv-515-DBH, 2014 WL 1057079, at *7-8 (D. Me. Mar. 14, 2014) (noting a range of incentive awards in other cases and approving incentive awards from $15,000 to $20,000 to the various named plaintiffs). Notably, the $3.45 million negotiated settlement represents approximately 23% of the damages that Plaintiff estimates was sustained by the Class. This recovery compares favorably with settlements in similar ERISA cases and further supports Plaintiff's request for attorneys' fees, costs, and a service award.

## II.    BACKGROUND

### A. Procedural History

On October 5, 2018, Plaintiff filed a detailed 81-page, 9-count Complaint. Dkt. No. 1. Based upon Class Counsel's extensive pre-complaint investigations assisted by Plaintiff Price, the Complaint alleged that Defendants breached their fiduciary duties and engaged in prohibited transactions with respect to the Eaton Vance Profit Sharing and Savings Plan (the "Plan") in violation of ERISA. Specifically, Plaintiff alleged Defendants violated ERISA §§ 404 and 406 (29 U.S.C. §§ 1104 & 1106) by (1) offering expensive investment options that benefitted Eaton Vance, and (2) failing to effectively monitor the Plan's investment options, and, consequently, failing to remove poorly performing investments. Six of the nine counts (Counts I to VI) alleged various breaches of the duties of prudence and loyalty in violation of ERISA § 404(a), 29 U.S.C. § 1104(a), and three counts (Counts VII, VIII, and IX) asserted prohibited transactions in violation of ERISA § 406, 29 U.S.C. § 1106.

On February 11, 2019, Defendants filed a Motion to Dismiss Counts VII, VIII, and IX of the Complaint—the Prohibited Transaction counts—and thereby implicitly acknowledged that the six breach of fiduciary duty counts on their face sufficiently alleged claims for which relief could be granted. On March 11, 2019, Plaintiff filed her Opposition to that limited motion. The Court set a hearing date on the motion for March 25, 2019; but, on March 11, 2019, the parties reached an agreement in principle to settle the case, and, on March 20, 2019, the Parties filed a Joint Motion to Vacate the Hearing and a Notice of Settlement in Principle. Dkt. No. 26. The Court granted the Joint Motion and vacated the hearing for Defendants' dismissal motion. Dkt. No. 27.

Plaintiffs then filed an unopposed motion seeking preliminary approval of the Settlement on May 6, 2019. The Court held a hearing and granted that motion on May 22, 2019. Dkt. No. 45.

The Court's Order (1) preliminarily approved the Settlement Agreement; (2) conditionally certified the proposed Class; (3) preliminarily approved Shannon Price as Class Representative; (4) preliminarily approved Sanford Heisler Sharp, LLP as Class Counsel; (6) set September 23, 2019 as the date for a Fairness Hearing; (5) approved Analytics LLC as the Settlement Administrator and Escrow Agent; and (6) approved the form and method of class notice. *Id.*

Plaintiffs are filing this Application more than 14 days in advance of the deadline for objections to the Settlement pursuant to Paragraph 6.1 of the Settlement Agreement and this Court's Order. Dkt. No. 32-1. This will allow Class Members more than ample time to review the fee request and file any objections. To date, however, no Class Members have filed objections to the Settlement, to the proposed attorneys' fee award, or to the proposed incentive award to Plaintiff Price. The proposed attorneys' fees and incentive awards were fully described in the Notice to the Settlement Class. *Id*. at 35.

**B. Pre-Suit Discovery, Negotiations, and Settlement**

Class Counsel have devoted considerable time, energy, and resources to investigating and litigating the claims asserted in this action, and to reaching a favorable settlement for the Class. The extensive investigation that Class Counsel conducted prior to filing the Complaint included, among other things: a review and analysis of Plan-related documents, such as the annual reports the Plan filed with the Department of Labor and Eaton Vance's public filings with the Securities and Exchange Commission about the firm and the investment products and services it offered; extensive legal research with respect to the breach of fiduciary duty and prohibited transaction claims asserted in the Complaint, and Defendants' potential defenses; as well as collaborating with an investment performance expert to calculate  the performance of the Plan's investment options

relative to their benchmarks and funds with comparable investment profiles. Decl. of Charles Field In Supp. of Pl.'s Mot. for Attorneys' Fees, Costs, and Service Award ("Field Decl.") at ¶ 20.

Class Counsel reached out to Eaton Vance in advance of filing the Complaint to test its interest in settling the case before full-blown litigation began. The parties began discussing the matter in July 2018 but failed to reach a pre-suit settlement. After Class Counsel filed its Complaint in October 2018, the parties resumed settlement discussions. For the next five months, the parties engaged in ongoing arm's-length negotiations and exchanged multiple settlement proposals. *Id.* The negotiations were spirited. After a round of motion practice, the parties reached a settlement in principle on March 11, 2019, and informed the Court accordingly.

### C. The Settlement Agreement, Approval, and Settlement Administration

After reaching an agreement in principle, Class Counsel worked with defense counsel on memorializing the agreement in a formal Settlement Agreement, as well as in associated documents including the Settlement Notice, the Former Participant Claim Form, and the proposed preliminary and final orders approving the settlement. *Id*. In addition, Class Counsel drafted Plaintiff's motion for preliminary approval of the settlement. *Id.*

Class Counsel also worked jointly with defense counsel to select the Settlement Administrator and coordinated the administration of the Settlement. *Id.* Specifically, Class Counsel (with the assistance of defense counsel) invited bids from qualified settlement administration firms, and selected Analytics LLC ("Analytics") after reviewing the credentials of the bidders, and interviewing the prospective firms applying to be Settlement Administrator. *Id.* Class Counsel then worked with Analytics to identify potential Class Members, reviewed the final drafts of the Settlement Notices, and ensured that they were timely mailed by Analytics. *Id.* Class Counsel also worked with Analytics to create a settlement website and telephone line for Class Members who

wished to obtain additional information about the Settlement. *Id.* Since dissemination of the Settlement Notices, Class Counsel have responded to two questions from one Class Member. *Id.*

In addition, Class Counsel met with the Independent Fiduciary (Fiduciary Counselors) on July 25, 2019, in order to provide the Independent Fiduciary with the information it sought with respect to its review of the settlement.

### D. Additional Work to Be Performed

All the efforts described above were required to successfully position the case so that the Class Members will receive the monetary benefits of the Settlement. But Class Counsel's work on this matter is not yet complete. Class Counsel will still need to prepare Plaintiff's motion for final approval of the Settlement, attend the September 23, 2019 final approval hearing, and be prepared to respond to any objections to the Settlement that Class Members may lodge. *Id.* at ¶ 21. And, if final approval is granted, Class Counsel will supervise the distribution of the net Settlement Amount to eligible Class Members. *Id.* In addition, Class Counsel will continue to respond to questions from Class Members and take other actions necessary to support the Settlement until the conclusion of the Settlement Period. *Id.*

## III.   THE COURT SHOULD APPROVE THE FEE PETITION AS FAIR AND REASONABLE

The Settlement Notice advised Class Members that Class Counsel would seek fees *up to* 33% of the $3,450,000 settlement amount, plus their costs and expenses incurred in the prosecution of the case. Dkt. No. 32-1 at 35. In accordance with the Court's suggestion during the hearing on preliminary approval, Class Counsel has voluntarily reduced its fees by the estimated cost of the settlement administrator ($40,000). Accordingly, the fees Class Counsel now seeks are less than the 33% cap ($1,150,000) set out in the Notice. The recovery for the Class will be two-thirds of the Settlement Amount, less only the costs Class Counsel incurred in prosecuting the case.

As of the date this fee Application, no Class Member has objected to the proposed fee amount described in the Notice. In addition, Class Counsel met with Fiduciary Counselors, the Independent Fiduciary, to discuss the terms and conditions of the Settlement and, although it has yet to submit its final fairness report, it did not indicate that the fee sought is unreasonable. Field Decl. ¶ 19. The Court should, accordingly, award Class Counsel attorney's fees of $1,110,000 plus $12,411.79 in expenses incurred.

### D. Legal Standard

Under the "common fund doctrine," an attorney who succeeds in creating a fund for the benefit of a class is "entitled to a reasonable attorney's fee from the fund as a whole." *Hill v. State St. Corp.*, No. CIV.A. 09-12146-GAO, 2015 WL 127728, at *16 (D. Mass. Jan. 8, 2015) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)); *see In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995).

Courts have identified two general approaches for determining the fee award in a common fund case: the lodestar method and the percentage-of-the-fund method. *Thirteen Appeals*, 56 F.3d at 304-07. The First Circuit has expressly approved of the percentage method in common fund cases, stating that it "offers significant structural advantages ... including ease of administration, efficiency, and a close approximation of the marketplace." *Id*. at 307-08; *see also Hill*, 2015 WL 127728, at *16 (quoting *Thirteen Appeals*, 56 F.3d at 304-07). However, a trial court may use the lodestar method to cross-check the reasonableness of the proposed percentage fee award. *See, e.g.*, *United States v. 8.0 Acres of Land*, 197 F.3d 24, 33 (1st Cir. 1999); *New England Carpenters Health Benefits Fund v. First Databank*, 2009 WL 2408560, at *1 (D. Mass. 2009); *Hill*, 2015 WL 127728, at *17.

### E. Relevant Factors to be Applied to Class Counsel's Request for a Percentage of the Fund Attorneys' Fee Recovery

In determining whether attorneys' fees are reasonable in a common fund case, this Court has identified several relevant factors that should be considered in determining the amount of the award. *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 79 (D. Mass. 2005) (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000)). Those factors include:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Id.* Here, consideration of those factors clearly justifies a fee award in the amount requested.

### 1. The Size of the Fund Created and the Number of Persons Benefitted

As this Court has observed, "class action litigation should benefit the individuals who have been harmed." *In re TJX Companies Retail SEC Breach Litig.*, 584 F. Supp. 2d 395, 406 (D. Mass. 2008). Accordingly, a court may judge the reasonableness of the attorneys' fees relative to the benefits actually provided to class members. *Id.* at 403. Here, there are approximately 2,600 members of the Class. The Settlement Administrator has reported that as of August 6, 2019, less than 5% of the Notices mailed have been returned as undeliverable. **Exhibit 1.** The Settlement Amount is $3,450,000, resulting in a gross benefit of approximately $1,325 per Class Member. After accounting for attorneys' fees and expenses, a net benefit is approximately $900 per plan participant.

By comparison, in *Dennard v. Transamerica Corp.*, another ERISA breach of fiduciary duty case in which a plan sponsor offered proprietary funds as investment options in its 401(k) plan, the Parties agreed to (and the Court approved) a $3.8 million settlement, which was distributed among at least 16,000 plan participants, resulting in $237 per participant in gross benefits, without any further adjustment for attorneys' fees or settlement expenses. No. C15-0030,

Dkt. No 86-1 at 35 (N.D. Iowa May 20, 2016). Similarly, in *Moreno v. Deutsche Bank Americas Holding Corp.*, another ERISA action involving proprietary funds that was actively litigated for almost three years, the settlement provided $631.12 gross benefits for each class member. No. 15 CIV. 9936, Dkt. No. 321 at 19 (S.D.N.Y. Aug. 14, 2018). Even after accounting for attorneys' fees and costs, the *net* value of the Settlement per Class Member in this case is significantly higher than the gross value per participant in the settlements in the *Dennard* and *Moreno* cases.

The Settlement Amount here also represents a significant percentage of the total estimated damages of $14.9 million, calculated by the expert retained by Class Counsel. Field Decl. ¶ 20. The $3.45 million Settlement Amount represents approximately 23% of the total estimated damages, which is well within the range found reasonable in other class action settlements.[1] *See Medoff v. CVS Caremark Corp.*, No. 09-CV-554-JNL, 2016 WL 632238, at *6 (D.R.I. Feb. 17, 2016) (noting that 5.33% is "well above the median percentage of settlement recoveries in . . . securities class action cases"); *see also*, *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (20% recovery in ERISA class action approved).

## 2. No Class Members Object to the Proposed Fee

Pursuant to the Court's Preliminary Approval Order (Dkt. No. 45), the Settlement Administrator have mailed more than 2,900 Settlement Notices to Class Members. **Exhibit 1.** The Settlement Notice advised Class Members that Class Counsel would seek fees of up to 33% of the settlement amount ($1,150,000) and reimbursement of litigation expenses. While the deadline for Class Members to object to the requested attorneys' fees and expenses has not yet passed, no Class Member has to date objected to an award of fees to Class Counsel, or to the amount of the fees.

---

[1] The calculation does not take into account the proposed $5,000 incentive award to Plaintiff, or Counsel's expenses, which as of the date of this filing are $12,411.79. Neither amount would have a material impact on the monetary benefit to class members.

Moreover, although has yet to file a report, the Independent Fiduciary, charged with determining whether the settlement is fair and reasonable, has not indicated it has objections to the requested award. The absence of objections supports the approval of Class Counsel's fee request. *See, e.g.*, *Harshbarger v. Penn Mut. Life Ins. Co.*, No. CV 12-6172, 2017 WL 6525783, at *3 (E.D. Pa. Dec. 20, 2017), citing *In re Lucent Techs., Inc., Sec. Litig.*, 327 F. Supp. 2d 426, 455-56 (D.N.J. 2004); *Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 109 (D.N.J. 2018) ("The lack of any negative feedback after notice suggests that the Class generally and overwhelmingly approves of the settlement."); *see also In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 469 (S.D.N.Y. 2004) (noting the significance that independent fiduciary did not object to attorneys' fee award).

### 3.   The Skill and Efficiency of Counsel

Sanford Heisler is a preeminent nationwide plaintiffs' firm specializing in complex class litigation. The Firm has served as lead or co-lead counsel in approximately 50 class and collective actions, in cases brought in most of the states of the country. Lead Class Counsel, Charles Field, has extensive experience dealing with ERISA and fiduciary duty issues as well as overseeing the administration and operation of the types of investment funds at issue here. Field Decl. ¶¶ 5-10. Class Counsel demonstrated its substantial expertise and experience with investment products and services, investment performance analytics, and investment distribution channels in the detailed 81-page Complaint.

The Complaint's detailed analysis of the alleged violations of ERISA helped set the stage for prompt and successful settlement negotiations. Indeed, the Complaint set forth the breach of fiduciary duty claims in such factual detail that it did not draw a motion to dismiss the six counts alleging violations of ERISA § 404(a). During settlement negotiations, Class Counsel continued providing analysis of liability and damages to support its settlement demand. Class Counsel's

analysis of the case allowed the parties to better assess the litigation risks early in the case and paved the way for settlement of the case without extensive discovery or motions practice.

### 4. Complexity and Duration of Litigation

ERISA fiduciary breach cases are by their nature often factually complex. *See Brotherston v. Putnam Invs., LLC*, No. CV 15-13825-WGY, 2016 WL 1397427, at *1 (D. Mass. Apr. 7, 2016). Handling a case of this complexity requires counsel with specialized skills. As the Court noted in *Savani v. URS Prof. Sols., LLC*, 121 F. Supp. 3d 564, 573 (D.S.C. 2015), "Very few plaintiffs' firms possess the skill set or requisite knowledge base to litigate . . . class-wide, statutorily based claims for pension benefits." Counsel in these complex ERISA cases must possess "expertise regarding industry practices" and also be able to analyze pertinent records and data. *See Novant Health*, 2016 WL 6769066, at *3. Led by Mr. Field, who has decades of experience in the financial services industry, Class Counsel deployed its expertise in finance and class litigation to efficiently and effectively investigate, litigate, and settle this matter.

In addition to the complex liability issues involved, there were "difficult" questions regarding the measure of "recovery from a [plan fiduciary] for imprudent or otherwise improper investments." *Restatement (Third) of Trusts* § 100, cmt. b(1) (2012). Again, Class Counsel's experience served the Class well in that regard.

This case was substantially more complex and multi-faceted than a typical ERISA action. It involved several factually complex and disputed issues arising from Defendants' management of the Plan, as well as issues specific to registered investment companies like Defendant Eaton Vance, collective investment trusts, pricing of different share classes, and the distribution of investment products and services through institutional and retail market channels. Class Counsel performed an in-depth financial and investment analysis that focused on the structure,

performance, and fees of the Plan's investment funds over a ten-year period. After sifting through extensive financial data, Class Counsel derived annual and cumulative performance calculations for the Plan's investment options based on a comparison of each option's performance relative to its investment benchmark and numerous comparator funds. These detailed analyses formed the backbone of the Complaint.

Defendants asserted that their selection and monitoring process was prudent and carried out in the best interests of participants. Moreover, Defendants moved to dismiss Plaintiff's claims for prohibited transactions under 29 U.S.C. § 1104. Though Plaintiff forcefully opposed Defendants' dismissal motion, the motion nonetheless raised the risk that Plaintiff's three prohibited transaction claims could be barred by ERISA's statute of limitations.

In light of Counsel's detailed analysis and Complaint, along with Defendants' pending dismissal motion, the Parties engaged in hard fought settlement negotiations that spanned several months. Class Counsel was, however, able to meet these challenges and garner a successful outcome for the Class.

## 5. Financial Risks to the Attorneys

Class Counsel's assumption of the contingency fee risk in this case is a key factor supporting the requested fee. "Many cases recognize that the risk [of non-payment] assumed by an attorney is perhaps the foremost factor in determining an appropriate fee award." *In re Lupron Mktg. & Sales Practices Litig.*, No. 01-CV-10861-RGS, 2005 WL 2006833, at *4 (D. Mass. Aug. 17, 2005) (internal quotation marks omitted). "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated*

*Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.")

When Sanford Heisler took this case on a contingency basis, it was apparent that Class Counsel would face challenges establishing liability and damages. For example, Class Counsel would have to show that Defendants' process for monitoring Plan options was "tainted by a failure of effort, competence or loyalty." *Braden v. Wal Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009). Plaintiff also had the burden of proving that the disputed investments underperformed relative to comparable benchmarks over an extended period, that the defendants failed to remove the disputed investments on a timely basis, and, as a result, that the Plan suffered significant investment losses. *Meiners v. Wells Fargo*, 898 F.3d 820, 822 (8th Cir. 2018). Class Counsel would also have had to establish through expert testimony that the various investment benchmarks were in fact appropriate measures of performance of the disputed investments, and that the underperformance analysis was thus not based on the benefit of pure hindsight. *Id.*; *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705 (2d. Cir. 2013). If Class Counsel were unsuccessful on any of these points, the recovery could be diminished or lost all together because damage calculations are often a "battle of experts at trial, with no guarantee of the outcome." *In re Milken & Assoc. Sec. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993).

Despite these uncertainties regarding the outcome of the case, Class Counsel took the case on a wholly contingent basis and was prepared to devote thousands of hours and out-of-pocket dollars to the case. Class Counsel bore the financial risk of having the case dismissed, or of losing at trial or on appeal, and therefore receiving no compensation for the time devoted and expenses

incurred. Still, Class Counsel devoted substantial resources to the vigorous and effective prosecution of the case and made every effort to obtain the recovery achieved here for the benefit of the Class.

### 6. Amount of Time Devoted to the Case[2]

Class Counsel have been investigating, litigating and negotiating with the Defendants in this case since July 2018. To date, lawyers and staff at Sanford Heisler working on the case have expended 780.3 hours in attorney and staff time prosecuting this action on behalf of the Class. Field Decl. ¶ 24

Before they filed the Complaint, Class Counsel undertook an extensive investigation of the Plan, including the investment options offered to Plan participants, the performance of those investment options, and the monitoring activities of the Plan's fiduciaries. Class Counsel evaluated the Plan's disclosure documents that detailed fees and expenses, as well as the investment performance of each Plan option relative to its respective investment benchmark; the Plan's Summary Plan Description; Department of Labor filings from the Plan; Registration Statements and Annual Reports filed by each of the Plan's investment options with the Securities and Exchange Commission ("SEC"); the Form ADV filed by Eaton Vance Management with the SEC; and the investment structure and fees paid by the Plan in comparison with other types of investments and fees generally.

Counsel also analyzed financial data and performance information obtained from Morningstar, a leading independent investment research firm that gathers investment data and generates fund quality ratings. Significantly, Counsel analyzed the annual investment performance

---

[2] Prior to submitting this Motion, Class Counsel submitted declarations in support of Plaintiff's Unopposed Motion' For Preliminary Approval of Class Action Settlement. Dkt. Nos. 33, 35. A description of Class Counsel's work to date is also stated in the Decl. of Charles Field In Supp. of Pl.'s Mot. for Preliminary Approval. Dkt. No. 33 at ¶¶ 5-7.

of the Plan's investment options relative to multiple comparable mutual funds and applicable investment benchmarks for the past ten years. Class Counsel's analysis of complex financial and investment data is evident throughout the Complaint, particularly in Section V, which detailed the factual support for the violations of ERISA's fiduciary duty and prohibited transaction provisions.

After Plaintiff filed the Complaint in October 2018, the Parties continued confidential settlement discussions. Over the course of five months, the Parties engaged in continuous, arm's-length negotiations over the terms of a potential class action settlement. The Parties met and conferred by phone on October 23, 2018, January 8, 2019, February 6, 2019, and February 8, 2019 to discuss settlement possibilities.

Notwithstanding the extensive and ongoing negotiations, on February 11, 2019, Defendants filed a Motion to Dismiss Counts VII, VIII, and IX of the Complaint. Dkt. No. 13. The Plaintiff filed a brief in opposition to Defendants' motion. Dkt. No. 25. The motion further sharpened the disputed issues and gave both sides an opportunity to present additional analysis in support of their respective positions. The Parties renewed discussions and were able to make substantial progress. The Parties met and conferred by phone on February 16, 2019, February 25, 2019, February 26, 2019, February 27, 2019, March 4, 2019, and March 6, 2019 to review and discuss their analyses. The Parties finally reached an agreement in principle to settle the case on March 11, 2019.

The parties then spent an additional six weeks negotiating the precise terms of Settlement, and on May 6, 2019, the parties executed a formal Settlement Agreement. Class Counsel thereafter prepared a motion in support of preliminary approval of the Settlement and appeared at the preliminary approval hearing on May 20, 2019. The Court granted preliminary approval a few days later. Dkt. No. 45. Since the May 20 hearing, Class Counsel has devoted time to coordinating

15

the administration of the Class Settlement, preparing for the anticipated distribution of funds, drafting this Motion and Plaintiff's forthcoming Motion for Final Approval, and preparing for the Fairness Hearing scheduled for September 23, 2019.

### 7.  The Awards in Similar Cases

The requested attorneys fee award of $1,110,000 is 32.2% of the Settlement Amount and is comparable to the fees awarded in other class action cases. Courts in the First Circuit have routinely applied a benchmark of 33% for percentage fee awards in class actions. *Lauture v. A.C. Moore Arts & Crafts, Inc*., No. 17-CV-10219, 2017 WL 5900058, at *1 (D. Mass. Nov. 28, 2017); *Barbosa v. Publishers Circulation Fulfillment, Inc*., No. 08 Civ. 10873 (D. Mass Nov. 25, 2009) (approving one-third of $1.4 million settlement fund); *Lapan v. Dick's Sporting Goods*, No. 13 Civ. 11390 (D. Mass. Apr. 19, 2016) (approving one-third of $3.3 million settlement plus costs and expenses); *In re Stocker Yale, Inc. Sec. Litig*., No. 1:05CV00177-SM, 2007 WL 4589772, at * 6 (D.N.H. Dec. 18, 2007) (awarding 33% of gross $3.4 million settlement fund); *Relafen*, 231 F.R.D. at 78, 82 (awarding one-third of $75 million settlement fund as "well within" the applicable range of percentage fund awards).

Recognizing the complexity and risk involved in ERISA breach of fiduciary duty class actions, the requested award here, which is below the benchmark 33%, is commensurate with awards in other ERISA cases. In those cases, the Courts have determined "that  [a] one-third fee is consistent with the market rate in a complex ERISA 401(k) fee case such as this[.]"*Kruger v. Novant Health*, 2016 WL 6769066, at *2; *see also*, *Spano v. Boeing Co*, No. 06-CV-743-NJR-DGW, 2016 WL 3791123, at *2 (S.D. Ill. Mar. 31, 2016); *Krueger v. Ameriprise Fin., Inc*., 2015 WL 4246879, at *2; *Abbott v. Lockheed Martin Corp*., No. 06-CV-701-MJR-DGW, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015); *Beesley v. Int'l Paper Co*., No. 3:06-CV-703-DRH-CJP,

2014 WL 375432, at *2 (S.D. Ill. Jan. 31, 2014); *Short v. Brown Univ.*, No. 17-cv-00318, Dkt. No. 55 at 5 (D.R.I. Aug. 2, 2019).

### F. A Lodestar Cross-Check Confirms the Fee Request Is Reasonable

The First Circuit does not require a court to cross check the percentage of fund against the lodestar in its determination of the reasonableness of the requested fee.[3] *Relafen*, 231 F.R.D. at 81. When, however, the lodestar is used as a cross-check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007) (quoting *Thirteen Appeals*, 56 F.3d at 307); *see also In re WorldCom Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) ("Where the lodestar fee is used as 'a mere cross-check' to the percentage method of determining reasonable attorneys' fees, 'the hours documented by counsel need not be exhaustively scrutinized by the district court.'"). In this case, the lodestar method—whether used directly or as a "cross-check" on the percentage method—demonstrates the reasonableness of the requested fee.

Here, Plaintiffs' Counsel devoted 780.3 hours of attorney and other professional support time prosecuting this action from its inception through August 2, 2019. Based on the current hourly rates of Sanford Heisler attorneys working on the case, their collective lodestar amount for this period is $623,417.50. Field Decl. ¶ 26. The requested fee of $1,110,000 yields a multiplier of 1.78, a number that will decrease with each additional hour Class Counsel devotes to the case after

---

[3] *See* Manual for Complex Litig. § 14.122 ("The lodestar is . . . useful as a cross-check on the percentage method by estimating the number of hours spent on the litigation and the hourly rate, using affidavits and other information provided by the fee applicant. The total lodestar estimate is then divided into the proposed fee calculated under the percentage method. The resulting figure represents the lodestar multiplier to compare to multipliers in other cases.").

August 2, 2019. The multiplier is in keeping with awards in other cases. *E.g.*, *Relafen*, 231 F.R.D. at 82 (collecting cases with lodestar multipliers well above 2); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 298-99, 303-04 (3d Cir. 2005) (finding no abuse of discretion where district court approved attorneys' fees with a "fairly common" lodestar multiplier of 4.07, despite objection that multiplier could not be above 3).

## IV.   CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF EXPENSES SHOULD BE GRANTED

Plaintiffs' Counsel's fee Application includes a request for reimbursement of out-of-pocket litigation expenses that were reasonably incurred and necessary to the prosecution of this case. These expenses are properly recoverable. *See In re Fid./Micron Sec. Litig.*, 167 F.3d at 737 ("[L]awyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund . . . expenses, reasonable in amount, that were necessary to bring the action to a climax."). Given that the case settled without significant in-court litigation, Class Counsel was able to minimize expenses. Class Counsel incurred $12,411.79 in expenses on behalf of the Class in the prosecution of this case. Field Decl. ¶ 32. Those expenses were for the costs of retaining two experts and out-of-town travel, which are the types of expenses that are necessarily incurred in litigation of this type and routinely charged to clients billed by the hour and the amounts incurred. *See Hill*, 2015 WL 127728, at *21 (fully reimbursing class counsel for similar expenses). These expenses were reasonable and necessary for the prosecution of this case.

## V.   PLAINTIFF SHOULD BE AWARDED A $5,000 INCENTIVE AWARD

Federal courts often exercise their discretion under Fed. R. Civ. Proc. 23(d) and (e) to approve incentive (service) awards to plaintiffs who instituted and prosecuted actions on the theory

that there would be no class-wide benefit absent their initiation of the litigation. These awards recognize the burdens assumed by named plaintiff in instituting and prosecuting the actions, the time spent by plaintiffs communicating with counsel and fulfilling class responsibilities of supervision, and the personal risks that plaintiffs bear in bringing suit. *See Lauture* 2017 WL 6460244, at *2 (D. Mass. June 8, 2017) ("Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, the public nature of a collective action filing, and any other burdens they sustain."); *Relafen*, 231 F.R.D. at 82 ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit.") (citation omitted).

Section 6.2 of the Settlement Agreement authorizes Class Counsel to seek an incentive award for Plaintiff not to exceed $5,000. Plaintiff Price has plainly earned that award.

From the inception of this Class Action, Plaintiff has faithfully attended to her duties to act on behalf of other current and former Plan participants. Plaintiff Price has been actively involved at all stages of the litigation. She participated in meetings with Counsel to aid in the investigation, factual development, and resolution of this case. Dkt. No. 34, Decl. of Shannon Price ("Price Decl.") at ¶¶ 4-5; *see also* Field Decl. at ¶¶ 34-39. Plaintiff gathered documents and spent several hours speaking with Counsel to help them understand the operation of the Plan and Defendant's practices related to structuring, pricing and selecting the investment products they offered to Plan participants. *Id*. In working with Counsel, Plaintiff drew from her own observations of the Defendants' pricing and selection processes. *Id.*

Plaintiff estimates that she has devoted fifty hours in assistance of this action and representation of the class. Price Decl. ¶ 4. The proposed $5,000 incentive award is reasonable and

more modest than awards sought in similar matters. *See, e.g.*, *Dennard*, 2016 WL 6471254, at *1 (approving a service award up to $6,000); *Relafen*, 231 F.R.D. at 82 (awarding $8,000 for each named consumer); *Scovil*, 2014 WL 1057079, at *7-8 (noting a range of incentive awards in other cases and approving incentive awards from $15,000 to $20,000 to the various named plaintiffs).

The Settlement Notice advised Class Members that Plaintiff would seek up to $5,000 as a case contribution award for bringing this action and serving as the Class Representative. To date, no Class Member has objected to the proposed incentive award, and the Independent Fiduciary found the award to be within the range of reasonableness.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff and Class Counsel respectfully request that the Court approve the proposed distributions and award: (1) attorneys' fees of $1,110,000; (2) litigation costs of $12,411.79; and (3) an incentive award of $5,000 to named Plaintiff Shannon Price.


Dated: August 6, 2019                              Respectfully submitted,

                                                   /s/ Andrew Miller

                                                   Andrew Miller (MA Bar # 682496)
                                                   **SANFORD HEISLER SHARP, LLP**
                                                   700 Pennsylvania Ave. SE, Suite 300
                                                   Washington, DC 20009
                                                   Telephone: (202) 499-5200
                                                   Facsimile: (202) 499-5199
                                                   amiller@sanfordheisler.com


                                                   *Charles Field
                                                   **SANFORD HEISLER SHARP, LLP**
                                                   655 West Broadway, Suite 1700
                                                   San Diego, CA 92101
                                                   Telephone: (619) 577-4242
                                                   Facsimile: (619) 577-4250
                                                   cfield@sanfordheisler.com

*David Sanford
*David Tracey
*Meredith Firetog
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Phone: (646) 402-5650
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com
dtracey@sanfordheisler.com
mfiretog@sanfordheisler.com
* *Admitted pro hac vice*

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2019, a true and correct copy of the foregoing was served via the Court's electronic filing system, which all counsel of record registered as District of Massachusetts CM/ECF users will receive via electronic notification.

s/ Andrew H. Miller

Andrew H. Miller