**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| SHANNON PRICE, Individually and on Behalf of All Others Similarly Situated and On Behalf of the EATON VANCE PROFIT SHARING AND SAVINGS PLAN, | ) ) ) ) ) | Civil Action No. 18-12098-WGY |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| EATON VANCE CORPORATION, EATON VANCE MANAGEMENT, EATON VANCE INVESTMENT COMMITTEE, and DOES 1-30, inclusive, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

<u>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**</u>

Andrew H. Miller (MA Bar # 682496)
*Paul Blankenstein
**SANFORD HEISLER SHARP, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
Telephone: (202) 499-5200
Facsimile: (202) 499-5199
amiller@sanfordheisler.com
pblankenstein@sanfordheisler.com

*Charles Field
**SANFORD HEISLER SHARP, LLP**
655 West Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 577-4252
Facsimile: (619) 577-4250
cfield@sanfordheisler.com

*David Sanford
*David Tracey
*Meredith Firetog
**SANFORD HEISLER SHARP, LLP**

1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Phone: (646) 402-5650
Facsimile: (646) 402-5651
dtracey@sanfordheisler.com
dsanford@sanfordheisler.com
mfiretog@sanfordheisler.com
**\*Admitted pro hac vice**
*Counsel for Plaintiff and the Proposed Class*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

**INTRODUCTION** ........................................................................................................................ **1**

**BACKGROUND** .......................................................................................................................... **3**

    I.        SETTLEMENT BACKGROUND AND TERMS ....................................................... 3

      A.  Proposed Settlement Class ...................................................................................... 3

      B.  Monetary Relief ....................................................................................................... 3

      C.  Release of Claims .................................................................................................... 4

    II.      CLASS NOTICE AND REACTION TO SETTLEMENT ........................................ 5

    III.    REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY ........................... 6

**STANDARD OF REVIEW** .......................................................................................................... **7**

**ARGUMENT** ............................................................................................................................... **7**

    I.        THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ................... 7

      A.  The Settlement Is Procedurally Fair: The Class Representative and Class Counsel Have Adequately Represented the Class and Engaged in Arm's Length Negotiations with Defendants ............................................................................................................... 8

      B.  The Settlement is Substantively Fair: The Relief Provided to the Class is Adequate and Equitable ............................................................................................................... 11

          1.   The costs, risks, and delay of trial and appeal support approval of the settlement. ............. 12

          2.   The proposed method of distributing relief to the class will be highly effective and equitable. ............................................................................................................... 14

          3.   The terms of the attorneys' fees awarded are fair, reasonable, and in line with other cases. 15

    II.      THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE ................... 16

    III.    THE NOTICE SATISFIED RULE 23 AND DUE PROCESS ................................. 17

    IV.    THE COURT SHOULD GRANT FINAL CERTFICATION OF THE CLASS ...................... 19

**CONCLUSION** ......................................................................................................................... **20**

**CERTIFICATE OF SERVICE** ................................................................................................. **22**

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................................ 19

*Braden v. Wal Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ............................................................................................ 12

*Brotherston v. Putnam Invs.*, LLC,
No. CV 15-13825-WGY, 2016 WL 1397427 (D. Mass. Apr. 7, 2016) ................................ 12

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ................................................................................................ 10

*Dennard v. Transamerica Corp.*,
No. C15-0030 (N.D. Iowa) ........................................................................................... 11, 15

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ............................................................................................................ 17

*Greenspun v. Bogan*,
492 F.2d 375 (1st Cir. 1974) .............................................................................................. 17

*Hill v. State St. Corp.*,
No. 09-12146-GAO, 2015 WL 127728 (D. Mass  Jan. 8, 2015) ......................... 15, 16, 17, 19

*Hochstadt v. Boston Sci. Corp.*,
708 F. Supp 2d 95 (D. Mass 2010) .................................................................................... 16

*In re Cabletron Sys., Inc. Sec. Litig.*,
239 F.R.D. 30 (D. N.H. 2006) ............................................................................................ 16

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................................ 13

*In re IMAX Secs. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ........................................................................................ 16

*In re P.R. Cabotage Antitrust Litig.*,
269 F.R.D. 125 (D.P.R. 2010) ........................................................................................ 10, 15

*In re Pharm. Indus. Average Wholesale Price Litig.*,
588 F.3d 24 (1st Cir. 2009) .............................................................................................. 8, 11

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005) ........................................................................................ 8, 11

*In re Stocker Yale, Inc. Secs. Litig.*,
No. 1:05CV00177-SM , 2007 WL 4589772 (D. N.H.  Dec. 18, 2007) ................................ 13

*Krueger v. Ameriprise Fin., Inc.*,
No. 11-CV-02781 SRN/JSM, 2015 WL 4246879 (D. Minn. July 13, 2015) ........................ 16

*Kruger v. Novant Health, Inc.*,
No. 1:14CV208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ........................................ 16

*LaLonde v. Textron, Inc.*,
369 F.3d 1 (1st Cir. 2004) .................................................................................................. 12

*Medoff v. CVS Caremark Corp.*,
No. 09-CV-554-JNL, 2016 WL 632238 (D.R.I. Feb. 17, 2016) ........................................... 12

*Mehling v. New York Life Ins. Co.*,
248 F.R.D. 455 (E.D. Pa. 2008) ........................................................................................ 12

*Meiners v. Wells Fargo*,
No. CV 16-3981(DSD/FLN), 2017 WL 2303968 (D. Minn. May 25, 2017) *aff'd*, 898 F.3d 820 (8th
Cir. 2018) ...................................................................................................................... 12, 13

*Moreno v. Deutsche Bank Americas Holding Corp.*,
No. 15 CIV. 9936, (S.D.N.Y.) ............................................................................................... passim
*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) ............................................................................................................ 20
*P. R. Dairy Farmers Ass'n v. Pagan*,
748 F.3d 13 (1st Cir. 2014) ................................................................................................... 7
*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv.*
*Mgmt., Inc.*,
712 F.3d 705 (2d. Cir. 2013) ............................................................................................... 13
*Schwartz v. TXU Corp.*,
No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) .................................... 16
*Swack v. Credit Suisse Boston*,
230 F.R.D. 250 (D. Mass. 2005) ........................................................................................ 20
*Urakchin v. Allianz Asset Mgmt. of Am., L.P.*,
No. 8:15-cv-1614-JLS-JCGx, 2017 WL 2655678  (C.D. Cal. June 15, 2017) ...................... 20
Wildman v. American Century Servs.,
362 F. Supp. 3d 685 (W.D. Mo. 2019) ............................................................................... 13

**Other Authorities**

Advisory Comm. Notes to 2018 Amendment to Rule 23 ................................................ 8, 11, 20

**Rules & Regulations**

68 Fed. Reg. 75632 (Dec. 31, 2003) ........................................................................................ 2, 6
Fed. R. Civ. P. 23 .............................................................................................................. passim

## **INTRODUCTION**

On behalf of herself and 2,898 current and former participants in the Eaton Vance 401(k) Profit Sharing and Savings Plan (the "Class" and/or "Class Members"), Plaintiff Shannon Price ("Plaintiff") respectfully submits this memorandum in support of her unopposed motion for final approval of a $3,450,000 class action settlement (the "Settlement").

Plaintiff brought this action under the Employee Retirement Income Security Act ("ERISA") on behalf of herself and the Class. Plaintiff alleged that Defendants Eaton Vance Corp., Eaton Vance Management, Eaton Vance Committee, and Does 1-30 (collectively, "Defendants," or "Eaton Vance," and together with Plaintiff, the "Parties"), breached their fiduciary duties and engaged in prohibited transactions in violation of ERISA. After months of arms-length negotiations and motion practice, the Parties agreed to settle the case.

On May 22, 2019, the Court granted preliminary approval of the Settlement, having determined that there was reason to believe that the "Settlement Agreement is fair, reasonable, and adequate, and within the range of possible approval." Order Preliminarily Approving Class Action Settlement ("Prelim. Approval Order"), Dkt. No. 45, at ¶ 2. In that connection, the Court (1) conditionally certified the proposed class; (2) appointed Analytics LLC as Settlement Administrator and Escrow Agent; and (3) approved the manner and content of the notice to be provided to the class as "appropriate and warranted." *Id.* at ¶¶ 2, 3, 7.

During the hearing on Plaintiffs' motion for preliminary approval, the Court observed that the case "has been well-handled by the plaintiffs' counsel," and that the arm's length negotiations resulted in a "well-thought out settlement." May 20, 2019 Hr'g Tr. of Prelim. Approval of Settlement ("Hr'g Tr.") at 6:14, 7:14. Subsequent events have confirmed the Court's observation.

After having been fully informed of its terms by the Court-approved notice, not a single Class Member has objected to the Settlement. And the independent fiduciary retained to review the Settlement[1] issued a report on August 23, 2019, finding the Settlement fair and reasonable, and agreeing to the settlement on behalf of the Plan.

Under the terms of the Settlement, Defendants have caused $3,450,000 to be deposited into an interest-bearing settlement fund ("Settlement Fund"), which amounts will be allocated, pursuant to the proposed Plan of Allocation, pro rata among Class Members who are, or were, participants in the Eaton Vance 401(k) Profit Sharing and Savings Plan (the "Plan") (after deduction of any attorneys' fees, expenses, and a class representative service award approved by the Court). The Plan of Allocation was developed in conjunction with a well-regarded ERISA expert and is designed to fairly and equitably distribute the proceeds of the Settlement to Class Members, taking into account the losses suffered while they were participants in the Plan. Upon final approval, the Settlement Administrator anticipates effectuating settlement payments to all 2,898 Class Members pursuant to Settlement Agreement's Plan of Allocation.

For these reasons and the reasons detailed below, Plaintiff respectfully submits that both the Settlement and Plan of Allocation are fair, reasonable and adequate and should be approved. Accordingly, Plaintiff requests that the Court enter an Order granting final approval of the Settlement and certification of the Rule 23 class substantially in the form submitted herewith. *See* Declaration of Charles Field in Support of Plaintiff's Mot. for Final Approval ("Field Decl."), Ex. C ("Proposed Order").

---

[1] Department of Labor Prohibited Transaction Exemption ("PTE") 2003-39, requires that an independent fiduciary review the Settlement where, as here, the Plan is releasing claims, and to agree to the settlement only if the independent fiduciary determines the settlement "would have been agreed to by unrelated parties under similar circumstances." 68 Fed. Reg. 75632, 75635 (Dec. 31, 2003).

2

## BACKGROUND

## I.   SETTLEMENT BACKGROUND AND TERMS

As the Court has found, the Settlement is the product of extensive negotiations conducted in "good faith at arms-length between experienced attorneys familiar with the legal and factual issues of this case." Prelim. Approval Order, at ¶ 2. The parties first held pre-suit settlement discussions of this matter in July 2018, but these talks were not successful. Field Decl., at ¶ 6. After Plaintiff filed the Complaint, the parties resumed settlement discussions. *Id.* For the next five months, the parties engaged in ongoing negotiations and exchanged multiple settlement proposals. After a round of motion practice, the parties agreed to settle the matter in principle on March 11, 2019 and executed the Settlement Agreement on May 6, 2019.[2] *Id.* ¶¶ 6-7; *See also* Dkt. No. 32-1 at 22.[3]

### A.   Proposed Settlement Class

The Settlement Agreement calls for certification of the following Class:

> All current and former participants in the Plan who carried a positive account balance from October 5, 2012 to the date of the Final Approval Order. Excluded from the class are Defendants and members of the Eaton Vance Investment Committee during the Class Period.

*See* Settlement Agreement, Dkt. No. 41-6, ¶ 1.8.

### B.   Monetary Relief

Under the Settlement, Defendants have deposited $3,450,000 into the Settlement Fund. Following any deductions for Court-approved (a) attorneys' fees and costs, and (b) class

---

[2] The parties executed the Settlement Agreement on May 6, 2019, Dkt. No. 32-1 at 22, and revised the Settlement Agreement on May 15, 2019, Dkt. No. 41-6 at 22, before the hearing on preliminary approval.

[3] The Plaintiff also asserted separate, unrelated claims against certain Eaton Vance entities stemming from her employment at, and separation from, the company. As of the date of preliminary approval, those claims were pending, and the Parties were in settlement discussions. Since then, the Parties have settled that unrelated matter.

representative compensation, the Settlement Administrator will distribute the Net Settlement Fund

to Class Members according to a Plan of Allocation as described in ¶ 5.1 of the Settlement

Agreement. Under the Plan of Allocation, the Settlement Administrator shall determine each Class

Member's Entitlement Amount by calculating each Class Member's proportionate share of the Net

Settlement Amount. *Id.* ¶ 5.1(b), which will be allocated among eligible Class Members in

proportion to their weighted annual account balances in the Plan's investment options. Consistent

with Class Counsel's assessment of the relative strength of the claims that were asserted on behalf

of Class Members, and the loss calculations of Plaintiff's damages expert, Class Members'

balances in the Eaton Vance Funds ("Proprietary Fund") will be weighted four times more heavily

than balances in the non-Eaton Vance Funds ("Non-Proprietary Fund"). *Id.* ¶ 5.1(a).

### C.    Release of Claims

In exchange for the relief provided by the Settlement, the members of the Settlement Class

and the Plan itself will release Defendants and affiliated persons and entities from all claims:

(a)    that were asserted in the Action or could have been asserted in the Action, or that arise out of, are based on, or have any connection with any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions, or occurrences asserted in the Action, whether or not pleaded in the Complaint, including but not limited to those that arise out of, are based on, or have any connection with:  (1) the selection, retention, and monitoring of the Plan's investment options and service providers, (2) the performance, fees, and other characteristics of the Plan's investment options and their specific share classes, (3) the Plan's fees and expenses, including without limitation fees and expenses associated with the provision of recordkeeping and subadvisory services, (4) the nomination, appointment, retention, monitoring, and removal of the Plan's fiduciaries, and (5) the approval by the Independent Fiduciary of the Settlement Agreement;

(b)    that would be barred by res judicata based on the Court's entry of the Final Approval Order;

(c)    that arise from the direction to calculate, the calculation of, and/or the method or manner of the allocation of the Net Settlement Fund pursuant to the Plan Of Allocation; or

        (d)       that arise from the approval by the Independent Fiduciary of the Settlement Agreement.

*Id.* ¶ 1.39.

## II. CLASS NOTICE AND REACTION TO SETTLEMENT

On June 21, 2019, the Settlement Administrator, Analytics LLC ("Analytics") first mailed the approved Settlement Notices (and Former Participant Rollover Form, if applicable) to each Class Member identified on the class list provided by Defendants. Declaration of Analytics Regarding Timely Compliance of Class Notice ("Amundson Decl.") ¶ 5. In total, 2,898 Settlement Notices were mailed. *Id.* ¶ 4.

Prior to sending these Notices, Analytics cross-referenced the addresses provided with the United States Postal Service National Change of Address ("NCOA") Database. *Id.* ¶ 4. Analytics re-mailed any Notices that the United States Postal Service returned with updated addresses. *Id.* ¶ 7. When Notices were returned undeliverable, Analytics located new addresses through a third-party commercial data source and re-mailed the Notices. *Id.* As a result, the Notice program was very effective. Analytics estimates that Notice was successfully delivered to over 98% of the Class. *Id.*

On June 21, 2019, Analytics also established a settlement website, EatonVance401kSettlement.com, to provide Class Members with additional information about the case. *Id.* ¶ 9. Among other things, the Settlement Website included: (1) court filings; (2) the Notice; (3) the Former Participant Rollover Form; (4) a list of important deadlines; (5) answers to frequently asked questions; and (6) contact information for Analytics and Class Counsel. *Id.*; *see also* Field Decl. ¶ 9. Analytics also created and maintained a toll-free telephone support line (1-877-273-4633) as a resource for Class Members seeking information about the Settlement. *Id.*

The reaction of the Settlement Class to the Settlement has been favorable. As noted above, there have been no objections to the Settlement from any Class Member.

## III. REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY

Pursuant to PTE 2003-39, the Settlement was submitted to an independent fiduciary, Fiduciary Counselors, Inc., for review. *See* Field Decl. Ex. B. In the course of its review, Fiduciary Counselors (1) reviewed court documents and other information and documents in the litigation; (2) interviewed counsel for the Parties; (3) evaluated the strengths and weaknesses of the Parties' legal and factual arguments in the litigation; (4) reviewed and analyzed the terms of the Settlement, including but not limited to the Settlement consideration and the scope of the Settlement release; (5) reviewed the Plan of Allocation proposed by the parties; and (6) reviewed Plaintiffs' request for attorneys' fees. *Id*. at 1-6. Based on its review, Fiduciary Counselors found, *inter alia*, that:

> [1] The Settlement terms, including the scope of the release of claims, the [$3.45 million Settlement amount relief provided for in the Settlement], and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone[;]
>
> [2] The terms and conditions of the transaction are no less favorable to the Plan than comparable arms-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances[; and]
>
> [3] The transaction is not part of an agreement, arrangement, or understanding designed to benefit a party in interest.

*Id.* at 1. Accordingly, Fiduciary Counselors having determined not "to object to any aspect of the Settlement," authorized the Settlement in accordance with PTE 2003-39; approved and authorized the "Settlement of Released Claims … on behalf of the Plan; and provided a "release in its capacity as a fiduciary of the Plan, for and on behalf of the Plan." *Id.* At 9.

## STANDARD OF REVIEW

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. The determination of whether a proposed settlement is fair falls within the sound discretion of the court. In evaluating the settlement, the Court must also consider the strong public policy favoring settlement, particularly in class actions. *See P. R. Dairy Farmers Ass'n v. Pagan*, 748 F.3d 13, 20 (1st Cir. 2014) (noting the "strong public policy in favor of settlements").

## ARGUMENT

## I.   THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval. The rule further directs that the settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

On December 1, 2018, new amendments to Rule 23(e)(2) took effect. The Rule now articulates specific factors for courts to consider when evaluating a settlement for final approval. Specifically, courts are called upon to assess whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Advisory Committee notes explain that the revised Rule was designed to standardize various multi-factor tests that federal courts had previously employed to evaluate the fairness of

class settlements. Advisory Comm. Notes to 2018 Amendment to Rule 23(e)(2). "The goal of [the] amendment [was] not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* Accordingly, as before, courts need to consider both "the negotiating process by which the settlement was reached and the substantive fairness of the terms of the settlement compared to the result likely to be reached at trial." *In re Relafen Antitrust Litig*., 231 F.R.D. 52, 72 (D. Mass. 2005). Subsections 23(e)(2)(A)-(B) of the revised Rule focus on the "procedural" fairness of the settlement, while subsections 23(e)(2)(C)-(D) concern the settlement's "substantive" fairness. Advisory Comm. Notes to 2018 Amendment to Rule 23(e)(2).

Here, the Settlement plainly meets the Rule's procedural and substantive requirements.

### A. The Settlement Is Procedurally Fair: The Class Representative and Class Counsel Have Adequately Represented the Class and Engaged in Arm's Length Negotiations with Defendants.

The Parties reached settlement as the result of good faith, arm's length negotiations by experienced counsel. Together, the caliber of Plaintiffs' counsel, their dedicated prosecution of this action, and the instrumental efforts of Plaintiff Price satisfy the "'procedural' concerns" of Rule 23(e)(2)(A)-(B). Advisory Comm. Note to Rule 23(e)(2)(A)-(B) (2018). In light of these considerations, the proposed Settlement is entitled to an initial presumption of reasonableness. *In re Pharm. Indus. Average Wholesale Price Litig*., 588 F.3d 24, 32-33 (1st Cir. 2009).

As detailed in the attached Declaration of Charles Field, Plaintiff's Counsel have substantial experience in complex class actions, including ERISA class actions involving 401(k) plans. Plaintiff's Counsel has served as lead or co-lead counsel in over forty class actions. Field Decl. ¶ 21. Plaintiff's Counsel is currently counsel in six ERISA class actions pending in various federal courts throughout the country. *Id.* at ¶ 14. Moreover, Plaintiff's Counsel has extensive

experience advising on ERISA and fiduciary duty matters, as well as overseeing the administration and operation of the types of investment funds at issue in this action. Field Decl. ¶¶ 16-18.

Before filing this action, Plaintiff's counsel conducted a detailed investigation of the Plan's investment options, which included extensive analysis of Plan-related documentation and investment performance data. *Id.* ¶ 5. Among other things, Plaintiff's Counsel examined and evaluated: the disclosure documents provided to Plan participants that detailed the fees, expenses, and the performance of each Plan investment option relative to its respective investment benchmark; the Plan' Summary Plan Description; the filings by the Plan with the Department of Labor; Registration Statements and Annual Reports filed by each of the Plan's investment options with the Securities and Exchange Commission ("SEC"); the Form ADV filed with the SEC by Eaton Vance Management and its affiliated investment advisers; and the investment structure and fees paid by the Plan in comparison with other types of investments and fees generally.

Over the course of five months following the filing of the complaint, the Parties engaged in continuous, arm's length negotiations over the terms of a potential class action settlement. Field Decl. ¶¶ 6-7. Notwithstanding that the negotiations were underway, the Parties continued litigating this matter and fully briefed a motion to dismiss, which further sharpened the disputed issues and risks for both sides attendant to proceeding with the litigation. *See* Dkt. Nos. 12-14, 25.

The Parties finally reached an agreement in principle to settle the case on March 11, 2019. Field Decl. ¶ 7. Thereafter, the parties prepared and executed the Settlement Agreement, memorializing the terms of the Settlement. Although the Plaintiff conducted no formal discovery, Plaintiff's Counsel's in-depth, pre-suit investigation and analysis of the Plan's investment options and Eaton Vance's investment advisory business provided ample information with which to evaluate the costs and benefits of settlement. *Cf. In re P.R. Cabotage Antitrust Litig.*, 269 F.R.D.

125, 141 (D.P.R. 2010) (noting that the parties were sufficiently informed by limited informal discovery that occurred prior to settlement); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2001) (upholding settlement where "although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information.").

Plaintiff Price played an instrumental role in the development and prosecution of this action. *See* Dkt. No. 34, Decl. of Shannon Price ("Price Decl.") at ¶¶ 4-5; *see also* Field Decl. at ¶¶ 27-32. She gathered documents and worked with Counsel to develop an understanding of the operation of the Plan and Defendant's practices related to structuring, pricing and selecting the investment products they offered to Plan participants. Field Decl. at ¶¶ 27-32. Throughout the proceedings, Plaintiff has faithfully attended to her duties to act on behalf of current and former Plan participants. Plaintiff, who suffered losses as a participant in the Plan, has no interests that are antagonistic to the interests of any of the Class Members. Through Class Counsel, she has proposed a settlement that awards all Class Members, including Plaintiff, their proportionate share of the Settlement proceeds based on the nature of their 401(k) investments. *See* Sections I.B.2 and II, below. Accordingly, the interests of Plaintiff and absent class members align because she brings the same claims for the same remedies under the same legal theories applicable to all Class Members, who will recover their proportionate share of the Settlement Fund under the Plan of Allocation.

In sum, Plaintiff's Counsel brought their extensive experience to bear on the prosecution and settlement of this case. Counsel has zealously represented the Class and achieved a meaningful settlement after extensive arm's length negotiations with Counsel for Defendants. Moreover, Plaintiff has assisted Counsel throughout this process and adequately represented the Class. Accordingly, the Settlement satisfies the "procedural" factors outlined in Rule 23(e)(2)(A)-(B),

and the Court should "presume the settlement is reasonable." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d at 32-33; *see also Relafen*, 231 F.R.D. at 71-72.

### B.  The Settlement is Substantively Fair: The Relief Provided to the Class is Adequate and Equitable

"The relief that the settlement is expected to provide to class members is a central concern" of the analysis under Rules 23(e)(2)(C)-(D). Notes of Adv. Comm. Rule 23(e)(2)(C)-(D) (2018). The Settlement Agreement here fashions significant relief for the Class— a gross value of over $1,190 per Class Member.

This result compares favorably with settlements of similar ERISA class actions. By comparison, in *Dennard v. Transamerica Corp.*, another case involving proprietary funds, the parties reached a gross monetary settlement of $3.8 million. *Dennard v. Transamerica Corp.*, No. C15-0030, Dkt. No 86-1 at 25 (N.D. Iowa). That amount, however, was distributed among at least 26,000 potential class members— resulting in a gross award of about $146 per participant and a net award of less than $97 per participant. *See id.* Dkt. No. 102-1, at 15; Dkt. No. 121, at 2. In *Moreno v. Deutsche Bank*, another ERISA action involving proprietary funds that was actively litigated for almost three years, the settlement provided $631.12 gross benefits and $418.50 net benefits per Class Member. *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 CIV. 9936, Dkt. No. 322 Ex. B at 2 (S.D.N.Y.). Here, even after accounting for attorneys' fees and costs, the net value of the Settlement per Class Member (over $800) is significantly higher than the gross per participant value of *Dennard* and *Moreno*.

The negotiated settlement amount also represents a significant portion of the total damages that Plaintiff has reasonably calculated were caused by Defendants' violations of ERISA. Plaintiff retained an expert who calculated the likely total damages at about $14.3 million. Field Decl. ¶ 8. Accordingly, the gross settlement amount ($3.45 million) represents approximately 24% of the

total damages, which is well within the range found reasonable in other class action settlements. *See Medoff v. CVS Caremark Corp.*, No. 09-CV-554-JNL, 2016 WL 632238, at *6 (D.R.I. Feb. 17, 2016) (noting that 5.33% is "well above the median percentage of settlement recoveries in comparable securities class action cases"); *see also Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (20% recovery in ERISA class action approved).

In addition to providing substantial value to Class Members, the Settlement meets the other indicia of "substantive" fairness set forth in Rule 23(e)(2)(C)-(D).

### 1. The costs, risks, and delay of trial and appeal support approval of the settlement.

The costs, risks and delay associated with taking this case to trial—and, inevitably, appeals—weigh in favor of approval. *See* Rule 23(e)(2)(C)(i). The First Circuit has described ERISA jurisprudence as an "important and complex area of law." *LaLonde v. Textron, Inc.*, 369 F.3d 1, 6 (1st Cir. 2004). Plaintiff's ERISA claims are based on breaches of the duties of prudence and loyalty under 29 U.S.C. § 1104, as well as prohibited transactions under 29 U.S.C. § 1106. Both claims are "factually complex." *Brotherston v. Putnam Invs.*, LLC, No. CV 15-13825-WGY, 2016 WL 1397427, at *1 (D. Mass. Apr. 7, 2016).

For example, to prevail on the breach of prudence claims, Plaintiff would have to prove that Defendants' process for monitoring Plan options was "tainted by failure of effort, competence, or loyalty." *Braden v. Wal Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009). Plaintiff would have to show that the disputed investments underperformed relative to comparable benchmarks, that Eaton Vance failed to remove the disputed investments in timely fashion, and, as a result, that the Plan and its participants suffered investment losses. *Meiners v. Wells Fargo*, No. CV 16-3981(DSD/FLN), 2017 WL 2303968, at *4 (D. Minn. May 25, 2017), *aff'd*, 898 F.3d 820 (8th Cir. 2018). Plaintiff would also have to prove through, *inter alia*, expert testimony, that the alleged

comparable investments were in fact comparable to the disputed investments and that the underperformance analysis was not based on the benefit of pure hindsight. *Id.*; *see also Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705 (2d. Cir. 2013). If Plaintiff were unsuccessful on any of these points, any recovery could be reduced or lost all together. *Cf. In re Stocker Yale, Inc. Secs. Litig.*, No. 1:05CV00177-SM, 2007 WL 4589772, at *3 (D. N.H.  Dec. 18, 2007) (fact that "various defenses could result in no liability and zero recovery for the class" favors approval of the settlement).

Furthermore, this case is far from trial. Significant discovery remains to be taken and significant (and expensive) expert discovery would be required for both sides. The calculation of damages would be "complex, time-consuming and expensive." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004). Ultimately, any judgment would likely present significant legal questions, which the losing Parties would likely appeal, adding further cost, risk and delay to these proceedings.

The risks of proceeding on Plaintiff's claims is illustrated by *Wildman v. American Century*, a recent case that challenged the inclusion of proprietary funds in a 401(k) plan. *Wildman v. American Century Servs.*, 362 F. Supp. 3d 685 (W.D. Mo. 2019). After a bench trial, the court found that despite the allegations of poorly performing proprietary funds, the plaintiffs failed to prove by a preponderance of the evidence that Defendants breached their fiduciary duties to the plan. *Id.* at 711-12.

In sum, the "costs, risks, and delay of trial and appeal" strongly favor settlement. Fed. R. Civ. P. 23(e)(2)(C)(i).

## 2. The proposed method of distributing relief to the class will be highly effective and equitable.

The Plan of Allocation sets forth an effective and equitable method of distributing the Net Settlement Fund to the Class. These factors also support final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii) & (e)(2)(D). As discussed further in Section II bellow, the Parties have developed neutral methods to promptly deliver the settlement proceeds to Class Members. Under the Plan of Allocation, all eligible Class Members will receive a proportionate share of the Net Settlement Fund based on their investment selections and their average account balance. The Settlement Administrator will determine a "Settlement Allocation Score" for each class member. Settlement Agreement ¶ 5.1(a)(b). That Score will be the Class Member's aggregate year-end Plan account balance during the Class Period, measured in points, such that each dollar invested in Proprietary Funds equals four (4) points and each dollar invested in Non-Proprietary Funds equals one (1) point; provided, however, that each Class Member's year-end Plan account balance for the year 2012 shall be multiplied by 87/365, and each Class Member's year-end Plan account balance for the year 2019 shall be the Plan account balance as of March 31, 2019.

This formula operates to provide relief to all Class Members in a manner that is consistent with the loss calculations of Plaintiff's damages expert, and with Plaintiff's Counsel's assessment of the relative strength of the claims that were asserted in the case. In its review of the Plan of Allocation, the Independent Fiduciary found that this use "of weighted average formulas on account balances is reasonable in light of the claims and the extreme complexity and added expenses, as well as potential data issues, of attempting to fine tune the Plan of Allocation further." Field Decl. Ex. B, at 5. A similar plan of allocation was approved by the court in *Moreno.* No. 15 CIV. 9936, Dkt. No. 322 Ex. A at 29-32 (S.D.N.Y.) (proprietary funds weighted three times more heavily than balances in the non-proprietary funds).

Once the Administrator assigns Settlement Allocation Scores, it will distribute the funds to Class Members. To minimize costs, each current Plan participant's award will be deposited directly into his or her 401(k) account. Former participants have been offered the option to have their distribution rolled over into an eligible retirement account or to another plan, or to receive a direct payment by check. Settlement Agreement. ¶ 5.3. This approach, which is consistent with other settlements, will minimize the portion of the Settlement Fund paid as taxes, and will reduce the likelihood of uncashed settlement checks. *See*, *e.g.*, *Dennard*, No. C15-0030, Dkt. No 86-1 at 42; *Moreno*, No. 15 CIV. 9936, Dkt. No. 321 at 7. The Settlement Administrator expects that all Class Members will receive settlement payments pursuant to the Plan of Allocation. Amundson Decl. ¶ 11.

Notably, after having been informed of its terms by virtue of the Court-approved Notice, not a single Class Member has filed an objection to the Settlement. That no class member objected supports the approval of the Settlement. *Hill v. State St. Corp.*, No. 09-12146-GAO, 2015 WL 127728 at *8 (D. Mass  Jan. 8, 2015) (finding the small number of objections received, none of which challenged the adequacy of the settlement amount, "certainly weighs in favor of approval" of the settlement) (citing *In re P.R. Cabotage Antitrust Litig*., 815 F. Supp. 2d 448, 473 (D.P.R. 2011)).

### 3. The terms of the attorneys' fees award are fair, reasonable, and in line with other cases.

As detailed in Plaintiff's Motion for Attorneys' Fees, Costs, and Service Awards, the terms of the attorneys' fees award in this case are fair, reasonable, and in line with awards in similar cases. This also weighs in favor of approval of the Settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). Under the terms of the Settlement Agreement, Plaintiff's Counsel was authorized to apply to the Court for an award of up to $1,150,000 (*i.e.*, one-third of the Settlement Amount) as reasonable

attorneys' fees, plus expenses. However, pursuant to the Court's suggestion at the preliminary approval hearing, Plaintiff's counsel agreed to absorb the costs of settlement administration. *See* Mot. for Attorneys' Fee, Dkt. No. 49, at 1. Thus, Plaintiff's counsel seeks a reduced award of $1,110,000 in attorneys' fees. *Id.* The proposed attorneys' fees award compares favorably to similar ERISA cases, in which courts routinely award one-third of the settlement amount as attorneys' fees. *E.g.*, *Kruger v. Novant Health, Inc.*, No. 1:14CV208, 2016 WL 6769066, at *2 (M.D.N.C. Sept. 29, 2016); *Krueger v. Ameriprise Fin., Inc.*, No. 11-CV-02781 SRN/JSM, 2015 WL 4246879, at *2 (D. Minn. July 13, 2015).

## II.  THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

A plan of allocation, like the settlement itself, should be approved if it is fair, reasonable, and adequate. *See Hochstadt v. Boston Sci. Corp.*, 708 F. Supp 2d 95, 109 (D. Mass 2010); *Hill*, 2015 WL 127728 at *11.

A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable, but the plan "need not necessarily treat all class members equally." *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *23 (N.D. Tex. Nov. 8, 2005). A reasonable plan of allocation "may consider the relative strength and values of different categories of claims." *In re IMAX Secs. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012); *see also In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 35 (D. N.H. 2006) (approving plan of allocation that accounted for "the strengths and weaknesses of the claims of the various types of class members").

Class Counsel developed the proposed Plan of Allocation in consultation with its damages expert after evaluating the relative values of the different categories of claims. As discussed in Section I.B.2 *supra*, under the Plan, each Class Member's Settlement Allocation Score shall be weighted by eighty percent (80%) to his or her Plan account balance invested in Proprietary Funds

and by twenty percent (20%) to his or her Plan account balance invested in Non-Proprietary Funds. The Plan of Allocation was approved by the Independent Fiduciary, Field Decl. Ex. B, and a similar plan of allocation was approved by the court in *Moreno v. Deutsche Bank Americas Holding Corp.,* No. 15 CIV 9936, Dkt No. 322 Ex. A at 29-32 (S.D.N.Y.) (proprietary funds weighted three times more heavily than balances in the non-proprietary funds).

Accordingly, the Plan of Allocation fairly and rationally allocates the proceeds of the Net Settlement Fund among Class Members based on the relative strengths of their claims as alleged in the Complaint. To date, no Class Members have filed objections to the Plan. Accordingly, the Plan of Allocation should also be approved.

## III.     THE NOTICE SATISFIED RULE 23 AND DUE PROCESS

Since the Court conditionally certified the Class under Federal Rule of Civil Procedure ("Rule") 23(b)(1), Plaintiff was required to provide "appropriate notice" to Class Members under Rule 23(c)(2)(A). Here, the Notice also met the stricter requirement of Rule 23(c)(2)(B) (applicable only to Rule 23(b)(3) classes) to be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974). The Notice further satisfied Rule 23(e)(1), which requires that notice be directed "in a reasonable manner to all class members who would be bound," Fed. R. Civ. P. 23(e)(1)(B). Overall, the Notice's content and manner of dissemination "fairly apprise[d] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them." *Hill,* 2015 WL 127728, at *15 (quoting *Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir. 1974)).

17

Both the substance of the Notice and the method of its dissemination satisfied these standards. The Notice program was carried out by Analytics, a nationally recognized claims' administration firm, under the supervision of Plaintiffs' Counsel. The Notice included: (i) an explanation of the nature of the Class Action and the claims asserted; (ii) the definition of the Class; (iii) the class claims and the amount of the Settlement; (iv) that a class member may enter an appearance through an attorney; (v) a description of the Plan of Allocation; (vi) an explanation of the reasons why the parties are proposing the Settlement; (vii) a statement indicating the attorneys' fees and costs that will be sought; (viii) a description of Settlement Class Members' right object to the Settlement, the Plan of Allocation, and the requested attorneys' fees or expenses; and (ix) notice of the binding effect of a judgment on Class Members. *See* Amundson Decl. Ex. A; Fed. R. Civ. P. 23(e)(1)(B); *cf.* Fed. R. Civ. P. 23(c)(2)(B).

As noted above, in accordance with the Court's Preliminary Approval Order, the Claims Administrator mailed copies of the Notice by first-class mail to Class Members. Amundson Decl. ¶¶ 4-6. Analytics re-mailed any Notices that the United States Postal Service returned with updated addresses. *Id.* ¶ 7. When Notices were returned undeliverable, Analytics located new addresses through a third-party commercial data source and re-mailed the Notices. *Id.* As a result of these efforts, Analytics estimates that Notice was successfully delivered to over 98% of the Class. *Id.*

In addition, copies of the Notice, Rollover Form, Settlement Agreement, and other relevant case documents were made available on the Settlement website, EatonVance401kSettlement.com. *See Id.* ¶ 9. Analytics also created and maintained a toll-free telephone support line (1-877-273-4633) as a resource for Class Members seeking information about the Settlement. *Id.* ¶ 8. Further, Plaintiff's Counsel maintained a telephone support line (1-619-577-4253) to respond to inquiries

about the Settlement. Field Decl. ¶ 9. These telephone numbers were referenced in the Settlement Notices and also appear on the Settlement website. *Id.*

In sum, the efforts of Plaintiff's Counsel and Analytics provided the Class with "the best notice . . . practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and "fairly apprised" class members about the Settlement. *Hill*, 2015 WL 127728, at \*15.

## IV.     THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE CLASS

In its Preliminary Approval Order, the Court conditionally certified the Class for settlement purposes, thereby recognizing that Plaintiff had satisfied the requirements of Rules 23(a) and 23(b)(1). Prelim. Approval Order, Dkt. No. 45 at 2. Since the Court's Preliminary Approval Order, nothing has changed to disturb the Court's conclusion that class treatment is appropriate.

Under Rule 23(a), a class action is permissible where: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Additionally, the Class must be "maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Under Rule 23(b)(1), a class may be certified if the prosecution of separate actions would create a risk of inconsistent judgments that would establish incompatible standards of conduct for Defendants or if adjudication of individual members' claims would, as a practical matter, be dispositive of the claims of other class members. Fed. R. Civ. P. 23(b)(1).

As described in Plaintiff's Motion for Preliminary Approval, Dkt. No. 31, the Class meets all the requirements of Rule 23(a). With 2,898 members, the Class is sufficiently numerous under Rule 23(a)(1). Plaintiff's claims also present a series of common factual and legal questions that

satisfy Rule 23(a)(2), such as whether Defendants were fiduciaries, whether their selection and retention of Plan investment options were a product of a loyal and prudent investment process, and how to appropriately calculate damages. Plaintiff likewise satisfies the typicality requirement of the Rule 23(a)(3), since her claims and the Class Members' claims arise from the same course of conduct and are based on the same legal theory. *Swack v. Credit Suisse Boston*, 230 F.R.D. 250, 260 (D. Mass. 2005). Further, as discussed in Section I.A above and in Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Award, Dkt. No. 49, Plaintiff and Plaintiff's Counsel have adequately represented the class. Accordingly, Rule 23(a)(4) is satisfied, and Plaintiff's Counsel should be confirmed as Class Counsel under Rule 23(g).

The Class is also certifiable under Rule 23(b)(1). One "classic example[]" of a class certifiable under Rule 23(b)(1) is an action that charges "'a breach of trust by an . . . fiduciary similarly affecting the members of a large class' of beneficiaries, requiring an accounting or similar procedure 'to restore the subject of the trust.'" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (quoting Advisory Comm.'s Notes on Fed. R. Civ. P. 23)). Accordingly, ERISA class actions are typically certified under Rule 23(b)(1)(A) and/or (B). *See Moreno v. Deutsche Bank*, 2017 WL 3868803, at *10 (S.D.N.Y. Sept. 5, 2017) (certifying class under Rule 23(b)(1)(B)); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.,* No. 8:15-cv-1614-JLS-JCGx, 2017 WL 2655678, at *8 (C.D. Cal. June 15, 2017) (same).

In sum, there is good reason and just cause to finally certify the Settlement Class, for settlement purposes, under Rules 23(a) and 23(b)(1).

## CONCLUSION

Plaintiff respectfully requests that the Court enter an order granting final approval of the Settlement and certifying the Class in the form submitted herewith. *See* Field Decl. Ex. C.

Dated:  September 9, 2019          Respectfully submitted,

/s/ Charles Field

\*Charles Field
**SANFORD HEISLER SHARP, LLP**
655 West Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 577-4252
Facsimile: (619) 577-4250
cfield@sanfordheisler.com

Andrew Miller (MA Bar # 682496)
\*Paul Blankenstein
**SANFORD HEISLER SHARP, LLP**
1666 Connecticut Avenue NW, Suite 300
Washington, DC 20009
Telephone: (202) 499-5200
Facsimile: (202) 499-5199
amiller@sanfordheisler.com
pblankenstein@sanfordheisler.com

\*David Sanford
\*David Tracey
\*Meredith Firetog
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Phone: (646) 402-5650
Facsimile: (646) 402-5651
dtracey@sanfordheisler.com
dsanford@sanfordheisler.com
mfiretog@sanfordheisler.com
*\* Admitted pro hac vice*

*Attorneys for Plaintiff and the Proposed Class*

21

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2019, a true and correct copy of the foregoing was

served via the Court's electronic filing system, which all counsel of record registered as District of

Massachusetts CM/ECF users will receive via electronic notification.


/s/ Charles Field_____

Charles Field